UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ZACHARY GIAMBALVO, JOHN MOUGIOS,
SHANE MASHKOW, KEVIN MCLAUGHLIN,
MICHAEL MCGREGOR, and all similarly
situated individuals,

                            Plaintiffs,                  22 Civ.      (  )

       -against-

SUFFOLK COUNTY, New York,                   **COMPLAINT FOR**
Police Commissioner RODNEY HARRISON,      **DECLARATORY AND**
in his Official Capacity, MICHAEL             **INJUNCTIVE RELIEF**
KOMOROWSKI, Individually, ERIC BOWEN,
Individually, WILLIAM SCRIMA, Individually,
WILLIAM WALSH, Individually, "JOHN DOES      **Jury Trial Demanded**
1-5", Individually and JANE DOES 1-5,
Individually,

                        Defendants.
------------------------------------------------------------x

       Plaintiffs, ZACHARY GIAMBALVO, JOHN MOUGIOS, SHANE MASHKOW, KEVIN

MCLAUGHLIN, MICHAEL MCGREGOR by and through their attorneys, The Bellantoni Law

Firm, PLLC, and all similarly situated individuals, for their Complaint respectfully state:

## NATURE OF THE ACTION

      1.    This is an action for, *inter alia*, declaratory and injunctive relief, presumed

compensatory damages in at least a nominal amount for Defendants' violations of the Constitution,

and punitive damages proximately resulting from the pistol licensing policies and procedures

enforced and implemented by the Suffolk County Police Department, which violate the Second

and Fourteenth Amendments to the Constitution under 42 U.S.C. § 1983.

2.     This action seeks a declaration that the policies and procedures of the Suffolk County Police Department ("SCPD") for obtaining a New York State pistol license violate the Second and Fourteenth Amendments.

3.     SCPD's pistol licensing policies and procedures are implemented and enforced with the intention of delaying, frustrating, and depriving the residents of Suffolk County of their right to possess and carry handguns for self-defense as protected by the Second Amendment and applied to the states through the Fourteenth Amendment.

4.     This action seeks, *inter alia*, temporary and permanent injunctive relief requiring Defendants to (i) immediately provide the New York State pistol/revolver license application on its website and its local precincts (the "State Application"; (ii) accept the State Application for filing from applicants upon presentment; (iii) fingerprint applicants upon presentment of the State Application or, in the alternative, provide the SCPD ORI number on its website and local precincts to allow applicants to obtain the same fingerprint-based report from the New York State Division of Criminal Justice Services; (iv) photograph applicants upon presentment of the State application or, in the alternative, allow applicants to submit the 2 statutorily required photographs at the time of presentment of the State Application; and (v) cease subjecting applicants to an interview process; (vi) remove from the SCPD policies, materials, handbook, and website the requirement that an applicant show "proper cause" for the issuance of a concealed carry license; and (vii) provide hours of accessibility outside of the Licensing Bureau's currently restricted hours of Monday-Friday from 9:00 – 4:30 p.m.

## JURISDICTION AND VENUE

5.     Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) in

that this action seeks to redress the deprivation, under of color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or immunities secured by the United States Constitution.  This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, 42 U.S.C. §§ 1983 and 1988. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

6.      Plaintiffs, ZACHARY GIAMBALVO, JOHN MOUGIOS, SHANE MASHKOW, KEVIN MCLAUGHLIN, and MICHAEL MCGREGOR ("Plaintiffs"), are all natural persons and residents of those portions of Suffolk County, New York subject to the jurisdiction of the Suffolk County Police Commissioner for the issuance of a New York State pistol license.

7.      Defendant, SUFFOLK COUNTY, New York (hereinafter the "County"), is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of the State.

8.      Defendant, RODNEY HARRISON, (hereinafter "Commissioner Harrison"), is the Police Commissioner of Suffolk County and has held that position since January 11, 2022. Commissioner Harrison is sued in his official capacity only.

9.      As Police Commissioner, Harrison is the statutory pistol "Licensing Officer" as defined by Penal Law § 265.00(10) having jurisdiction to, among other duties, issue New York State pistol licenses to Suffolk County residents, including Plaintiffs. In his position as Police Commissioner, Harrison was acting on behalf of, and in furtherance of, his position as the statutory pistol licensing officer for Suffolk County, New York.

10.      As the statutory pistol licensing officer, Commissioner Harrison is properly named herein as the individual responsible for ensuring that the requested prospective injunctive relief is carried out. *Koehl v. Dalsheim*, 85 F.3d 86, 89 (2d Cir. 1996).

3

11.     Defendant MICHAEL KOMOROWSKI (hereinafter "Lt. Komorowski") is the lieutenant of the Suffolk County Pistol Licensing Bureau and employee of Suffolk County.  Lt. Komorowski is sued herein in his individual and personal capacity only.

