UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ZACHARY GIAMBALVO, JOHN MOUGIOS,
SHANE MASHKOW, KEVIN MCLAUGHLIN,
MICHAEL MCGREGOR, FRANK MELLONI,
and RENAISSANCE FIREARMS INSTRUCTION,
INC., and all similarly situated individuals,

                          Plaintiffs,            22 Civ. 04778 (GRB)(ST)

     -against-                      **FIRST AMENDED**
                                     **COMPLAINT FOR**
SUFFOLK COUNTY, New York,        **DECLARATORY AND**
Police Commissioner RODNEY HARRISON,  **INJUNCTIVE RELIEF**
in his Official Capacity, MICHAEL
KOMOROWSKI, Individually, ERIC BOWEN,
Individually, WILLIAM SCRIMA, Individually,
WILLIAM WALSH, Individually, THOMAS      **Jury Trial Demanded**
CARPENTER, Individually, JOHN DOES
1-5, Individually and JANE DOES 1-5,
Individually, Acting Superintendent of the New York
State Police STEVEN NIGRELLI, in his Official
Capacity,
                        Defendants.
----------------------------------------------------------------x

       Plaintiffs, ZACHARY GIAMBALVO, JOHN MOUGIOS, SHANE MASHKOW, KEVIN

MCLAUGHLIN, MICHAEL MCGREGOR, FRANK MELLONI, and RENAISSANCE

FIREARMS INSTRUCTION, INC., and on behalf of all similarly situated individuals for their

First Amended Complaint respectfully state:

## NATURE OF THE ACTION

      1.    This is an action for, *inter alia*, declaratory and injunctive relief, presumed

compensatory damages in at least a nominal amount for violations of the First, Second, Fourth and

Fourteenth Amendments [42 U.S.C. § 1983], economic damages, and punitive damages against

the individually named defendants proximately resulting from (i) the enforcement of Suffolk

County policies and procedures related to handgun licensing; (ii) the enforcement of

1

unconstitutional state statutes; and (iii) Suffolk County's failure to train, supervise, and discipline the staff of the Licensing Bureau.

2.      The process for applying for and obtaining a handgun license from the Suffolk County Police Department (SCPD) is crushing – and by design. The Suffolk County Defendants intentionally and purposely obstruct the purchase, possession, and carrying of handguns by ordinary citizens, like Plaintiffs.

3.      For a new applicant, obtaining a handgun license takes ***between 2-3 years***.

4.      SCPD enforces unconstitutional state statutes, including New York's Concealed Carry Improvement Act (CCIA) (Senate Bill 51001), which mandates an in-person interview, disclosure of social media accounts, the name/contact information of significant others, spouse, and cohabitants, the subjective and overbroad attestations of four character references, 18-hour training requirements, and among other things, a catch-all provision requiring any other "information required by the licensing officer that is reasonably necessary and related to the review of the licensing application."

5.      As of September 1, 2022, unlicensed citizens seeking applying for an unrestricted concealed carry handgun license must complete the amended New York State Pistol/Revolver Application (PPB-3 08/22), which incorporates unconstitutional state requirements including those enumerated in Penal Law section 400.00(1)(o) and the 18-hour training course required by section 400.00(19).

6.      Unlicensed individuals who want to get the CCIA training out of the way while they await the issuance of their handgun license risk arrest and incarceration under an SCPD policy that ignores the state law exemption. Under SCPD policy, any unlicensed individual taking a live-

fire training class with a duly authorized instructor will be arrested and put in jail, as will the instructor.

7.     As for licensees whose existing concealed carry[1] license is restricted to 'target shooting', 'hunting', or 'sportsman', SCPD requires filing an amendment application and paying a fee to remove unconstitutional restrictions, rather than deeming the licenses 'unrestricted.' The only reason such licenses were not 'unrestricted' upon issuance was the enforcement of the 'proper cause' requirement banned by the Supreme Court in *Bruen*.

8.     SCPD's policy is to apply the CCIA regulations, including the 18-hour training requirement, to existing restricted carry licensees who seek to have their carry restrictions removed; but the CCIA does not apply to existing concealed carry licenses until the renewal period. Put differently, the CCIA only applies at issuance and renewal. SCPD's policy is unconstitutional.

9.     Restricted carry licensees who carry outside of their restriction category face a credible threat of arrest, incarceration, license revocation, and other criminal and civil penalties by SCPD and the New York State Police under Penal Law section 400.00(15).

10.     As if the provisions of the CCIA were not enough, Penal Law section 400.30 grants free reign to municipalities statewide to implement "any local law, code, ordinance, rule or regulation that is *more restrictive* than any requirement set forth in or established by this article."

11.     This action seeks a declaration (1) that Penal Law sections 400.00(1)(b), 400.00(1)(o), 400.00(19), 400.30, and that portion of section 400.00(4-a) allowing statutory licensing officers 6 months to either issue a license or deny an application made thereunder violate the Second and Fourteenth Amendments; (2) that enforcing Penal Law section 400.00(15) against handgun licensees who carry a handgun registered thereon outside of their license restriction

---

[1] "CCW."

violates the Second and Fourteenth Amendments; (3) that a licensing process that exceeds 30 days from the presentment of the completed New York State Pistol/Revolver License Application (PPB-3) to the issuance of a license (or denial thereof) violates the Second and Fourteenth Amendments; and that (4) enforcement of a policy that subjects unlicensed individuals and duly authorized firearm instructors to arrest and incarceration in the context of live-fire handgun training violates the First, Second, Fourth, and Fourteenth Amendments.

***Prohibitory Injunction Against Suffolk County Police Commissioner Harrison***

12.     Plaintiffs are entitled to a preliminary and permanent injunction against Suffolk County Police Commissioner Rodney Harrison, and all successors, his officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with such defendants, who receive actual notice thereof from (1) implementing and enforcing Penal Law sections 400.00(1)(b), 400.00(1)(o), 400.00(19), 400.30, that portion of section 400.00(4-a) allowing statutory licensing officers 6 months to either issue a license or deny an application made thereunder, and section 400.00(15) against handgun licensees who carry a handgun registered thereon outside of their license restriction; (2) implementing a licensing process that exceeds 30 days between presentment of the completed New York State Pistol/Revolver License Application (PPB-3) and issuance of a license (or denial thereof); (3) compelling applicants to complete the SCPD "Applicant Questionnaire"; (4) requiring applicants to be personally interviewed; (5) continuing to require "proper cause" for the issuance of a concealed carry license; and (6) enforcing a Suffolk County policy that subjects unlicensed individuals who participate in live-fire training with a duly authorized instructor to criminal penalties including arrest and incarceration.[2]

---

[2] Penal Law § 265.20 exempts unlicensed individuals from criminal penalties for engaging in live-fire training with a duly authorized instructor.

***Prohibitory Injunction Against Acting Superintendent Nigrelli***

13.    Plaintiffs are entitled to a preliminary and permanent injunction against Acting Superintendent of the New York State Police Steven Nigrelli and all successors, his officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with him, who receive actual notice thereof from (1) publishing, implementing, and enforcing those sections of the New York State Pistol/Revolver Application PPB-3 (Rev. 08/22) that incorporate Penal Law section 400.00(1)(o) [PPB-3 page 2]; and (2) enforcing Penal Law section 400.00(15) against handgun licensees who carry a handgun concealed outside of their license restriction.

***Mandatory Injunction Against Suffolk County Police Commissioner Harrison***

14.    Plaintiffs are entitled to a preliminary and permanent mandatory injunction compelling Suffolk County Police Commissioner Rodney Harrison (and all successors) to: (i) provide the New York State PPB-3 application on the Suffolk County Police Department website and local police precincts; (ii) accept the PPB-3 for filing from all applicants upon presentment; (iii) fingerprint applicants upon presentment of the completed PPB-3 or, in the alternative, publish the Suffolk County Police Department ORI number on its website and in local precincts for applicants to submit their fingerprints directly to the New York State Division of Criminal Justice Services; (iv) photograph applicants upon presentment of the completed PPB-3 or, in the alternative, accept 2 statutorily required photographs from applicants upon presentment of the PPB-3; (v) cease publishing information that requires (and requiring) applicants show "proper cause" for the issuance of a concealed carry license; (vi) provide hours of public accessibility outside of the Licensing Bureau's currently restricted hours of Monday-Friday from 9:00 – 4:30 p.m.; and (vii) within 30 days of presentment of the completed PPB-3 application, issue a license

to all applicants eligible to possess firearms under state and federal law and provide ineligible applicants with a written notice specifying the grounds for denial.

## JURISDICTION AND VENUE

15.     Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or immunities secured by the United States Constitution.  This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, 42 U.S.C. §§ 1983 and 1988. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

16.     Plaintiffs, ZACHARY GIAMBALVO, JOHN MOUGIOS, SHANE MASHKOW, KEVIN MCLAUGHLIN, MICHAEL MCGREGOR, and FRANK MELLONI, are all natural persons and residents of those portions of Suffolk County, New York subject to the jurisdiction of the Suffolk County Police Commissioner for the issuance of a New York State pistol license.

17.     Plaintiffs Zachary Giambalvo, John Mougios, Shane Mashkow, and Kevin McLaughlin have all submitted to the procedures implemented by the SCPD Licensing Bureau for applying for a New York State handgun license.