12.     As the lieutenant of the Pistol Licensing Bureau, Lt. Komorowski has been directly responsible for enforcing and implementing the pistol licensing polices and procedures detailed and complained of herein.

13.     Lt. Komorowski has day-to-day direct supervisory and directional authority over the police officers and/or investigators assigned to the Pistol Licensing Bureau, including Sgt. Eric Bowen, John Does 1-5 and Jane Does 1-5, including their training on, and day-to-day implementation of, the policies and procedures of the Pistol Licensing Bureau.

14.     Defendant Sergeant ERIC BOWMAN (hereinafter "Sgt. Bowman") is assigned to the SCPD Pistol Licensing Bureau and an employee of Suffolk County.  Defendant Bowman is sued herein in his individual and personal capacity only.

15.     Sgt. Bowman has day-to-day direct supervisory and directional authority over the police officers and/or investigators assigned to the Pistol Licensing Bureau, John Does 1-5 and Jane Does 1-5, including their training on, and day-to-day implementation of, the policies and procedures of the Pistol Licensing Bureau.

16.     During portions of the relevant time period prior to Lt. Komorski assuming the role described above, and in 2020-2021 defendant WILLIAM SCRIMA (hereinafter "Captain Scrima") was assigned to the SCPD Pistol Licensing Bureau. Captain Scrima had day-to-day direct supervisory and directional authority over the police officers and/or investigators assigned to the Pistol Licensing Bureau, including Sgt. William Walsh, John Does 1-5 and Jane Does 1-5, which involved their training on, and day-to-day implementation of, the policies and procedures of the

Pistol Licensing Bureau.   Defendant Scrima is sued herein in his individual and personal capacity only.

17.     During portions of the relevant time period prior to Sgt. Bowman assuming the role described above, and in 2020-2021 Defendant WILLIAM WALSH (hereinafter "Sgt. Walsh") was assigned to the Pistol Licensing Bureau. Sgt. Walsh had day-to-day direct supervisory and directional authority over the police officers and/or investigators assigned to the Pistol Licensing Bureau, including John Does 1-5 and Jane Does 1-5, which involved their training on, and day-to-day implementation of, the policies and procedures of the Pistol Licensing Bureau.   Defendant Walsh is sued herein in his individual and personal capacity only.

18.     Defendants "JOHN DOES 1-5" and "JANE DOES 1-5" (hereinafter "Does 1-5") were, at all times relevant herein, are employees of Suffolk County assigned to the Licensing Bureau and personally involved in enforcing and implementing the unconstitutional policies of the Licensing Bureau as described herein.  Does 1-5 are sued herein in their individual and personal capacities only.

19.     At all times relevant herein, each of the individual defendants were acting on behalf of, and in furtherance of, their positions in the Licensing Bureau of the Suffolk County Police Department in and for Suffolk County, New York.

20.     Suffolk County is liable for the acts and omissions of each individually named defendant, including Does 1-5, based on the existence of *Monell* liability for the unconstitutional pistol licensing polices and procedures described herein. At all times relevant herein, each of the individual defendants was acting individually and together in concert to enforce and implement the complained of policies and procedures for pistol licensing within the Suffolk County Police Department.

21.     The allegations below set herein demonstrate Defendants knowing and malicious intent to delay and obstruct the public's exercise of the pre-existing right to possess and carry firearms for self-defense, including Plaintiffs'.

**LEGAL FRAMEWORK**

**I. The Second Amendment**

22.     The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." The Second Amendment is fully applicable to the states through the Fourteenth Amendment.  See, *McDonald v. Chicago*, 561 U.S. 742 (2010).

23.     The rights protected by the Second Amendment – the right to possess and carry weapons - are "pre-existing" and "individual rights". They are not "granted" by the government.

> "Putting all of these textual elements together, we find that they **guarantee the individual right to possess and carry weapons in case of confrontation**. This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the **Second Amendment, like the First and Fourth Amendments, codified a pre-existing right**. The **very text** of the Second Amendment **implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed**." As we said in *United States v. Cruikshank*, 92 U.S. 542, 553, 23 L.Ed. 588 (1876), "[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed ....

*District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (emphasis added).

24.     Plaintiffs' right to possess and carry arms for self-defense is presumptively guaranteed. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126, 2135 (2022) ("In keeping with *Heller*, we <u>hold</u> that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."); see also, *Caetano v.*

6

*Massachusetts,* 577 U.S. __ (2016) (holding that weapons in common use for self-defense are protected within the scope of the Second Amendment).

25.    Handguns are weapons in common use for self-defense and protected within the scope of the Second Amendment. *Heller*, 554 U.S. at 629.

26.    Subjective licensing schemes - those licensing schemes that grant discretion to the government rather than employing objective criteria, violate the Second and Fourteenth Amendments. "If there be any fixed stars in our constitutional constellation, it is that no official high or petty, shall dictate whether we can exercise our fundamental constitutional rights." Reply Brief for Petitioners, *New York State Rifle & Pistol Assn. v. Bruen*, 2021 WL 943564 citing, *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943).