18.     Plaintiff Michael McGregor applied to the SCPD Licensing Bureau for a handgun license and, ***after 16 months*** (and the institution of a lawsuit to compel the Suffolk County Police Commissioner to issue a determination), Dr. McGregor was finally issued a handgun license restricted to 'sportsman' carry.

19.     Plaintiffs Zachary Giambalvo, John Mougios, Shane Mashkow, Kevin McLaughlin, and Michael McGregor all intend to carry a handgun in public for self-defense.

20.     Plaintiff Frank Melloni is a duly authorized firearms instructor, certified by the National Rifles Association.

21.     Plaintiff RENAISSANCE FIREARMS INSTRUCTION, INC. ("RFI"), is a corporation duly organized under the laws of the State of New York and located in Suffolk County, New York.

22.     RFI provides firearms training to individuals through its various instructors, including Frank Melloni. RFI offers an 18-hour training course that meets the requirements of Penal Law § 400.00(19), as enacted by the CCIA.

23.     Defendant, SUFFOLK COUNTY, New York (hereinafter the "County"), is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of the State.

24.     Defendant, RODNEY HARRISON, (hereinafter "Commissioner Harrison"), is the Police Commissioner of Suffolk County and has held that position since January 11, 2022. Commissioner Harrison is sued in his official capacity only.

25.     As the Suffolk County Police Commissioner, Harrison is the statutory "licensing officer"[3] with the authority to issue licenses under Penal Law § 400.00 for the western towns of Suffolk County, New York.

26.     Commissioner Harrison is properly named as the individual responsible for ensuring that the requested prospective injunctive relief is carried out. *Koehl v. Dalsheim*, 85 F.3d 86, 89 (2d Cir. 1996).

---

[3] Penal Law § 265.00(10).

27.     Defendant MICHAEL KOMOROWSKI (hereinafter "Lt. Komorowski") is the lieutenant of the Suffolk County Pistol Licensing Bureau and employee of Suffolk County.  Lt. Komorowski is sued herein in his individual and personal capacity only.

28.     Lt. Komorowski is personally involved in and directly responsible for enforcing and implementing the licensing policies and procedures of the SCPD Licensing Bureau. Lt. Komorowski has day-to-day direct supervisory, personal, and directional authority over the police officers and/or investigators assigned to the Pistol Licensing Bureau, including Sgt. Eric Bowen, John Does 1-5 and Jane Does 1-5, including their training on, and day-to-day implementation of, the policies and procedures of the Licensing Bureau.

29.     As set forth herein, and based on Frank Melloni's prior dealings with him, Lt. Komorowski has the authority to, and does, create the policies and procedures of the SCPD Licensing Bureau.

30.     At all times relevant herein, Lt. Komorowski enforced and implemented state statutes and SCPD policies and procedures challenged herein with the intention and/or in deliberate disregard Plaintiffs' (and all similarly situated individuals') Second and Fourteenth Amendment rights.

31.     Lt. Komorowski has arrest powers and the authority to direct SCPD police officers to arrest and confine individuals at his direction.

32.     Defendant Sergeant ERIC BOWMAN (hereinafter "Sgt. Bowman") is assigned to the SCPD Pistol Licensing Bureau and an employee of Suffolk County.  Defendant Bowman is sued herein in his individual and personal capacity only.

33.     Sgt. Bowman has day-to-day direct supervisory and directional authority over the police officers and/or investigators assigned to the Pistol Licensing Bureau, John Does 1-5 and

Jane Does 1-5, including their training on, and day-to-day implementation of, the policies and procedures of the Pistol Licensing Bureau.

34.     At all times relevant herein, Bowman enforced and implemented state statutes and SCPD policies and procedures challenged herein with the intention and/or in deliberate disregard Plaintiffs' (and all similarly situated individuals') Second and Fourteenth Amendment rights.

35.     Relevant to Michael McGregor, and in 2020-2021, defendant WILLIAM SCRIMA (hereinafter "Captain Scrima") was assigned to the SCPD Pistol Licensing Bureau. Captain Scrima had day-to-day direct supervisory and authority over the police officers and/or investigators assigned to the Pistol Licensing Bureau including Sgt. William Walsh, and certain of the John and Jane Does, and Investigator Carpenter, which involved their training on, and day-to-day implementation of, the policies and procedures of the Pistol Licensing Bureau.  Defendant Scrima is sued herein in his individual and personal capacity only.

36.     At all times relevant to Plaintiff McGregor herein, Scrima enforced and implemented the state statutes and SCPD policies and procedures challenged herein with the intention and/or in deliberate disregard of McGregor's Second and Fourteenth Amendment right to purchase, possess, and carry handguns.

37.     Relevant to Michael McGregor, and in 2020-2021, Defendant WILLIAM WALSH (hereinafter "Sgt. Walsh") was assigned to the Pistol Licensing Bureau. Sgt. Walsh had day-to-day direct supervisory and directional authority over the police officers and/or investigators assigned to the Pistol Licensing Bureau, including certain of the John and Jane Does 1-5 and Investigator Carpenter, which involved their training on, and day-to-day implementation of, the policies and procedures of the Pistol Licensing Bureau. Defendant Walsh is sued herein in his individual and personal capacity only.

38.     At all times relevant to Plaintiff McGregor, Sgt. Walsh Scrima enforced and implemented the state statutes and SCPD policies and procedures challenged herein with the intention and/or in deliberate disregard of McGregor's Second and Fourteenth Amendment right to purchase, possess, and carry handguns.

39.     Defendant THOMAS CARPENTER ("Inv. Carpenter") has been an applicant investigator in the SCPD Licensing Bureau since December 2009. Defendant Carpenter is sued herein in his individual and personal capacity only.

40.     Carpenter has implemented and enforced the SCPD policies and procedures throughout his employment with SCPD, and was the investigator assigned to Plaintiff McGregor's handgun license application.

41.     At all times relevant to Plaintiff McGregor herein, Carpenter enforced and implemented the state statutes and SCPD policies and procedures challenged herein with the intention and/or in deliberate disregard of McGregor's Second and Fourteenth Amendment right to purchase, possess, and carry handguns.

42.     Defendants JOHN DOES 1-5 and/or  JANE DOES 1-5 (the "Does") sued in their individual capacity, were at all times relevant herein, employees of Suffolk County assigned to the Licensing Bureau.

43.     The Doe defendants include SCPD employees personally involved in creating, enforcing and/or implementing the unconstitutional state statutes and SCPD policies challenged herein, including without limitation, those designed and intended to circumvent Penal Law § 400.00(4-a); compelling submission of the "Applicant Questionnaire"; withholding publication of the State PPB-3 Application to the public; refusing presentment of the completed State PPB-3

Application; and restricting hours of operation; limiting interview/fingerprinting days to 1 day per week.

44.     Does 1-5 acted, and failed to act, in deliberate disregard for the presumptively protected constitutional rights of Plaintiffs and all similarly situated individuals.

45.     To reiterate, Komorowski, Bowman, Scrima, Walsh, Carpenter, and the Does, acting individually and/or in concert, enforced and implemented SCPD policies and procedures challenged herein knowingly, intentionally, and/or in deliberate disregard of Plaintiffs' (and all similarly situated individuals') Second and Fourteenth Amendment rights.

46.     At all relevant times, the individual Suffolk County Defendants were acting on behalf of, and in furtherance of, their positions as employees of the Suffolk County Police Department.

47.     Suffolk County is liable for the acts and omissions of each individually named defendant, including the Does, based on the existence of *Monell* liability for the unconstitutional SCPD policies and procedures described herein.

48.     Defendant STEVEN NIGRELLI is the Acting Superintendent of the New York State Police (NYSP) whose principal place of business is in Albany, New York. Superintendent Nigrelli is sued in his official capacity only.

49.     As the Acting Superintendent of the NYSP, Nigrelli supervises and oversees the NYSP Pistol Permit Bureau, and is statutorily responsible for creating, publishing, and enforcing use of the New York State Pistol/Revolver Application PPB-3, required by statute to be used by every licensing officer statewide for the licensing process under § 400.00 (except in the City of New York). Penal Law § 400.00(3).

50.     Approval of the NYSP Superintendent of Police is required before for any licensing officer may use any application other than the New York State Pistol/Revolver Application PPB-3.[4]

## LEGAL FRAMEWORK

### I. The First Amendment

51.     Congress shall make no law…abridging the freedom of speech.

52.     The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347 (1976), *accord*, *Paulsen v. County of Nassau*, 925 F.2d 65, 68 (2d Cir.1991) (even a temporary abridgment of the First Amendment right to free expression constitutes an irreparable injury).

### II. The Second Amendment

53.     The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." The Second Amendment is fully applicable to the states through the Fourteenth Amendment.  See, *McDonald v. Chicago*, 561 U.S. 742 (2010).

54.     The rights protected by the Second Amendment – the right to possess and carry weapons - are "pre-existing" and "individual rights". They are not "granted" by the government.

> "Putting all of these textual elements together, we find that they **guarantee the individual right to possess and carry weapons in case of confrontation**. This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the **Second Amendment, like the First and Fourth Amendments, codified a pre-existing right**. The **very text** of the Second Amendment **implicitly recognizes the pre-existence of the right and declares only that it "shall not**

---

[4] "Blank applications shall, except in the city of New York, be approved as to form by the superintendent of state police." Penal Law § 400.00(3).

>   **be infringed**." As we said in *United States v. Cruikshank*, 92 U.S. 542, 553, 23
>   L.Ed. 588 (1876), "[t]his is not a right granted by the Constitution. Neither is it
>   in any manner dependent upon that instrument for its existence. The second
>   amendment declares that it shall not be infringed ....