27.    "Going forward, therefore, the 43 States that employ objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so. Likewise, the 6 States including New York potentially affected by today's decision may continue to require licenses for carrying handguns for self-defense so long as those States employ objective licensing requirements like those used by the 43 shall-issue States." *Bruen*, 142 S.Ct. at 2162.

28.    Using objective criteria, meaning using the statutory disqualifiers to firearm possession – i.e., felony convictions, involuntary commitment to a mental health facility[1], dishonorable discharge, and the like, to either issue or deny an application for a pistol license, does not require more than 30 days.

29.    Even under "shall issue" licensing schemes, the Supreme Court cautioned that lengthy wait times violate the Second and Fourteenth Amendments. *Bruen*, 142 S. Ct. at 2138, FN

---

[1]  The records of the appropriate office of the department of mental hygiene concerning previous or present mental illness of the applicant shall be available for inspection by the investigating officer of the police authority. Penal Law § 400.00(4).

9 ("[B]ecause any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry.").

30.     Subjecting individuals to a discretionary firearm licensing process and procedure that imposes unreasonable delays and requirements in processing applications, as SCPD's policies and procedures do, is unconstitutional and must be enjoined.

**The New York State Licensing Scheme**

31.     In New York State, the possession of a handgun is a crime. [Penal Law § 265.00, *et seq.*].

32.     New York provides a pistol licensing scheme for its citizens to obtain a license, which sets forth the requirements for an applicant to apply for and obtain a pistol license. [Penal Law § 400.00, *et seq.*].

33.     The scope of the licensing officer's authority is limited to that set forth in Penal Law § 400.00. see, e.g., *Sibley v. Watches*, 194 A.D.3d 1385, 1389, leave to appeal denied, 196 A.D.3d 1094, 147 N.Y.S.3d 496 (4th Dep't 2021), and appeal dismissed, leave to appeal denied, 37 N.Y.3d 1131 (2021), reargument denied, 38 N.Y.3d 1006 (2022) (enjoining petitioner from reapplying for a pistol license for 5 years held "beyond the scope of [respondent's] powers to either deny or grant the application").

34.     Relevant to Plaintiffs, the statutory pistol licensing officer for Suffolk County is the SCPD Police Commissioner; here, Commissioner Harrison. [Penal Law § 265.00(10)]. Plaintiffs, and all similarly situated individuals, must apply for, and obtain a pistol license from, the SCPD Pistol Licensing Bureau to lawfully possess handguns.

New York State Pistol/Revolver Application

35.     By statute, pistol license applicants are required to complete the State-approved application. No other forms are required or authorized to be imposed on pistol license applicants other than the application approved by the Superintendent of the New York State Police (NYSP). [Penal Law § 400.00(3)].

36.     By statute, pistol license applicants are only required to provide the following information to apply for a pistol license:

> "full name, date of birth, residence, present occupation of each person or individual signing the same, whether or not he or she is a citizen of the United States, whether or not he or she complies with each requirement for eligibility specified in subdivision one of this section and such other facts as may be required to show the good character, competency and integrity of each person or individual signing the application.   An application shall be signed and verified by the applicant."  [Penal Law § 400.00(3)].

37.     By statute, an applicant is not required to complete any forms or provide any information other than that required by the application approved by the NYSP Superintendent. [Penal Law § 400.00(3)].

38.     The only application approved by the Superintendent of the NYSP for licensing officers to use, and required to be filed by an applicant, is the New York State Pistol/Revolver Application (the State Application).

39.     The Superintendent of the NYSP has not approved any applications, forms, or questionnaires for the obtaining a NYS pistol permit, nor has any application for such document been submitted by any jurisdiction, including SCPD.   [Exhibit 1].

<u>2 Required Photographs</u>

40.     Each applicant must also "submit one photograph of himself or herself and a duplicate for each required copy of the application. Such photographs shall have been taken within thirty days prior to filing the application." [Penal Law § 400.00(3)].

41.     The 2 required photographs may be obtained by the applicant and submitted with the NYS PPB 3. There is no statutory requirement that the licensing officer or its 'duly constituted police authority' photograph the applicant. [Penal Law § 400.00(3)].

<u>Criminal History Background Check</u>

42.     Each pistol license applicant must submit to fingerprinting, which must be transmitted to (i) the division of criminal justice services in the executive department in Albany (DCJS) and (ii) the federal bureau of investigation.

43.     Every law enforcement agency is assigned an ORI number (Originating Agency Identifier), which validates legal authorization to access Criminal Justice Information (CJI) and identifies the agency in all transactions.[2]

44.     Upstate, pistol license applicants are provided with the ORI number of the local Sheriff's Office. This allows applicants to submit their fingerprints and obtain their criminal history report (the "Report") directly from DCJS within 3-4 weeks and provide the Report to the licensing officer along with their State Application and photographs.