*District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (emphasis added).

55.     The right to possess and carry weapons for self-defense is presumptively guaranteed. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126, 2135 (2022) ("In keeping with *Heller*, we <u>hold</u> that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.") (emphasis added); see also, *Caetano v. Massachusetts,* 577 U.S. __ (2016) (weapons in common use for self-defense are protected within the scope of the Second Amendment).

56.     Under the *Bruen* test for analyzing Second Amendment challenges:

>   "When the regulated conduct falls within the plain text of the Second
>   Amendment, the Constitution *presumptively protects* that conduct.

>   The government must then justify its regulation by demonstrating that it is
>   consistent with the Nation's historical tradition of firearm regulation.

>   *Only then* may a court conclude that the individual's conduct falls outside the
>   Second Amendment's 'unqualified command.'"

*Bruen*, at 2126 (emphasis added).

57.     Handguns are weapons in common use for self-defense and protected within the scope of the Second Amendment. *Heller*, 554 U.S. at 629.

58.     Subjective licensing schemes that imbue discretion in a government official, rather than employing objective criteria, violate the Second and Fourteenth Amendments. "If there be any fixed stars in our constitutional constellation, it is that no official high or petty, shall dictate whether we can exercise our fundamental constitutional rights." Reply Brief for Petitioners, *New York State Rifle & Pistol Assn. v. Bruen*, 2021 WL 943564 citing, *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943).

59.     "Going forward, therefore, the 43 States that employ objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so." *Bruen*, 142 S.Ct. at 2162.

60.     "Likewise, the 6 States including New York potentially affected by today's decision may continue to require licenses for carrying handguns for self-defense *so long as* those States employ objective licensing requirements like those used by the 43 shall-issue States." *Ibid.*

61.     The *Bruen* Court conditioned the constitutional survival of 'may issue' licensing schemes like New York on the prompt conversion to objective factors "like those used by the 43 shall-issue states." *Bruen*, at 2162. But, of the plethora of additional regulations imposed since the *Bruen* opinion, none convert New York's licensing scheme from its constitutionally prohibitive 'may issue' condition to an objective 'shall issue' one.

62.     Rather than comply, the CCIA regulations exacerbate defective and antiquated regulations. Adding to the State-imposed barricades, Suffolk County policies further obstruct the path to the free exercise of conduct protected by the Second and Fourteenth Amendments.

63.     Even for those states with "shall issue" licensing schemes[5], the Supreme Court cautioned that <u>lengthy wait times</u> violate the Second and Fourteenth Amendments. *Bruen*, 142 S. Ct. at 2138, FN 9 ("[B]ecause any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, <u>lengthy wait times</u> in processing license applications or exorbitant fees deny ordinary citizens their right to public carry.") (emphasis added).

64.     Requiring a license to purchase or possess a firearm is inconsistent with this Nation's historical tradition of firearm regulation, particularly for long guns which have been

---

[5] https://crimeresearch.org/2022/04/twenty-five-states-have-constitutional-carry/ Twenty-five states do not require a license to possess firearms – deemed "constitutional carry" states. Of the remaining states, 18 are "shall issue" and 7 states are discretionary "may issue" states – New York, New Jersey, California, Massachusetts, Rhode Island, Maryland, Hawaii – and the District of Columbia.

freely owned, possessed, and carried since the mid-1600s.[6] Had it been our Nation's history and tradition to require the People to seek and obtain permission from the government before exercising the preexisting right to 'keep and bear Arms' the Second Amendment's edict prohibiting *infringement* of such conduct would have been in vain. Of course, there is no such historical tradition.

### New York State General Business Law Section 898
### Private Sale or Disposal of Firearms, Rifles and Shotguns

65.     In New York State, all sales, exchanges, or disposals of firearms, rifles, or shotguns shall be preceded by a National Instant Criminal Background Systems (NICS).[7]

66.     Federally licensed firearms dealers (FFLs) are prohibited from allowing the transfer of a firearm to an individual whose NICS check does not either result in a "proceed" response to the dealer or in the event of a NICS "delay" result, thirty calendar days have elapsed since the date the dealer contacted NICS to initiate a NICS check and no "deny" has been received. FFLs are prohibited from transferring a firearm to anyone whose NICS check results in "deny."

67.     With certain limited exceptions, no ordinary citizen can even legally rent or 'try out' a handgun before spending hundreds of dollars on a new firearm – even where the individual has a valid handgun license – because every handgun must be registered to that particular individual's handgun license to lawfully possess a particular handgun.

68.     There is no historical analogue for such a regulation.

---

[6] https://www.guns.com/news/2017/07/01/guns-of-the-greatest-revolution-ever
[7] Except where such sale, exchange or disposal is between members of an immediate family. *Id.*

***The New York State Licensing Scheme***

69.     In New York, the mere possession of a handgun is a crime. [Penal Law § 265.00, *et seq.*].

70.     A conviction of a misdemeanor or a felony under § 265.00, *et seq.* terminates an individual's right to possess and purchase handguns, rifles, and shotguns.[8]

71.     Possession of a handgun, even in one's home for self-defense, is a crime punishable under Penal Law section 265.00*, et seq*. See, *People v. Abdullah*, 23 Misc. 3d 232, 233, 870 N.Y.S.2d 886, 887 (Crim. Ct. 2008) (defendant charged with violating § 265.01 for mere possession of an unloaded .25 caliber semi-automatic pistol from inside his home).

72.     Simply being charged with an offense under Penal Law 265.00, *et seq.*, even if dismissed, will result in the denial of a license under § 400.00 because the State's licensing s (the "Scheme") is discretionary and subjective.

73.     New York has a 'may issue' firearm licensing scheme that imbues licensing officers with "broad discretion" to issue, deny, suspend, and/or revoke licenses. See, "Good Moral Character" section, *infra.*

74.     By statute, applicants for any type of license under the Scheme are required to complete the Statewide application created and approved by the Superintendent of the NYSP.

75.     No other application or questionnaire is authorized to be imposed on pistol license applicants other than the statewide application approved by the Superintendent of the NYSP. [Penal Law § 400.00(3)].

---

[8] See, Penal Law sections 265.00(17); 265.01(3); 400.00(1)(c); 18 U.S.C. 922(g).

76.     The Superintendent of the NYSP has not approved any applications, forms, or questionnaires for the obtaining a NYS pistol permit, nor has any application for such document been submitted by any jurisdiction, including SCPD.

77.     With the enactment of the Concealed Carry Improvement Act (CCIA) on September 1, 2022, the NYSP amended the New York State Pistol/Revolver Application PPB-3 (Rev. 06/16) to incorporate the provisions of § 400.00(1)(o) in PPB-3 (Rev. 08/22).

78.     Licensing officers "shall accept for processing" the State Application "upon presentment." Penal Law § 400.00(4-a).

79.     Within 6 months of the presentment of the State Application, the licensing officer "shall" issue the license or deny the application with reasons specifically and concisely stated in writing.[9]  Penal Law §400.00(4-a).

80.     Presentment of the State Application to the statutory licensing officer starts the 6-month statutory clock to either issue the license or deny the application "for reasons specifically and concisely stated in writing." Penal Law § 400.00(4-a).

81.     That portion of Penal Law § 400.00(4-a) providing statutory licensing officers 6 months from presentation of the State Application (the PPB-3) to issue a license or deny an application is an unconstitutionally 'lengthy' wait time and violates the Second and Fourteenth Amendments.

---

[9] 4-a. Processing of license applications.   Applications for licenses shall be accepted for processing by the licensing officer at the time of presentment.   Except upon written notice to the applicant specifically stating the reasons for any delay, in each case the licensing officer shall act upon any application for a license pursuant to this section within six months of the date of presentment of such an application to the appropriate authority. Such delay may only be for good cause and with respect to the applicant.   In acting upon an application, the licensing officer shall either deny the application for reasons specifically and concisely stated in writing or grant the application and issue the license applied for.

<u>2 Photographs</u>

82.     Each applicant must also "submit one photograph of himself or herself and a duplicate for each required copy of the application. Such photographs shall have been taken within thirty days prior to filing the application." [Penal Law § 400.00(3)].

83.     The 2 required photographs may be obtained by the applicant and submitted with the NYS PPB 3. There is no statutory requirement that the licensing officer or its 'duly constituted police authority' photograph the applicant. [Penal Law § 400.00(3)].

<u>Criminal History Background Check</u>

84.     Each pistol license applicant must submit to fingerprinting, which must be transmitted to  the division of criminal justice services in the executive department in Albany (DCJS) and the federal bureau of investigation.

85.     Every law enforcement agency is assigned an ORI number (Originating Agency Identifier), which validates legal authorization to access Criminal Justice Information (CJI) and identifies the agency in all transactions.[10]

86.     Upstate, pistol license applicants are provided with the ORI number of the local Sheriff's Office. This allows applicants to submit their fingerprints and obtain their criminal history report (the "Report") directly from DCJS within 3-4 weeks and provide the Report to the licensing officer along with their State Application and photographs.

<u>Mental Health Check</u>

87.     In addition to a fingerprint-based criminal history check, the statute requires a search of the "Statewide license and record database"[11] and the records of the appropriate office

---

[10] https://www.justice.gov/tribal/page/file/1247566/download
[11] See, Penal Law § 400.00.02, discussing the statewide license and record database created and maintained by the division of state police. "All records containing granted license applications from all licensing authorities shall be

of the Department of Mental Hygiene concerning previous or present mental illness of the applicant, which "shall be available for inspection by the investigating officer of the police authority." Penal Law § 400.00(4).