<u>Statutory 6-Months From Presentment of State Application to Issuance or Denial</u>

45.     By statute, licensing officers "shall accept for processing" the State Application "upon presentment." Within 6 months of the presentment of the State Application, the licensing

---

[2] https://www.justice.gov/tribal/page/file/1247566/download

officer "shall" issue the license or deny the application with reasons specifically and concisely stated in writing.[3]  Penal Law §400.00(4-a).

## SUFFOLK COUNTY LICENSING BUREAU POLICIES AND PROCEDURES

46.     SCPD's Pistol Licensing Bureau website provides links to the Guide to Obtaining a Suffolk County Pistol License, Answers to Frequently Asked Questions, Online Forms, Register for Pistol License Online, Pistol Licensing Fees, and Pistol License Contact Information.[4] [Ex. 2].

47.     Neither the SCPD website nor the local precincts provide, refer to, or mention the State Application or where to locate it. Nowhere does SCPD inform applicants that the State Application is required to be completed and filed with SCPD obtain a pistol license – a license cannot be granted without the completed State Application.

48.     It is the policy and procedure of SCPD to intentionally conceal the existence, and presentment, of the State Application from the public to prevent and significantly delay applicants' ability to obtain a pistol license.

### *SCPD Guide to Obtaining a Suffolk County Pistol License*

49.     According to the SCPD "Guide to Obtaining a Suffolk County Pistol License" (the "Guide"), applicants must (i) complete the SCPD "Applicant Questionnaire" and deliver it in person, or mail it to the Licensing Bureau[5] along with a check or money order for ten dollars ($10.00) made payable to "S.C.P.D." [Exhibit 3].

---

[3] 4-a.   Processing of license applications.   Applications for licenses shall be accepted for processing by the licensing officer at the time of presentment.   Except upon written notice to the applicant specifically stating the reasons for any delay, in each case the licensing officer shall act upon any application for a license pursuant to this section within six months of the date of presentment of such an application to the appropriate authority. Such delay may only be for good cause and with respect to the applicant.   In acting upon an application, the licensing officer shall either deny the application for reasons specifically and concisely stated in writing or grant the application and issue the license applied for.

[4] https://suffolkpd.org/Precincts-and-Specialized-Units/Specialized-Units/Pistol-License-Bureau?/

[5] Applicants may also complete the Applicant Questionnaire online, but it is unclear whether payment is accepted online as well.

50.     Next, the applicant will be called in to the Licensing Bureau for an "in-person interview" at which time he will be fingerprinted and his photograph will be taken for the license (the "Appointment"). [Exhibit 3]. The applicant must also bring certain documents to the Appointment. Relevant herein, a NYS Driver License or Non-Driver Identification, recent pay stub or employment identification, Original Birth Certificate or a valid U.S. Passport, voter registration card, utility bill, or tax bill to prove residency in Suffolk County, and payment for another fee in the form of a money order made payable to "S.C.P.D." for eighty-eight dollars and twenty-five cents ($88.25).

51.     The Guide then goes on to identify, among other things, the numerous factors that will result in the denial of a pistol license application, the disclosure requirements for each applicant (notwithstanding a fingerprint-based criminal and mental health background check) and the criminal and civil penalties imposed for lack of truthfulness. [Ex. 3].

52.     Nowhere in the Guide is the State Application referenced, nor is the public informed that a separate Application will be required or is even part of the licensing process. The Guide leads the public to believe that "Applicant Questionnaire" is **the** application to obtain a pistol license. [Ex. 2; Ex. 3].

53.     In spite of the Supreme Court's Decision in *Bruen* 2 months ago, the Guide continues to require applicants for a full carry license, for the purpose of self-protection, show "proper cause pursuant to Penal Law Section 400.00 Sub. 2(f)."[6]

---

[6] See, Ex. 3. "Full carry license, for the purpose of self-protection. If an individual is seeking a Self-Protection License, they will be required to show 'proper cause' pursuant to Penal Law Section 400.00 Sub. 2(f). 'Proper cause' is determined by a review of all relevant information bearing on their claimed need. They must show that they are exposed to extraordinary personal danger, documented by proof of recurrent threats to life or safety requiring authorization to carry a firearm."

54.     After completing SCPD's "Applicant Questionnaire," the applicant can mail or hand deliver the completed "Applicant Questionnaire" to the SCPD Licensing Bureau along with a check or money order for ten dollars ($10.00) made payable to "S.C.P.D." [Ex. 3].

55.     Once filed, the applicant must wait to be assigned to an 'investigator'.

56.     The SCPD Licensing Bureau staff has informed one or more Plaintiffs that the wait time to be assigned to an 'investigator' is **approximately 2 years**.