CCIA-Imposed Regulations

88.     The CCIA[12] was enacted 8 days after, and in response to, the Supreme Court's opinion in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022)[13], took effect on September 1, 2022. Gov. Hochul called the already-recessed state legislature back for a special session to pass the CCIA.[14]

89.     At Gov. Hochul's August 31, 2022 press conference, Defendant Acting NYSP Superintendent Steven Nigrelli vociferously thanked Governor Hochul as "someone [he] looks up to" for her "leadership on this topic…laser-like focus on ***eradicating guns***, illegal guns, and gun crimes...***we appreciate that at the State Police***." (36:10). *Id.* (emphasis added).

90.     Acting NYSP Superintendent Nigrelli and the NYSP will enforce the State's gun laws against everyone who violates them. Nigrelli vowed:

> "Governor, it's an easy message. I don't have to spell it out more than this. We'll have ***zero tolerance***. If you violate this law, you will be arrested. Simple as that. Because the New York State Troopers are ***standing ready to do our job to ensure .. all laws are enforced***." *Id.* (emphasis added).

---

monthly checked by the division of criminal justice services in conjunction with the division of state police against criminal conviction, criminal indictment, mental health, extreme risk protection orders, orders of protection, and all other records as are necessary to determine their continued accuracy as well as whether an individual is no longer a valid license holder. The division of criminal justice services shall also check pending applications made pursuant to this article against such records to determine whether a license may be granted."

[12] Senate Bill S51001.
[13] https://www.youtube.com/watch?v=gC1L2rrztQs
[14] https://www.youtube.com/watch?v=gC1L2rrztQs

<u>"Good Moral Character" - § 400.00(1)(b)</u>

91.    The "very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Bruen*, at 2129 quoting, *Heller*, 554 U.S. at 634. "We then concluded: "A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all." *Ibid.*

92.    The bright line factors for firearms eligibility under state and federal law include felony convictions[15], involuntary commitment in a mental hospital or adjudication as mentally incompetent[16], dishonorable discharge[17], and convictions of 'serious offense' misdemeanors (New York).[18]

93.    Prior to the enactment of the CCIA, section 400.00(1) provided that no license shall be issued except for an applicant "(b) of good moral character."

94.    With the CCIA amendment to subsection (b), "No license shall be issued or renewed" under section 400.00 except for an individual who is "of good moral character, which, for the purposes of this article, shall mean having the essential character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others." § 400.00(1)(b).

95.    Under both the old and new language, the "good moral character" language continues to be anything but objective. The language of section 400.00(1)(b) is a vague, overly broad, and unconstitutionally discretionary. Section 400.00(1)(b) authorizes denial of a license

---

[15] 18 U.S.C. § 922(g); § 400.00(1)(c).
[16] 18 U.S.C. § 922(g); § 400.00(1)(j), (m).
[17] 18 U.S.C. § 922(g); § 400.00(1)(g).
[18] As defined by § 265.00(17). See, § 265.01; § 400.00(1)(c). See also, 18 U.S.C. § 922(g) prohibiting domestic misdemeanants.

based on a subjective opinion of who has the 'right' "character", can be "trusted", what is an "essential temperament", and whether the applicant has one.

96.     The CCIA's language change brings nothing new to New York's licensing regulations; it simply codifies what New York courts have been allowing to take place for decades in a Scheme created under the false belief that handguns are a privilege, the Second Amendment applies to the collective militia and does not apply to the states.[19]

97.     On the ground level, subsection (b) is at odds with the very purpose of the Second Amendment – using a firearm in self-defense, which may necessarily require its use to *specifically* "endanger others."

98.     Contra *Heller, McDonald,* and *Bruen*, subsection (b) incorporates the *thrice-rejected* interest-balancing rationale[20] where the government's desire to 'protect the public' somehow always ends up outweighing the guaranteed individual rights of the People. *Heller* at 592 ("Putting all of these textual elements together, we find that they **guarantee the individual right to possess and carry weapons in case of confrontation**.") (emphasis).

99.     Subsection (b) is a new codification of the old mantra of New York courts touting the State's "substantial and legitimate interest and indeed, a grave responsibility, in insuring [sic] the safety of the general public from individuals who, by their conduct, have shown themselves to be lacking the essential temperament or character which should be present in one entrusted with a dangerous instrument." *Finley v. Nicandri*, 272 A.D.2d 831, 832, 708 N.Y.S.2d 190, 191 (2000)

---

[19] *Peterson v. Kavanagh*, 21 A.D.3d 617, 617–18 (3d Dept. 2005) ("Lastly, we reject petitioner's argument that the Second Amendment confers an individual right on him to keep and bear arms. Absent evidence that possession of the pistol bears some reasonable relationship to the preservation or efficiency of a well-regulated militia, no individual right to possess it is conferred (see *Bach v. Pataki*, 289 F.Supp.2d 217, 224–226 (2003)."
[20] *Bruen*, at 2127 citing, *Heller* and *McDonald*.

(revoked, no conviction); *Waskiewicz v. New York City Police Dep't*, 211 A.D.2d 603, 604 (1st Dept. 1995) (revoked for arrest, no conviction).

100.    New York continues to treat possessing and carrying handguns as a government-bestowed privilege, not a right [*Minervini v. Kelly*, 22 A.D.3d 238, 239 (1st Dept. 2005)] that can be "revoked and cancelled at any time." Penal Law § 400.00(11)(a). The CCIA perpetuates this distorted view.

101.    Being charged with a violation or crime, even where charges are dismissed or result in a non-criminal conviction, provides a basis for license revocation. *La Grange v. Bruhn*, 276 A.D.2d 974, 975 (3d Dept. 2000) citing, *Matter of Zalmanov v. Bratton*, 240 A.D.2d 173 (1st Dept. 1997); *Velez v. DiBella*, 77 A.D.3d 670 (2d Dept. 2010) (upholding denial of license based on charges dismissed in defendant's favor, and a non-criminal conviction); accord, *Gonzalez v. Lawrence,* 36 A.D.3d 807, 808 (2d Dept. 2007).

102.    Yet, a licensee is not entitled to a "formal hearing" before a license is revoked. *Pacicca v. Allesandro*, 19 A.D.3d 500, 501 (2d Dept. 2005).

103.    The 'new' language of subsection (b) does nothing to divest the licensing officers of the "broad discretion" imbued by New York courts for decades. *Finley*, at 832 (Respondent is therefore "vested with broad discretion" in determining whether to revoke a pistol permit); *Brookman v. Dahaher*, 234 A.D.2d 615, 616 (3d Dept. 1996).

104.    Indeed, a subjective belief that a licensee "exercise[d] [] poor judgment in the handling of a weapon is a sufficient ground for revocation of a pistol permit." *Brookman v. Dahaher*, 234 A.D.2d 615 (3d Dept. 1996) (upholding revocation because licensee "exhibited disregard for the proper use of a handgun" by wearing his .38 caliber pistol holstered on his person

22

"in plain view of adults and children in his residential neighborhood" while performing yardwork "in clear violation of the hunting and target practice restrictions on his permit.").

105.    Post-*Bruen*, New York has done nothing to bring its firearm laws into compliance with the Constitution; quite the opposite.

Concealed Carry Burden - Section 400.00(1)(o)

106.    Section 400.00(1)(o) requires a face-to-face interview with each applicant for a concealed carry license.

107.    The face-to-face requirement of § 400.00(1)(o) is inconsistent with this Nation's historical traditions of firearm regulations; there is no historical analogue.

Section 400.00(1)(o)(i) – Relationships, Cohabitants, and Children

108.    Section 400.00(1)(o)(i) and PPB- 3 (Rev. 08/22) require CCW applicants to disclose the names and contact information for the applicant's current spouse, or domestic partner, any other adults residing in the applicant's home, including any adult children of the applicant, and whether or not there are minors residing, full time or part time, in the applicant's home.

109.    The requirement that a license applicant, like Plaintiffs, disclose personal information about relationships, cohabitants, and children as a condition of or prior to exercising conduct protected by the Second Amendment is inconsistent with this Nation's historical traditions of firearm regulations; there is no historical analogue.

Section 400.00(1)(o)(ii) – No Less Than 4 Character References

110.    Section 400.00(1)(o)(ii) and PPB- 3 (Rev. 08/22) require CCW applicants to provide the names and contact information of "no less than four character references" who:

> "can attest to the applicant's good moral character and that such applicant has not engaged in any acts, or made any statements that suggest they are likely to engage in conduct that would result in harm to themselves or others."

111.    Section 400.00(1)(o)(ii) is not simply a character reference requirement.

112.    Rather, applicants must obtain a sworn statement from "no less than four" people that aver the applicant has never engaged in *any* acts or made *any* statements that *suggest* they are *likely* to engage in conduct that *would result* in harm to themselves or others."

113.    The information sought under § 400.00(1)(o)(ii) is subjective opinion that, even if false, does not constitute a formal adjudication of any state or federal statutory prohibitor to firearm possession.

114.    The language of § 400.00(1)(o)(ii) is vague, overly broad, without temporal limitations, subjective, and discretionary.

115.    This regulation arbitrarily applies to a concealed carry license, but not to possessing a handgun in the first instance.