57.     Once assigned to an 'investigator', the applicant will thereafter eventually be contacted and scheduled for an appointment to travel to SCPD (i) to be fingerprinted for a criminal background check, (ii) photographed, (iii) and subject to a face-to-face interview with an 'investigator'.[7] It is only at this appointment that applicants are made aware of the existence of the State Application, directed to complete it, and provided by SCPD with a copy.

58.      The hours of the Licensing Bureau are Monday-Friday from 9:00 a.m. – 4:30 p.m. The Licensing Bureau only conducts fingerprinting/photographing/interview appointments on Wednesdays.

59.     The State Application requires the applicant to obtain the original signatures of 4 character references. Once completed, an applicant must then go out and obtain the signatures of their character references then return the original State Application to the Licensing Bureau.

60.     Under the SCPD polices and procedures, it is only upon the applicant's filing of the completed State Application with SCPD Licensing Bureau that the 6-month time period required by Penal Law § 400.00(4-a) begins. After waiting 2+ years for SCPD to call them in for fingerprinting and photographing, an interview, disclosure of the State Application and a copy

---

[7] Another fee of eighty-eight dollars and twenty-five cents ($88.25) is required at that time, and only in the form of a "MONEY ORDER."

thereof, SCPD takes another 6 months to make a decision to either issue or deny the license – making the SCPD licensing process a 2-3 year ordeal.

## MATERIAL FACTS

### *Zachary Giambalvo*

61.     Zachary Giambalvo ("Mr. Giambalvo"), is a resident of Suffolk County with no prohibitors to the possession of firearms. Mr. Giambalvo utilized the SCPD website to identify the process and procedure for applying for a New York State pistol license. The SCPD application process required the completion "Applicant Questionnaire" and filing of the $10 application fee made payable to "SCPD". From the SCPD website and the information provided therein, the only form required to obtain be filed to obtain a pistol license was the Applicant Questionnaire.

62.     Mr. Giambalvo completed and submitted the Applicant Questionnaire, along with the $10 fee, to the Licensing Bureau in February 2020.

63.     Months later, when Mr. Giambalvo contacted the Licensing Bureau regarding the status of his application (the Applicant Questionnaire), he was informed that his check was "never received", and he would have to submit another application and $10 fee.

64.     Mr. Giambalvo completed another Applicant Questionnaire, which he filed with the Licensing Bureau along with the $10 fee in and around June 2022. By email dated July 19, 2022, the Licensing Bureau informed Mr. Giambalvo, "there is an approximately a 2 year wait before you will hear from an investigator" to schedule the "in person interview."

65.     In August 2022, Mr. Giambalvo called the Licensing Bureau to find out when his application would be assigned to an investigator. The woman who answered the phone at the Licensing Bureau, identified as "Suzanne", stated "it's going to take about **1 ½ to 2 years** to get called for an interview."

*John Mougios*

66.     John Mougios is a resident of Suffolk County with no prohibitors to the possession of firearms. Mr. Mougios utilized the SCPD website to identify the process and procedure for applying for a New York State pistol license. The SCPD application process required the completion "Applicant Questionnaire" and filing of the $10 application fee made payable to "SCPD". From the SCPD website and the information provided therein, the only form required to obtain be filed to obtain a pistol license was the Applicant Questionnaire.

67.     Mr. Mougios completed and submitted the Applicant Questionnaire, along with the $10 fee, to the Licensing Bureau in July 2021.

68.     Mr. Mougios has not heard from the Licensing Bureau, has not been assigned to an investigator, has not been scheduled for an appointment to be fingerprinted or photographed, has not received the State Application, and will not have such an appointment for **another year** based on SCPD procedures.

*Shane Mashkow*

69.     Shane Mashkow ("Mr. Mashkow"), is a resident of Suffolk County; he has no prohibitors to the possession of firearms.

70.     In 2020, Mr. Mashkow utilized the SCPD website to identify the process and procedure for applying for a New York State pistol license. The SCPD application process required the completion "Applicant Questionnaire" and filing of the $10 application fee made payable to "SCPD". From the SCPD website and the information provided therein, the only form required to obtain be filed to obtain a pistol license was the Applicant Questionnaire.

71.     Mr. Mashkow completed and submitted the Applicant Questionnaire, along with the $10 fee, to the Licensing Bureau.

72.     Months later, and in and around November/December 2021, Mr. Mashkow called the Licensing Bureau regarding the status of his application. Like Mr. Giambalvo, he was informed that his check was "never received" and that he would have to submit another application and $10 fee.

73.     Mr. Mashkow completed another Applicant Questionnaire, which he filed with the Licensing Bureau along with the $10 fee in February 2022.

74.     In July 2022, Mr. Mashkow called and emailed the Licensing Bureau to find out when he would be called in to be fingerprinted. The woman at the Licensing Bureau laughed, then stated that he should get an appointment sometime in February 2024. The email response from the Licensing Bureau on July 14, 2022 indicated the office was "currently processing November/December 2020, there is an extremely long wait for the interview."