116.    Enforcement of § 400.00(1)(o)(ii) discourages, prevents, and otherwise interferes with the exercise of the protected Right. SCPD requires the character references to live in Suffolk County, and they cannot be "relatives either by blood or marriage, active law enforcement officers, husband and wife combinations, or any two (2) or more members of the same family or household."

117.    Because all applicants are subject to a fingerprint-based state and federal criminal background check and mental health check, this regulation is not only inconsistent with our country's traditions, but obsolete in the modern age.

Section 400.00(1)(o)(iv) – Social Media Accounts

118.    Section 400.00(1)(o)(v) requires CCW applicants a list of former and current social media accounts of the applicant from the past three years to confirm the information regarding the applicant's character and conduct as required in subparagraph (ii) of this paragraph.

119.     Subsection (o)(iv) pits the First Amendment against the Second; Plaintiffs should not have to choose between two constitutionally protected rights.

120.     Section 400.00(1)(o)(v) has no historical analogue.

### Section 400.00(1)(o)(iii) and 400.00(19) - - Mandatory Training

121.     Section 400.00(1)(o)(iii) requires production of a certification of the mandatory training regulations under § 400.00(19) before a CCW license can issue.

121.     Section 400.00(19) provides that before a concealed carry license may issue or be renewed/recertified, the individual must complete "an in-person live firearms safety course conducted by a duly authorized instructor with curriculum approved by the division of criminal justice services and the superintendent of state police, and meeting the following requirements, including at a minimum 18 hours of training, including:

a.  a minimum of sixteen hours of in-person live curriculum approved by the division of criminal justice services and the superintendent of state police, conducted by a duly authorized instructor approved by the division of criminal justice services, and shall include but not be limited to the following topics: (i) general firearm safety; (ii) safe storage requirements and general secure storage best practices; (iii) state and federal gun laws; (iv) situational awareness; (v) conflict de-escalation; (vi) best practices when encountering law enforcement; (vii) the statutorily defined sensitive places in subdivision two of section 265.01-e of this chapter and the restrictions on possession on restricted places under section 265.01-d of this chapter; (viii) conflict management; (ix) use of deadly force; (x) suicide prevention; and (xi) the basic principles of marksmanship;

b.  a minimum of two hours of a live-fire range training course;

25

    c.   proficiency by scoring a minimum of eighty percent correct answers on a written test for the curriculum under paragraph (a) of this subdivision and the proficiency level determined by the rules and regulations promulgated by the division of criminal justice services and the superintendent of state police for the live-fire range training under paragraph (b) of this subdivision.

122.    Under *Bruen*, if the conduct falls under the plain text of the Second Amendment, which this does, the government alone has the burden of justifying its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. *Bruen*, 142 S.Ct. at 2126.

123.    The test is not, whether the regulations are "so onerous as to fall within the scope of what …*Bruen* called 'exorbitant.'" *Antonyuk v. Hochul,* No. 122CV0986GTSCFH, 2022 WL 5239895, at *12 (N.D.N.Y. Oct. 6, 2022) citing *Bruen*'s reference to 'shall issue' regimes and the potential for abusive ends through "lengthy wait times and…exorbitant *fees*…" to deny ordinary citizens the right to public carry. *Bruen*, at 2138, n. 9.

124.    The average cost of such training, if one can locate a training facility, is between $400 -$800, plus the cost of ammunition for "a *minimum* of two hours of a live-fire range training course."

125.    There is no historical tradition of government-imposed and costly training regulations on an ordinary person *prior* to or as a *condition* of exercising the Right to bear arms. The CCIA training requirement is patently inconsistent with this Nation's historical traditions and no historical analogue exists – and the plain language of the Right that "shall not be *infringed*."

Penal Law § 400.30

126.     Nothing in this article shall be construed to impair or in any way prevent the

enactment or application of any local law, code, ordinance, rule or regulation that is more

restrictive than any requirement set forth in or established by this article.

127.     Section 400.30 has no historical analogue and is inconsistent with this Nation's

historical traditions.


## III. The Fourth Amendment

128.     The right of the people to be secure in their persons, houses, papers, and effects,

against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue,

but upon probable cause, supported by Oath or affirmation, and particularly describing the place

to be searched, and the persons or things to be seized.

129.     A local government's decision not to train certain employees about their legal duty

to avoid violating citizens' rights may rise to the level of an official government policy for purposes

of § 1983. To satisfy the statute, a municipality's failure to train its employees in a relevant respect

must amount to deliberate indifference to the rights of persons with whom the untrained employees

come into contact. *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

## SUFFOLK COUNTY LICENSING BUREAU POLICIES AND PROCEDURES

130.     SCPD's Pistol Licensing Bureau website provides links to the Guide to Obtaining

a Suffolk County Pistol License, Answers to Frequently Asked Questions, Online Forms, Register

for Pistol License Online, Pistol Licensing Fees, and Pistol License Contact Information.[21]

---

[21] https://suffolkpd.org/Precincts-and-Specialized-Units/Specialized-Units/Pistol-License-Bureau?/

131.    Neither the SCPD website nor the local precincts provide, refer to, or mention the State Application or where to locate it. Nowhere does SCPD inform applicants that the State Application is required to be completed and filed with SCPD obtain a pistol license – a license cannot be granted without the completed State Application.

132.    It has been, and continues to be, SCPD policy and procedure to intentionally obstruct and delay the handgun licensing process in deliberate disregard for the constitutional rights of its citizens.  The SCPD defendants and Licensing Bureau staff have exhibited and continue to exhibit a deliberate indifference to the Second and Fourteenth Amendment rights of Plaintiffs and all similarly situated individuals.

***Suffolk County Police Department Guide to Obtaining a License***

133.    SCPD publishes a "Guide to Obtaining a Suffolk County Pistol License" (the "Guide"), but not an analogous 'Guide' for obtaining a rifle license.

134.    Under the Guide, applicants are informed that they must (i) complete the SCPD "Applicant Questionnaire" and deliver it in person or mail it to the Licensing Bureau[22] along with a check or money order for ten dollars ($10.00) made payable to "S.C.P.D."

135.    The Guide advises that the applicant will be assigned an investigator and scheduled for an "in-person interview" at the Licensing Bureau, where he also will be fingerprinted and photographed (the "Appointment").

136.    The applicant must also bring certain documents to the Appointment. Relevant herein, a NYS Driver License or Non-Driver Identification, recent pay stub or employment identification, Original Birth Certificate or a valid U.S. Passport, voter registration card, utility bill, or tax bill to prove residency in Suffolk County, and another fee of $88.25.

---

[22] Prior to the recent and ongoing cyber-attack on Suffolk County government, applicants were able complete the Applicant Questionnaire online, but it is unclear whether payment was accepted online.

137.    The Guide makes no mention of the required State PPB-3 Application. The only application form identified in the Guide is the Applicant Questionnaire.

138.    SCPD policy knowingly and intentionally leads the public to believe that the Applicant Questionnaire is *the* handgun license application that commences the 6-month statutory timeframe under Penal Law § 400.00(4-a).

139.    Despite the Supreme Court's opinion in *Bruen*, SCPD continues to inform applicants that they will be required to show "proper cause pursuant to Penal Law Section 400.00 Sub. 2(f)"[23] to obtain a concealed carry license.

140.    The Guide identifies, *inter alia*, numerous unconstitutional discretionary grounds to deny an application, including "any good cause."

141.    The SCPD Licensing Bureau staff has informed one or more Plaintiffs that the wait time to be assigned to an 'investigator' is *approximately 2 years* and can be *up to 3 years*.

142.    It is not until the Appointment 2 years later that applicants are provided with (learn about) the PPB-3, which requires obtaining the original signatures of 4 character references; upon completion of the PPB-3, applicants return the PPB-3 to the Licensing Bureau.

143.    The statutory 6-month timeframe for issuing a license or denying an application under § 400.00(4-a) begins 'upon presentment' of the State PPB-3 Application.

144.    The hours of the Licensing Bureau are Monday-Friday from 9:00 a.m. – 4:30 p.m.

145.    The Licensing Bureau only conducts the Appointments (interviews, fingerprinting, and photographing) *one day per week -* on Wednesdays.

---

[23] The SCPD handgun licensing Guide *still* provides, "Full carry license, for the purpose of self-protection. If an individual is seeking a Self-Protection License, they will be required to show 'proper cause' pursuant to Penal Law Section 400.00 Sub. 2(f). 'Proper cause' is determined by a review of all relevant information bearing on their claimed need. They must show that they are exposed to extraordinary personal danger, documented by proof of recurrent threats to life or safety requiring authorization to carry a firearm."

146.     SCPD policy requires individuals to first obtain a premises handgun license before being able to take the 18-hour concealed carry training required by the CCIA/§ 400.00(19).

147.     Penal Law section 265.20(3-a), however, provides an exemption to prosecution under Penal Law 265 for unlicensed individuals who possess a pistol or revolver while undergoing live-fire range training and supervised by a duly authorized instructor pursuant to section 400.00.

148.     It is SCPD policy, as communicated by Lt. Michael Komorowski, that any unlicensed individual who engages in live-fire handgun training with a duly authorized instructor – and any instructor providing live-fire training to an unlicensed individual - will be arrested and charged with a crime under Penal Law § 265.00 *et seq.*, irrespective of the state law exemption.