75.     Mr. Mashkow works in New York City from Monday-Friday and must leave his residence before 9:00 a.m. and does not return until after 4:30 p.m. When called to be fingerprinted, Mr. Mashkow will be required to miss work because the Licensing Bureau is only open Monday – Friday from 9:00 a.m. until 4:30 p.m.

*Kevin McLaughlin*

76.     Kevin McLaughlin ("Mr. McLaughlin"), is a resident of Suffolk County and a U.S. Marine reservist. Mr. McLaughlin has no prohibitors to the possession of firearms.

77.     Mr. McLaughlin utilized the SCPD website to identify the process and procedure for applying for a New York State pistol license. The SCPD application process required the completion "Applicant Questionnaire" and filing of the $10 application fee made payable to "SCPD". From the SCPD website and the information provided therein, the only form required to obtain be filed to obtain a pistol license was the Applicant Questionnaire.

16

78.     Mr. McLaughlin completed and submitted the Applicant Questionnaire, along with the $10 fee, to the Licensing Bureau in July 2022. Mr. McLaughlin contacted the Licensing Bureau approximately 1 month later to see how long it would be before he was called in to be fingerprinted. Mr. McLaughlin was informed by the Licensing Bureau that he would not be called in to be fingerprinted for **approximately 3 years – in and around July 2025.**

### *Michael McGregor*

79.     Michael McGregor is a resident of Suffolk County and a practicing physician. Dr. McGregor has no prohibitors to the possession of firearms.

80.     Dr. McGregor utilized the SCPD website to identify the process and procedure for applying for a New York State pistol license. The SCPD application process required the completion "Applicant Questionnaire" and filing of the $10 application fee made payable to "SCPD". From the SCPD website and the information provided therein, the only form required to obtain be filed to obtain a pistol license was the Applicant Questionnaire.

81.     Dr. McGregor completed and submitted the Applicant Questionnaire, along with the $10 fee, to the Licensing Bureau on or about November 13, 2020. Dr. McGregor contacted the Licensing Bureau on or about October 13, 2021 regarding the status of his application and was informed that no decision had been made because the Pistol Licensing Bureau was currently "working on pistol license applications from August 2020."

82.     Dr. McGregor was not issued a pistol license by SCPD until March 24, 2022 – **16 months later**.

83.     Only when an applicant, like Plaintiffs, appears for an appointment to be fingerprinted, photographed, and 'interviewed' does SCPD (i) inform the applicant that they are required to complete another form – the <u>only</u> form required by statute to be completed and filed in

order to obtain a pistol license (the State Application) and (ii) provide the State Application to the applicant.

83.     Only after completing and submitting 2 original State Application forms with the SCPD Licensing Bureau does SCPD consider the application process "commenced" such that the 6-month statutory clock begin to run.

84.     Once the State Application is filed with the Licensing Bureau, the 'investigator' 'investigates' the application, submits a recommendation to Defendants, and a determination is made by and between Defendants to either issue the pistol license or deny the application.

85.     All Plaintiffs seek an unrestricted carry license without having to prove "proper cause."

**SCPD's Procedures Impede the Filing of the Required Pistol License Application**

86.     The SCPD website[8] provides several forms, none of which are the State Application. The only forms SCPD makes available to the public on its website are forms that are neither authorized by, nor required under, Penal Law § 400.00(3) to be completed by an applicant and/or filed as part of the pistol licensing process.

87.     SCPD does not make the State Application available to the public, nor does it inform its residents that the State Application is required to be completed and filed for a pistol license to issue, or for the pistol licensing process to be "commenced" by SCPD and the 'investigation' to begin.

88.     SCPD created and utilizes the Applicant Questionnaire to collect money and create the impression that it is an application, which it is not. SCPD intentionally refrains from providing

---

[8] https://suffolkpd.org/Precincts-and-Specialized-Units/Specialized-Units/Pistol-License-Bureau?/

its residents with the State Application to substantially delay the licensing process and induce applicants to file the Applicant Questionnaire and tender the initial filing fee.

89.     By excluding the only form authorized by the State and required to be filed to obtain a pistol license, SCPD's licensing process and procedure is designed to intentionally impede the Second and Fourteenth Amendment rights of Suffolk County residents, including Plaintiffs. Without submitting the State Application, the licensing process cannot be commenced or completed and is, essentially, a sham and a fraud on the Suffolk County community.

90.     Defendants' creation of a separate and unauthorized form that in part mimics the State Application, Defendants falsely and intentionally misleads the public, including Plaintiffs, into believing that the Applicant Questionnaire is the pistol license application and that their filing of such form commences the licensing process, which it does not.

91.     If Defendants did provide the State Application on its licensing website page, the residents of Suffolk County would have access to the Application, the ability to complete and present the State Application to SCPD for processing, which SCPD would be required to "accept for processing." [Penal Law § 400.00(4-a)].