149.     Possessing a loaded handgun is a Class C Violent felony that carries mandatory minimum state prison sentence of 3 ½ years.[24]

## MATERIAL FACTS

150.     Each Plaintiff is eligible to possess, purchase, receive, and transfer firearms under state and federal law. No Plaintiff has ever unlawfully used or threatened the use of a firearm.

151.     Each Plaintiff followed the procedures of the SCPD to obtain a license to possess and carry a handgun and paid the required filing fee prior to September 1, 2022, the date the CCIA took effect.

152.     The 18-hour training programs in and around Nassau and Suffolk County cost between around $400 and $800.

153.     Plaintiffs Giambalvo, Mougios, Mashkow, and McLaughlin face a credible threat of arrest and incarceration by Lt. Komorowski and/or other SCPD police officers if they fulfill in the 18-hour training requirement.

---

[24] Penal Law § 70.00.

154.    Plaintiff McGregor faces a credible threat of arrest and incarceration by NYSP and SCPD police officers for carrying his registered handgun outside of his license restriction.

155.    If SCPD is allowed to continue its abhorrent policies, Plaintiffs Giambalvo, Mougios, Mashkow and McLaughlin will be unable to lawfully purchase and possess a handgun for ***between 2-3 years***; lawfully carrying a handgun for self-defense will take even longer

156.    After already suffering for 16 months through the SCPD licensing process to obtain a restricted concealed carry license, Dr. McGregor should not have to amend his license, or take the CCIA training to lawfully carry a handgun in public for self-defense.

157.    Plaintiffs object to enforcement of the SCPD policies detailed herein, as well as Defendants' enforcement of Penal Law sections 400.00(1)(b), 400.00(1)(o), 400.00(15), 400.00(19), 400.30, and any licensing process that takes more than 30 days after presentment of the PPB-3 to issue a license.

### *Zachary Giambalvo*

158.    Zachary Giambalvo ("Mr. Giambalvo"), is a resident of Suffolk County with no prohibitors to the possession of firearms.

159.    Mr. Giambalvo intends to immediately purchase, possess, and carry a 1911-style platform handgun sold by Camp-Site, a federally licensed firearms dealer located in Huntington, New York.

160.    Mr. Giambalvo would have already purchased a 1911-style handgun, but for the fact that he cannot legally purchase or possess a handgun until SCPD issues him a handgun license.

161.    Mr. Giambalvo intends to purchase and possess handguns, conduct presumptively protected by the plain text of the Second Amendment, without having to seek and obtain a discretionary license to do so.

162.    Mr. Giambalvo intends to obtain a 1911-style handgun legally, without the requirement that he obtain a license or permission to do so, after undergoing a NICS background check, and to thereafter possess that handgun in his home and on his property without obtaining a discretionary handgun license from SCPD.

163.    Mr. Giambalvo also intends to carry a handgun concealed in public for self-defense, without having to be subjected to a discretionary licensing scheme, having to provide his social media account information, personal relationship and family information, in-person interview, training requirements, and character references required by the CCIA.

164.    To comply with New York law, Mr. Giambalvo subjected himself to the state's licensing scheme. Mr. Giambalvo visited the SCPD website find out how to apply for a handgun license. From the website and the information provided therein, commencement of the application process required submitting the completed Applicant Questionnaire and a $10 filing fee made payable to "SCPD."

165.    In February 2020, Mr. Giambalvo submitted his completed Applicant Questionnaire and $10 fee to the SCPD Licensing Bureau.

166.    Months later, Mr. Giambalvo contacted the Licensing Bureau to check on the status of his application and was informed that his check was "never received", and he would have to submit another application and $10 fee.

167.    Mr. Giambalvo completed another Applicant Questionnaire, which he filed with the Licensing Bureau along with the $10 fee in and around June 2022.

168.    By email dated July 19, 2022, the Licensing Bureau informed Mr. Giambalvo, "there is an approximately a 2 year wait before you will hear from an investigator" to schedule the "in person interview."

169.     In August 2022, Mr. Giambalvo called the Licensing Bureau to find out when his application would be assigned to an investigator.

170.     The woman who answered the phone at the Licensing Bureau, identified herself as "Suzanne" and stated, "it's going to take about *1 ½ to 2 years* to get called for an interview."

171.     Mr. Giambalvo was not aware that the statutory 6-month timeframe for issuing a license did not begin until presentment of the State Application (PPB-3) because SCPD did not provide the PPB-3 or any indication that it was required to be filed.

172.     Even if Mr. Giambalvo had attempted to present the completed PPB-3 to SCPD, SCPD would refuse acceptance and require Mr. Giambalvo to wait for an appointment.

173.     Mr. Giambalvo wants to submit the completed PPB-3 application, the 2 required photographs, and his fingerprint-based unsuppressed criminal history report from the Division of Criminal Justice Services to SCPD, but cannot because SCPD does not provide its ORI number and will not accept the PPB-3 upon presentment.

174.     Mr. Giambalvo intends to carry a handgun concealed but will not comply with the requirements of Penal Law § 400.00(1)(o) or the "proper cause" requirement identified in the Guide.

175.     Mr. Giambalvo objects to waiting more than 30 days from presentment of the completed PPB-3 State Application for SCPD to issue a license.

176.     Mr. Giambalvo faces a credible risk of arrest and incarceration by SCPD. While he objects to the training requirements of § 400.00(19), Mr. Giambalvo will attend an approved 18-hour training course knowing that under SCPD policy, as announced by Lt. Komorowski, any unlicensed individual who takes the 18-hour course, which contains a live-fire component, will be arrested by SCPD.

177.    Mr. Giambalvo will attend the December 2022 18-hour course in Suffolk County provided by Frank Melloni through his company, Renaissance Firearms Instruction, Inc., and he should not have to choose between exercising a right protected by the Second Amendment or being arrested and jailed.

178.    Mr. Giambalvo contacted the Licensing Bureau to see if their position had changed regarding accepting the PPB-3 upon presentment, as required by § 400.00(4-a).   The man who answered the phone at the SCPD Licensing Bureau looked for Mr. Giambalvo's application in the system and informed him, "There is nothing else you have to do, just when we get up to you in the filing system."

179.    When Mr. Giambalvo asked if he could bring in the completed State Application, he was informed, "The state application doesn't mean anything. That would be for the state troopers or the sheriffs, I don't know what application they use. But the one that you filled out is the one we have here so that's all you need."

180.    The application filled out by Mr. Giambalvo is the Applicant Questionnaire – an 'application' not approved by the NYSP, meaning that a year-and-a-half from now when Mr. Giambalvo is fingerprinted and interviewed – unless the injunctive relief sought herein is granted – he will be handed the State Application to complete and file to start the 6-month clock running under Penal Law § 400.00(4-a).

181.    Incredibly, not only will the Licensing Bureau not accept the PPB-3 upon presentment, according to the SCPD Licensing Bureau, the statewide PPB-3 license application doesn't even apply to them.

*John Mougios*

34

182.     John Mougios is a resident of Suffolk County with no prohibitors to the possession of firearms.

183.     Mr. Mougios intends to immediately purchase, possess, and carry a Berretta Px4 Storm from Bensons Gun Shop in Coram, New York, an FFL. Mr. Mougios would have already purchased a Px4 but for the fact that he cannot legally purchase or possess a handgun until SCPD issues him a handgun license.

184.     Mr. Mougios intends to purchase, possess, and carry a handgun for self-defense without having to be subjected to a discretionary licensing scheme, having to provide his social media account information, personal relationship and family information, in-person interview, training requirements, and character references required by the CCIA.

185.     Mr. Mougios intends to carry a handgun concealed but will not comply with the requirements of Penal Law § 400.00(1)(o) or the "proper cause" requirement identified in the SCPD Guide.

186.     Mr. Mougios objects to waiting more than 30 days from presentment of the completed PPB-3 State Application for SCPD to issue a license.

187.     To comply with New York's gun laws, Mr. Mougios subjected himself to the state's licensing scheme.

188.     In 2021, Mr. Mougios visited the SCPD website to identify the process and procedure for applying for a New York State handgun license. From the website information, he learned that the application process required filing a completed Applicant Questionnaire and $10 fee made payable to "SCPD." No other application form was mentioned or provided on the SCPD website.

189.     In *July 2021*, Mr. Mougios completed and submitted the Applicant Questionnaire and the $10 fee to the SCPD Licensing Bureau.

190.     Mr. Mougios has not heard from the Licensing Bureau, has not been assigned to an investigator, has not been scheduled for an appointment to be fingerprinted or photographed, has not received the State Application, and will not have such an appointment for *another year* based on SCPD procedures.

191.     Mr. Mougios wants to submit the completed PPB-3 application, the 2 required photographs, and his fingerprint-based unsuppressed criminal history report from the Division of Criminal Justice Services to SCPD, but cannot because SCPD does not provide its ORI number and will not accept the PPB-3 upon presentment.

### *Shane Mashkow*

192.     Shane Mashkow ("Mr. Mashkow"), is a resident of Suffolk County; he has no prohibitors to the possession of firearms.

193.     Mr. Mashkow intends to immediately purchase, possess, and carry a Glock-19 from Dark Storm Industries in Oakdale, New York (Suffolk County).  Mr. Mashkow would have already purchased a Glock-19 from Dark Storm but New York law prohibits the transfer or receipt of a handgun without a handgun license.

194.     Even if he purchased a handgun from an FFL (subject to a NICS background check) outside of New York State, Mr. Mashkow would face criminal charges for possessing a handgun in New York without a license – even in his home.