***Fingerprinting by SCPD is Unnecessary and Intentionally Impedes Legal Firearm Possession***

92.     Under its process and procedure, SCPD requires pistol license applicants to be fingerprinted at SCPD and then delays scheduling an applicant's appointment for fingerprinting an average of **2-3 years** from the submission of the initial filing fee of $10.

93.     In upstate counties, applicants do not have to schedule an appointment with the licensing officer or its 'duly constituted police authority' and thereafter wait to be called in to be fingerprinted, a step that SCPD uses to substantially prolong the pistol license application process.

94.     In other counties in New York State, applicants are provided with an ORI number[9] specific to that law enforcement agency [duly constituted police authority] and directed to a third party (IdentoGo) to have their fingerprints taken electronically. The applicant's fingerprints are electronically submitted by IdentoGo to the New York State Division of Criminal Justice Services (DCJS) in Albany, the State's criminal database. DCJS conducts an unsuppressed criminal history background check on the applicant and mails the DCJS criminal history report (rap sheet) to the applicant who then submits to the licensing officer [via the duly constituted police authority] their completed State Application and DCJS criminal history report for processing. [See, Exhibit]. The criminal history report that an applicant would obtain from DCJS through the IdentoGo process is the same criminal history report that SCPD would obtain after fingerprinting applicants at SCPD.

95.     Criminal history reports are generally provided by DCJS to the applicant within 3-4 weeks of their appointment with IdentoGo.[10]  The fee is nominal, at $13.50. *Id.*

96.     Every law enforcement agency has an assigned ORI, including SCPD. SCPD's failure to provide applicants with their ORI number to enable them to obtain their criminal history report directly through IdentoGo unnecessarily and substantially prolongs and impedes the licensing process in violation of the Second and Fourteenth Amendments.

97.     Defendants' (i) failure to provide the State Application on the SCPD Licensing Bureau webpage and at SCPD precincts; (ii) ) prolonged periods of delay for an applicant to be assigned to an investigator (**2+ years**) in the first instance; (iii) prolonged period of delay for a determination of one's pistol license application (**2+ years**);  (iv) absence of the SCPD ORI number on the SCPD website and at local precincts, preventing applicants from obtaining their

---

[9] An ORI number is the "Originating Case Identifier", or the number assigned to the law enforcement agency requesting an unsuppressed criminal background check.
[10] https://www.criminaljustice.ny.gov/ojis/recordreview.htm

criminal history reports directly and in a more timely manner for submission with their State Application; (v) requirement that applicants complete and submit any forms, questionnaires, or attachments other than the State Application, including the SCPD "Applicant Questionnaire"; (vi) requirement that applicants have a face-to-face interview with an 'investigator'; (vii) and requirement that the 2 statutorily required photographs be taken during the SCPD fingerprinting appointment rather than filed by applicants with their State Application, each separately and jointly violate the Second and Fourteenth Amendments.

98.     If the SCPD website and local precincts provided the State Application, made the SCPD ORI Number available to allow applicants to swiftly obtain their criminal history, allowed applicants to provide the 2 required photographs when submitting with the State Application, and dispensed with the unauthorized face-to-face interview, a determination on an applicant's pistol license application could reasonably be made within 30 days of submission of the application, DCJS criminal history report, photographs, and fee.

99.     The public, including Plaintiffs, is misled by SCPD's website and publications to believe that the Applicant Questionnaire is the 'application' and the appointment to be scheduled is simply to be fingerprinted, photographed, and interviewed. No one is informed of the existence of the State Application, that the State Application is **the only form** required to be filed, or that the application would not even be made available to them for at least 2 years.

100.    SCPD will not accept a completed State Application from applicants until the appointment for fingerprinting, photographing, and interviewing. Plaintiffs cannot obtain their criminal history report directly from DCJS (through IdentoGo) like applicants in other New York counties because SCPD does not provide its ORI number. Even if Plaintiffs knew the SCPD ORI

number, SCPD would not accept a DCJS criminal history report unless SCPD conducts the fingerprinting.

101. Other than Dr. McGregor who finally received his pistol license, but to whom Defendants are still liable for compensatory and punitive damages, no Plaintiff has been assigned to an investigator and, under SCPD's procedures, no Plaintiff will be fingerprinted, photographed, or provided with the State Application until some Wednesday in **2024** at the earliest.

102. Defendants' implementation and enforcement of the policies and procedures described herein warrants an award of punitive damages. Defendants are the sole means for Plaintiffs to lawfully possess handguns for self-defense. Plaintiffs rely on the Defendants to provide the requisite information and forms and expect that Defendants will uphold their oaths of office to enforce and abide by the U.S. Constitution, which they do not.

103. Defendants know that (i) the Applicant Questionnaire is not authorized by the State to be imposed on applicants; (ii) the State Application is required to be completed and filed to obtain a pistol license but conceal it from the public; (iii) Defendants are required by statute to accept the State Application "upon presentment"; and (iv) they must complete the process within 6 months.