195.    Mr. Mashkow objects to being subjected to a discretionary licensing scheme to simply exercise the guaranteed constitutional right to keep and bear arms - conduct presumptively protected by the plain text of the Second Amendment.

196.    Mr. Mashkow also intends to carry a handgun concealed and will not comply with the disclosure of information under Penal Law § 400.00(1)(o), like providing his social media accounts, disclosure of personal relationship and family information, an in-person interview, the character references, and the 18-hour training requirements, and the subjective 'moral character' language. Mr. Mashkow also does not want to be at the mercy of a county employee with discretion to require me to provide "any such other information."

197.    To comply with New York law, Mr. Mashkow subjected himself to the state's licensing scheme. In 2020, he utilized the SCPD website to learn the process for obtaining a handgun license. The process required submission of a completed Applicant Questionnaire with a $10 filing fee made payable to "SCPD."  The only application mentioned and provided on the SCPD website was the Applicant Questionnaire.

198.    Mr. Mashkow submitted the completed Applicant Questionnaire and the $10 fee to the Licensing Bureau.  Months later, and in and around November/December 2021, Mr. Mashkow called the Licensing Bureau to check on his application.

199.    Like Mr. Giambalvo, Mr. Mashkow was informed that his check was "never received" and that he would have to submit another application and $10 fee.

200.    Mr. Mashkow completed another Applicant Questionnaire, which he filed with the Licensing Bureau along with the $10 fee in February 2022 – 8 months ago.

201.    In July 2022, Mr. Mashkow called and emailed the Licensing Bureau to find out when he would be called in to be fingerprinted.

202.    The woman at the Licensing Bureau laughed, then stated that he should get an appointment sometime in *February 2024*.

203.    The email response from the Licensing Bureau on July 14, 2022 indicated the office was "currently processing November/December 2020, there is an extremely long wait for the interview."

203     Mr. Mashkow contacted the Licensing Bureau a few months later and was told that they are currently scheduling interviews for people who submitted the questionnaire in February 2021.

204.    Mr. Mashkow was not aware that the statutory 6-month timeframe for issuing a license did not begin until presentment of the State Application (PPB-3). Mr. Mashkow wants to submit the completed PPB-3 application, the 2 required photographs, and his fingerprint-based unsuppressed criminal history report from the Division of Criminal Justice Services but cannot because SCPD does not provide its ORI number and will not accept the PPB-3 until the investigator appointment.

205.    Mr. Mashkow works in New York City from Monday-Friday and must leave his residence before 9:00 a.m. and does not return until after 4:30 p.m.

206.    If required to be fingerprinted, personally interviewed, and/or photographed at the Licensing Bureau, Mr. Mashkow will have to take time off from work because the Licensing Bureau is only open Monday through Friday from 9:00 a.m. until 4:30 p.m.

207.    Mr. Mashkow contacted multiple businesses on Long Island, including Dark Storm Industries in Oakdale, New York (Suffolk County), regarding the 18-hour training required to apply for a concealed carry license. Each business confirmed that a handgun permit is required to take the CCW training. Dark Storm charges $800 for the 18-hour training.

*Kevin McLaughlin*

208.     Kevin McLaughlin ("Mr. McLaughlin"), is a resident of Suffolk County and a U.S. Marine reservist. Mr. McLaughlin has no prohibitors to the possession of firearms.

209.     Mr. McLaughlin visited the SCPD website to see how to apply for a New York State handgun license. According to the website, the only application required to apply was the Applicant Questionnaire. In July 2022, Mr. McLaughlin filed a completed Applicant Questionnaire with the $10 application fee made payable to "SCPD".

210.     Mr. McLaughlin contacted the Licensing Bureau approximately 1 month later to see how long it would be before he was called in to be fingerprinted and was informed that he would not be called in to be fingerprinted for *approximately 3 years – in and around July 2025.*

211.     Mr. McLaughlin wants to submit the completed PPB-3 application, the 2 required photographs, and his fingerprint-based unsuppressed criminal history report from the Division of Criminal Justice Services to SCPD, but cannot because SCPD does not provide its ORI number and will not accept the PPB-3 upon presentment.

*Michael McGregor*

212.     Michael McGregor is a resident of Suffolk County and a practicing physician. Dr. McGregor has no prohibitors to the possession of firearms.

213.     Dr. McGregor visited the SCPD website to identify the process and procedure for applying for a New York State pistol license. According to the website, the only application required to apply for a handgun license was the "Applicant Questionnaire."

214.     Dr. McGregor completed and submitted the Applicant Questionnaire, along with the $10 fee, to the Licensing Bureau on or about November 13, 2020.

215.    About a year later, and on or about October 13, 2021, Dr. McGregor contacted the Licensing Bureau regarding the status of his application and was informed that no decision had been made because the Pistol Licensing Bureau was currently "working on pistol license applications from August 2020."

216.    Dr. McGregor was misled by the SCPD website, the SCPD Guide, and the forms into believing that the Applicant Questionnaire he submitted with his check in November 2020 was the required application that started the 6-month clock under Penal Law § 400.00(4-a).

217.    On December 7, 2021, Dr. McGregor filed a mandamus proceeding in Suffolk County State Supreme Court to mandate then-SCPD police commissioner Stuart Cameron to issue a determination on his handgun license application because more than 6 months had elapsed since the filing of his application and payment of the filing fee.

218.    SCPD moved to dismiss on the grounds that the Mandamus was "premature" because although Dr. McGregor "submitted his Applicant Questionnaire on November 11, 2020," it is not until the "interview takes place [that] Petitioner will be fingerprinted and he will complete the NYS Application. The six-month statutory timeframe…will the commence."

219.    SCPD referred to Dr. McGregor's "***application***" being "assigned to an Applicant Investigator" on November 15, 2021", but the only document they could have been referring to was the "Applicant Questionnaire" because they go on to state "[Dr. McGregor] has yet to be called in for an interview…[which is when Dr. McGregor] will be fingerprinted and he will complete the ***NYS Application***."

220.    Defendant Komorowski's affidavit explained SCPD's licensing policy:

221.    "The submission of the Pistol License Applicant Questionnaire is the first step towards attaining a pistol license. The next step is for the applicant to be called into the Pistol

Licensing Bureau for an interview, during which time the applicant is fingerprinted and a formal New York State Pistol/Revolver License Application (form PPB3 rev. 06/17)[ ] is completed." Under SCPD policy, the "date the NYS Application and fingerprints are completed (the date of the interview), is the date by which the six (6) month time frame as set forth in NYS Penal Law § 400.00(4-a) commences.

222.    On January 11, 2022, SCPD contacted Dr. McGregor to schedule an appointment to be interviewed and fingerprinted. When he was only offered Wednesday appointments by Investigator Carpenter, Dr. McGregor asked if there were other days available because Wednesdays conflicted with his work schedule and he would have to take the day off.

223.    Investigator Carpenter replied that the Licensing Bureau only schedules interviews and fingerprinting on *Wednesdays*.

224.    Dr. McGregor took the day off from work to be interviewed and fingerprinted by SCPD to obtain a handgun license.

225.    On January 25, 2022, the State Supreme Court granted the County's motion to dismiss the mandamus proceeding as 'premature' because the PPB-3 had not yet been filed.

226.    On January 26, 2022, SCPD called Dr. McGregor in for the Appointment, where he was given the PPB-3 form, which he took home, completed, obtained signatures from his references, and subsequently presented to SCPD.

227.    Dr. McGregor was finally issued a handgun license on March 24, 2022 – *16 months* after filing the Applicant Questionnaire and his payment with SCPD.

228.    The Suffolk County Defendants' obstruction of Dr. McGregor's right to purchase and possess a handgun in his home for self-defense for 16 months was a wanton, malicious, willful,

knowing, intentional and/or deliberate disregard for and violation of Dr. McGregor's Second and Fourteenth Amendment rights.

229.    Dr. McGregor's handgun license is restricted to carrying during sportsman activities.

230.    Dr. McGregor intends to carry his registered handgun for self-protection outside of his sportsman restriction.

231.    Dr. McGregor faces a credible threat of criminal enforcement by SCPD and NYSP, arrest, incarceration, and other criminal and civil penalties under Penal Law § 400.00(15) for carrying a handgun outside of his license restriction.

232.    Prior to the enactment of the CCIA, and on August 15, 2022, Dr. McGregor filed an Amendment application with Investigator Carpenter and paid the amendment fee of $5 with SCPD to amend his sportsman license to remove his restrictions, consistent with *Bruen*.

233.    Investigator Carpenter told him, "We're doing the amendment that starts it, doesn't change anything right now, it's just a $5 check or money order...to SCPD." "Here's your receipt to show that you started the 'process' and just keep your eyes and ears open for further guidance on the training and all that stuff."

234.    SCPD cashed Dr. McGregor's check on August 17, 2022.

235.    No provision of the CCIA applied before September 1, 2022.

236.    And moreover, the CCIA applies to licenses 'issued or renewed' - not existing concealed carry licenses amended to remove unconstitutional restrictions.

237.    It is SCPD policy to hold applications to remove the unconstitutional restrictions from existing concealed carry licenses until *after* the CCIA requirements, including the 18-hour

training, went into effect and otherwise improperly subject restricted CCW licensees to the CCIA regulations.