104. Defendants' implementation of the licensing procedures in spite of the above bears out the knowing and intentional disregard for the Second Amendment rights of Plaintiffs and all similarly situated individuals.

105. The SCPD policies and procedures have caused Plaintiffs to suffer, *inter alia,* the presumed violation of their constitutional rights as protected by the Second and Fourteenth Amendments, presumed damages resulting from the violation of their constitutional rights in at least a nominal amount, and they have otherwise been rendered sick and sore.

106.     Plaintiffs seek to have the SCPD policies and procedures set forth herein declared unconstitutional and in violation of the Second and Fourteenth Amendments. Plaintiffs further seek to have the SCPD policies and procedures set forth herein temporarily and permanently enjoined from further enforcement and implementation.

107.     Plaintiffs further seek an injunction of Defendants' policies and procedures and an Order requiring Commissioner Harrison, in his official capacity, to (i) immediately provide the New York State Pistol/Revolver Application on its website and its local precincts (the State Application); (ii) accept the State Application for filing from applicants upon presentment; (iii) fingerprint applicants upon presentment of the State Application or, in the alternative, provide the SCPD ORI number on its website and local precincts to allow applicants to obtain the same fingerprint-based report from the New York State Division of Criminal Justice Services; (iv) photograph applicants upon presentment of the State application or, in the alternative, allow applicants to submit the 2 statutorily required photographs at the time of presentment of the State Application; and (v) cease subjecting applicants to an interview process; (vi) remove from the SCPD policies, materials, handbook, and website the requirement that an applicant show "proper cause" for the issuance of a concealed carry license; and (vii) provide hours of accessibility outside of the currently restricted hours of Monday-Friday from 9:00 – 4:30 p.m.

## COUNT I
## U.S. CONST., AMEND. II and XIV, 42 U.S.C. § 1983

108.     Repeat and reallege paragraphs "1" through and including "107".

109.     Under the theory that each and every defendant is liable to plaintiffs for violations of their preexisting and guaranteed individual rights as protected by the Second Amendment, and made applicable to the States through the Fourteenth Amendment, to the U.S. Constitution. 42 U.S.C. §1983.

## COUNT II
## U.S. CONST., AMEND. XIV, 42 U.S.C. § 1983

110.    Repeat and reallege paragraphs "1" through and including "109".

111.    Under the theory that each and every defendant is liable to plaintiffs for violations
of their right to procedural due process under the Fourteenth Amendment.

## COUNT III
## *MONELL* LIABILITY

112.    Repeats and realleges paragraphs "1" through and including "111".

113.    Under the theory that, by creating, maintaining, enforcing, following, and/or
applying the unconstitutional policy described herein, the County of Suffolk is liable to the
plaintiff under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct.
2018 (1978) for the violations of Plaintiffs' constitutional rights as plead herein, 42 U.S.C.
§1983.

WHERFORE, a Judgment and Order is respectfully requested:

- Declaring that the policies, processes, and procedures enforced and implemented by SCPD
  New York State pistol licenses violate the Second and Fourteenth Amendments to the U.S.
  Constitution;

- Granting temporary and permanent injunctive relief ordering Police Commissioner
  Harrison, in his official capacity, and his agents, employees, and those acting in concert
  with him including the individually named defendants: (i) immediately provide the New
  York State Pistol/Revolver Application on its website and its local precincts (the State
  Application); (ii) accept the State Application for filing from applicants upon presentment;
  (iii) fingerprint applicants upon presentment of the State Application or, in the alternative,
  provide the SCPD ORI number on its website and local precincts to allow applicants to

24

obtain the same fingerprint-based report from the New York State Division of Criminal Justice Services; (iv) photograph applicants upon presentment of the State application or, in the alternative, allow applicants to submit the 2 statutorily required photographs at the time of presentment of the State Application; and (v) cease subjecting applicants to an interview process; (vi) remove from the SCPD policies, materials, handbook, and website the requirement that an applicant show "proper cause" for the issuance of a concealed carry license; and (vii) provide hours of accessibility outside of the currently restricted hours of Monday-Friday from 9:00 – 4:30 p.m.

- Awarding in favor of Plaintiffs and against each and every defendant presumed compensatory damages in at least in a nominal amount for the presumed violation of the Second and Fourteenth Amendments;

- Awarding against each and every individually named defendant punitive damages as a jury may determine;

- Awarding costs, disbursements, and reasonable statutory attorney's fees pursuant to 42 USC 1988; and

- Granting such other, further, and different relief as to this Court seems just, equitable, and proper.

Dated: August 15, 2022
Scarsdale, New York

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiffs*

By: _____
Amy L. Bellantoni (AB3061)
2 Overhill Road, Suite 400
Scarsdale, New York 10583
(914) 367-0090 (t)
(888) 763-9761 (f)

25