### *Frank Melloni and RFI*

238.    Frank Melloni is an NRA-certified firearms instructor and President of Renaissance Firearm Instruction, Inc. (RFI), located in Suffolk County, New York. After the enactment of the training requirements under the CCIA/Penal Law § 400.00(19), Mr. Melloni created a CCIA-compliant curriculum to train and certify individuals seeking to carry a handgun concealed. Mr. Melloni's CCIA training curriculum encompasses the requirements of Penal Law § 400.00(19), including a live-fire component.

239.    RFI offers the 18-hour course to individuals who intend to apply for a concealed carry license, including individuals who have not yet been issued a handgun license.

240.    Lt. Komorowski informed Mr. Melloni that, if he conducts live-fire training with individuals who have not yet been issued a handgun license, he and his unlicensed students will be arrested by the SCPD.

241.    Mr. Melloni was forced to deregister 4 unlicensed students enrolled in the RFI 18-hour class for November 6, 2022 and refund their payment because of SCPD's policy and Lt. Komorowski's threat.

242.    After his conversation with Lt. Komorowski, Mr. Melloni called the licensing bureaus of the Nassau County Police Department and the Suffolk County Sheriff's Office. Both agencies informed Mr. Melloni that, they are following the law as set forth in the Penal Law exemption. Unlike SCPD, neither agency is going to arrest an unlicensed person who possesses a

43

handgun during the live-fire training, or their trainers because there is a specific exemption in the law.

243.   Implicit in the right to bear arms is the right to engage in training, which includes being instructed and providing instruction. Mr. Melloni and RFI also have a constitutional right to expression, to wit, the firearms training and instruction they provide to the public as protected by the First Amendment.

244.   Mr. Melloni and RFI have suffered constitutional violations and economic loss because of SCPD's policy and Lt. Komorowski's threat of arrest and incarceration in enforcing the SCPD policy, and he will continue to suffer such violations and economic loss so long as SCPD's policy continues.

245.   In December 2022 at Smithtown VOA Gun Club, Mr. Melloni will conduct the 18-hour training with licensed students, and unlicensed students including Mr. Giambalvo, which will include a live-fire handgun component, which subjects him to a credible threat of felony arrest for Criminal Sale of a Firearm in the Third Degree (P.L. § 265.11), a Class D felony, particularly because he has announced in this case his intention to violate the SCPD policy.

246.   Even if the arrest by SCPD is ultimately determined to be unlawful and no prosecution comes from it because there is a statutory exemption for live-fire training, the arrest, fingerprinting, and jailing of Mr. Melloni will cause actual and irreparable harm.

247.   Suffolk County's policies violate the First, Second, Fourth, and Fourteenth Amendments and enforcement of their policies and practices should immediately be preliminarily and permanently enjoined.

248.     Other than Dr. McGregor's 2020 handgun license application, no Plaintiff has been assigned to an investigator and, under SCPD's procedures, no Plaintiff will be fingerprinted, photographed, or provided with the State Application until some ***Wednesday*** in ***2024*** at the earliest.

249.     The individual Suffolk County defendants' implementation and enforcement of the policies and procedures described herein warrants an award of punitive damages.

250.     The SCPD policies and procedures have caused Plaintiffs to suffer, *inter alia,* the presumed violation of their constitutional rights as protected by the First, Second, Fourth, and Fourteenth Amendments, presumed compensatory damages in at least a nominal amount, economic damages, and they have otherwise been rendered sick and sore.

251.     The enforcement of the challenged state statutes by the Suffolk County defendants and Acting Superintendent Nigrelli violate the Second and Fourteenth Amendments.

## COUNT I
## U.S. CONST., AMEND. II and XIV, 42 U.S.C. § 1983

251.     Repeat and reallege paragraphs "1" through and including "250".

252.     Under the theory that the defendants are liable to plaintiffs for violations of their preexisting and guaranteed individual rights as protected by the Second Amendment and made applicable to the States through the Fourteenth Amendment, to the U.S. Constitution. 42 U.S.C. §1983.

## COUNT II
## U.S. CONST., AMEND. IV, 42 U.S.C. § 1983

253.     Repeat and reallege paragraphs "1" through and including "252".

254.     Under the theory that Suffolk County, New York is liable to Plaintiffs for violations of the Fourth Amendment for the intentional, deliberate, and conscious choice to fail to train, supervise, and/or discipline the staff of the Suffolk County Licensing Bureau. 42 U.S.C. § 1983.

## COUNT III
## U.S. CONST., AMEND. IV, 42 U.S.C. § 1983

255.    Repeat and reallege paragraphs "1" through and including "246".

256.    Under the theory that Suffolk County, New York is liable to Frank Melloni and Renaissance Firearms Instruction, Inc. for violations of the First Amendment. 42 U.S.C. § 1983.

## COUNT IV
## *MONELL* LIABILITY

257.    Repeats and realleges paragraphs "1" through and including "256".

258.    Under the theory that, by creating, maintaining, enforcing, following, and/or applying the unconstitutional policies described herein, the County of Suffolk is liable to the plaintiffs under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978) for the violations of Plaintiffs' constitutional rights as plead herein, 42 U.S.C. §1983.

WHERFORE, a Judgment and Order is respectfully requested:

- Declaring (1) Penal Law sections 400.00(1)(b), 400.00(1)(o), 400.00(19), 400.30, and that portion of section 400.00(4-a) allowing statutory licensing officers 6 months to either issue a license or deny an application made thereunder violate the Second and Fourteenth Amendments; (2) Penal Law section 400.00(15) as applied to handgun licensees who carry a handgun registered thereon outside of their license restriction violates the Second and Fourteenth Amendments; (3) that a licensing process that exceeds 30 days from the presentment of the completed New York State Pistol/Revolver License Application (PPB-3) to the issuance of a license (or denial thereof) violates the Second and Fourteenth Amendments; and that (4) enforcement of a policy that subjects unlicensed individuals and

duly authorized firearm instructors to arrest and incarceration in the context of live-fire handgun training violates the First, Second, Fourth, and Fourteenth Amendments.

- Preliminarily and permanently enjoining Suffolk County Police Commissioner Rodney Harrison, and all successors, his officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with such defendants, who receive actual notice thereof from (1) implementing and enforcing Penal Law sections 400.00(1)(b), 400.00(1)(o), 400.00(19), 400.30, that portion of section 400.00(4-a) allowing statutory licensing officers 6 months to either issue a license or deny an application made thereunder, (2) Penal Law section 400.00(15) against handgun licensees who carry a handgun concealed outside of their license restriction; (3) implementing a licensing process that exceeds 30 days between presentment of the completed State Application PPB-3 and issuance of a license (or denial thereof); (4) compelling applicants to complete any form, application or questionnaire other than the PPB-3, including the "Applicant Questionnaire"; (5) requiring applicants to be personally interviewed; (6) continuing to require "proper cause" for the issuance of a concealed carry license; and (7) enforcing a Suffolk County policy that subjects unlicensed individuals who participate in live-fire training with a duly authorized instructor to criminal penalties including arrest and incarceration;

- Preliminarily and permanently enjoining Acting Superintendent of the New York State Police Steven Nigrelli and all successors, his officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with him, who receive actual notice thereof from (1) publishing, implementing, and enforcing the requirements set forth in Penal Law section 400.00(1)(o) [page 2 of the PPB-3 (Rev.

08/22]; and (2) enforcing Penal Law section 400.00(15) against handgun licensees who carry a handgun concealed outside of their license restriction;

- Preliminarily and permanently compelling Suffolk County Police Commissioner Rodney Harrison (and all successors) to: (i) publish the New York State PPB-3 application on the Suffolk County Police Department website and local police precincts; (ii) accept the PPB-3 for filing from all applicants upon presentment; (iii) fingerprint applicants upon presentment of the completed PPB-3 or, in the alternative, publish the Suffolk County Police Department ORI number on its website and in local precincts for applicants to submit their fingerprints directly to the New York State Division of Criminal Justice Services; (iv) photograph applicants upon presentment of the completed PPB-3 or, in the alternative, accept 2 statutorily required photographs from applicants upon presentment of the PPB-3; (v) cease publishing information that requires (and requiring) applicants show "proper cause" for the issuance of a concealed carry license; (vi) provide hours of public accessibility outside of the Licensing Bureau's currently restricted hours of Monday-Friday from 9:00 – 4:30 p.m.; and (vii) within 30 days of presentment of the completed PPB-3 application, issue a license to all applicants eligible to possess firearms under state and federal law and provide ineligible applicants with a written notice specifying the grounds for denial.

- Awarding in favor of Plaintiffs and against Suffolk County, New York and the individually named defendants presumed compensatory damages in at least in a nominal amount for violating the Second and Fourteenth Amendments;

- Awarding in favor of Plaintiffs and against Suffolk County, New York presumed compensatory damages in at least in a nominal amount for violating the Fourth Amendment;

- Awarding in favor of Frank Melloni and Renaissance Firearm Instruction, Inc. and against Suffolk County, New York presumed compensatory damages in at least in a nominal amount for violating the First Amendment;

- Awarding against each and every individually named defendant punitive damages as a jury may determine;

- Awarding costs, disbursements, and reasonable statutory attorney's fees pursuant to 42 USC 1988; and

- Granting such other, further, and different relief as to this Court seems just, equitable, and proper.

Dated: October 28, 2022
Scarsdale, New York

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiffs*

By:   *Amy L. Bellantoni*
Amy L. Bellantoni (AB3061)
2 Overhill Road, Suite 400
Scarsdale, New York 10583
(914) 367-0090 (t)
(888) 763-9761 (f)

49