UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ZACHARY GIAMBALVO, JOHN MOUGIOS,
SHANE MASHKOW, KEVIN MCLAUGHLIN,
MICHAEL MCGREGOR, FRANK MELLONI,
and RENAISSANCE FIREARMS INSTRUCTION,
INC., and all similarly situated individuals,

                     Plaintiffs,                22 Civ. 04778 (GRB)(ST)

      -against-

SUFFOLK COUNTY, New York,
Police Commissioner RODNEY HARRISON,
in his Official Capacity, MICHAEL
KOMOROWSKI, Individually, ERIC BOWEN,
Individually, WILLIAM SCRIMA, Individually,
WILLIAM WALSH, Individually, THOMAS
CARPENTER, Individually, JOHN DOES
1-5, Individually and JANE DOES 1-5,
Individually, Acting Superintendent of the
New York State Police STEVEN NIGRELLI,
in his official capacity,
                      Defendants.
------------------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION

**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiffs*
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**
**info@bellantoni-law.com**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................. i

PRELIMINARY STATEMENT ........................................................................ 1

MATERIAL FACTS ........................................................................................ 2

Lengthy Delays, State PPB-3 Application, Fingerprints, and Photographs ................................. 2

Licensing Bureau Hours of Operation ........................................................... 5

Social Media Information, Character Reference Information, and In-Person Interview
Penal Law § 400.00(1)(o) ............................................................................. 5

18-Hour Training Requirement - Penal Law § 400.00(1)(o) and 400.00(19) ................................ 5

Suffolk County Police Policy - Arrest and Incarceration of Unlicensed Live-Fire Trainees ........ 6

Delays in Removing Concealed Carry Restrictions After Bruen ................................... 8

ARGUMENT ................................................................................................. 9

I. PLAINTIFFS' SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS ............... 9

    A. Plaintiffs' Conduct Is 'Presumptively Protected' .......................................... 10

    B. Defendants Alone Have the Burden of Proof .................................................. 10

    C. SCPD Delays Violate the Second and Fourteenth Amendments ................... 11

    D. Penal Law § 400.00(4-a) Violates the Second and Fourteenth Amendments 11

    E. Penal Law § 400.00(15) Violates the Second and Fourteenth Amendments .. 11

II. PLAINTIFFS WILL CONTINUE TO SUFFER IRREPARABLE HARM .......................... 12

    A. SCPD Licensing Process and Procedures ..................................................... 13

    B. SCPD Enforcement of 400.00(1)(b) .............................................................. 14

    C. SCPD Enforcement of 400.00(1)(o) and 400.00(19) ..................................... 14

    D. SCPD Enforcement of Penal Law section 400.00(15) .................................... 16

**TABLE OF CONTENTS (con't)**

**Page(s)**

E. SCPD Policy of Arresting Unlicensed Live-Fire Trainees............................ 18

III. AN INJUNCTION IS IN THE PUBLIC INTEREST ............................................................ 19

IV.  BALANCING EQUITIES IS IMPROPER .......................................................................... 20

CONCLUSION...................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona Dream Act Coalition*,
  757 F.3d 1053 (9th Cir. 2014) ................................................................................ 19

*Babbitt v. Farm Workers*,
  442 U.S. 289 (1979) ............................................................................................... 16

*Brenntag Int'l Chem., Inc. v. Bank of India*,
  175 F.3d 245 (2d Cir. 1999) .................................................................................. 12

*Bronx Household of Faith v. Bd. of Educ.*,
  331 F.3d 342 (2d Cir. 2003) .................................................................................. 13

*Caetano v. Massachusetts*,
  577 U.S. 411 (2016) ............................................................................................... 10

*Cobb v. Beame*,
  402 F. Supp. 19 (S.D.N.Y. 1975) .......................................................................... 15

*Connecticut Citizens Def. League, Inc. v. Lamont*,
  465 F. Supp. 3d 56 (D. Conn. 2020)...................................................................... 13

*Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*,
  356 F.3d 226 (2d Cir. 2004) .................................................................................. 12

*Connecticut State Police Union v. Rovella*,
  494 F. Supp. 3d 210 (D. Conn. 2020).................................................................... 9

*Crawford v. Washington*,
  541 U.S. 36 (2004) ................................................................................................. 10

*Davis v. Federal Election Comm'n*,
  554 U.S. 724 (2008) ........................................................................................... 9, 16

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ......................................................................................... 10, 20

*Dombrowski v. Pfister*,
  380 U.S. 479 (1965) ............................................................................................... 15

*Doninger v. Niehoff*,
  527 F.3d 41 (2d Cir.  2008) ................................................................................... 13

# TABLE OF AUTHORITIES (con't)

**Page(s)**

**Cases**

*Duncan v. Bonta*,
  265 F.Supp.3d 1106 (S.D. Cal. 2017), aff'd, 742 F. App'x 218 (9th Cir. 2018) ..................... 13

*Elrod v. Burns*,
  427 U.S. 347 (1976) .................................................................................................... 13

*Ezell v City of Chicago*,
  651 F3d 684 (7th Cir 2011) ........................................................................................ 13

*Grace v. District of Columbia*,
  187 F. Supp. 3d 124 (DDC 2016)............................................................................... 13

*Hedges v. Obama*,
  724 F.3d 170 (2d Cir. 2013) ....................................................................................... 17

*Hobby Lobby Stores, Inc. v. Sebelius*,
  723 F.3d 1114 (10th Cir. 2013) .................................................................................. 20

*J.S.R. by & through J.S.G. v. Sessions*,
  330 F. Supp. 3d 731 (D. Conn. 2018)......................................................................... 19

*Jolly v. Coughlin*,
  76 F.3d 468 (2d Cir. 1996) ......................................................................................... 12

*Kelly v. Honeywell Int'l, Inc.*,
  933 F.3d 173 (2d Cir. 2019) ......................................................................................... 9

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .................................................................................................... 12

*McDonald v. Chicago*,
  561 U.S. 742 (2010) ............................................................................................. 10, 11

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374  (1992) .................................................................................................. 17

*Ms. L. v. U.S Immigr. & Customs Enf't ("ICE*,
  310 F. Supp. 3d 1133 (S.D. Cal. 2018) ...................................................................... 19

*Nevada Comm'n on Ethics v. Carrigan*,
  564 U.S. 117 (2011) .................................................................................................... 10

ii

## TABLE OF AUTHORITIES (con't)

**Page(s)**

**Cases**

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
   142 S. Ct. 2111 (2022)................................................................ 9, 10, 11

*O'Malley v. City of Syracuse,*
   813 F. Supp. 133 (N.D.N.Y. 1993).............................................. 13

*Parker v. D.C.,*
   478 F.3d 370 (D.C. Cir. 2007)................................................... 13, 14

*Paulsen v. County of Nassau,*
   925 F.2d 65 (2d Cir.1991) ......................................................... 13

*People ex rel. Guido v. Calkins,*
   9 N.Y.2d 77 (1961)..................................................................... 7

*People v. Kief,*
   126 N.Y. 661 (1891)................................................................... 7

*Picard v. Magliano,*
   42 F.4th 89 (2d Cir. 2022) ......................................................... 16

*Statharos v. New York City Taxi & Limousine Comm'n,*
   198 F.3d 317 (2d Cir. 1999) ...................................................... 12

*Steffel v. Thompson,*
   415 U.S. 452 (1974) .................................................................. 16

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014) .................................................................. 12, 16

*Trump v. Deutsche Bank AG,*
   943 F.3d 627 (2d Cir. 2019) ...................................................... 9

*U.S. S.E.C. v. Citigroup Global Mkts. Inc.,*
   673 F. 3d 158 (2d Cir. 2012) ..................................................... 19

*United States v. Cruikshank,*
   92 U.S. 542, 23 L.Ed. 588 (1876)............................................. 16

*United States v. Decastro,*
   682 F.3d 160 (2d Cir. 2012) ...................................................... 14

## TABLE OF AUTHORITIES (con't)

**Page(s)**

**Cases**

*United States v. Verdugo–Urquidez,*
   494 U.S. 259 (1990) ................................................................................................................ 20

*Valenzuela Arias v. Decker,*
   2020 WL 1847986 ................................................................................................................ 12

*Virginia v. Moore,*
   553 U.S. 164 (2008) ................................................................................................................ 10

*Wisdom Import Sales Co. v. Labatt Brewing Co.,*
   339 F.3d 101 (2d Cir. 2003) ................................................................................................ 12

**Rules**

Fed. R. Civ. P. 65 ...................................................................................................................... 1, 9

## PRELIMINARY STATEMENT

No New York resident may exercise the right to possess and/or carry a handgun for self-defense until they have applied for and obtained a handgun license.

For Suffolk County residents, the process for obtaining a handgun license from the Suffolk County Police Licensing Bureau takes **between 2-3 years.**

Pursuant to Fed. R. Civ. P. 65, Plaintiffs seek an Order preliminary and permanently mandating that Suffolk County Police Commissioner Rodney Harrison, and all successors, his officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with him who receive actual notice thereof: (i) provide the New York State PPB-3 application on the Suffolk County Police Department website and local police precincts; (ii) accept the PPB-3 for filing from all applicants upon presentment; (iii) fingerprint applicants upon presentment of the completed PPB-3 or, in the alternative, publish the Suffolk  County  Police Department ORI number (Originating Agency Identifier) on its website and in local precincts for applicants to submit their fingerprints directly to the New York State Division of Criminal Justice Services (DCJS) and accept the resulting DCJS Report upon presentment of the PPB-3; (iv) photograph applicants upon presentment of the completed PPB-3 or, alternative, accept 2 statutorily required photographs from applicants upon presentment of the PPB-3; (v) provide hours of public accessibility outside of SCPD's currently restricted hours of Monday-Friday from 9:00 – 4:30 p.m.; and (vi) within 30 days of the presentment of the completed PPB-3 application, issue a handgun license to all applicants eligible to possess firearms under state and federal law, including Plaintiffs.

Plaintiffs further seek an Order preliminarily and permanently enjoining Suffolk County Police Commissioner Rodney Harrison, and all successors, his officers, agents, servants,

employees, and attorneys, and all other persons who are in active concert or participation with him who receive actual notice thereof from: (i) implementing and enforcing Penal Law sections 400.00(1)(b), 400.00(1)(o), 400.00(19), that portion of section 400.00(4-a) allowing statutory licensing officers 6 months to either issue a license or deny an application made thereunder; (ii) implementing and enforcing Penal Law section 400.00(15) against handgun licensees who carry a handgun registered thereon outside of their license restriction; (iii) implementing a licensing process that exceeds 30 days between presentment New York State Pistol/Revolver License Application (PPB-3) and issuance of a license (or denial thereof); (iv) requiring applicants to be personally interviewed; and enforcing a Suffolk County policy that subjects unlicensed individuals who participate in live-fire training with a duly authorized instructor, and their instructors, to criminal penalties including arrest and incarceration.

## MATERIAL FACTS

### *Handgun License Applicants: Giambalvo, Mougios, Mashkow, and McLaughlin*

<u>Lengthy Delays, State PPB-3 Application, Fingerprints, and Photographs</u>

Plaintiffs are Suffolk County residents with no prohibitors to the purchase, possession, receipt, or ownership of firearms. [Declarations of Zachary Giambalvo, John Mougios, Shane Mashkow, and Kevin McLaughlin at ¶ 3]. Plaintiffs intend to immediately purchase, possess, and carry a handgun from a federally licensed firearms dealer (FFL) [Giambalvo Dec. at ¶¶ 3-5]; Mougios Dec. at ¶ 4; Mashkow Dec. at ¶ 4; McLaughlin Dec. at ¶ 3], and already have purchased a handgun but for the delays caused by Suffolk County in issuing their handgun licenses. [Giambalvo Dec. at ¶¶ 3-5; Mougios Dec. at ¶ 4; Mashkow Dec. at ¶ 4; McLaughlin Dec. at ¶¶ 3-5]. Plaintiffs applied to the Suffolk County Police Department, Licensing Bureau ("SCPD") for a New York State handgun license and will have to wait ***over 2 years*** before one will issue.

2

[Giambalvo Dec. at ¶¶ 6-10; Mougios Dec. at ¶¶ 7-9; Mashkow Dec. at ¶¶ 9-12; McLaughlin Dec. at ¶¶ 4-5].

Before applying, each applicant visited the SCPD Licensing Bureau website to learn the process for applying for a handgun license, and each completed the only "application" made available, referenced, and accepted by the SCPD – the "Applicant Questionnaire." [Giambalvo Dec. at ¶¶ 6-7; Mougios Dec. at ¶¶ 7-8; Mashkow Dec. at ¶¶ 9-11; McLaughlin Dec. at ¶ 4]. The applicants completed and tendered the Applicant Questionnaire, along with the $10 fee. [*Ibid*].

The New York State Pistol/Revolver License Application (PPB-3) form is required by law to be filed by an individual applying for a handgun license; no other form has been approved by the Superintendent of the New York State Police to be used for such an application – including the "Applicant Questionnaire." Penal Law § 400.00(3). [Declaration of Amy L. Bellantoni at Ex. 1].

Months after submitting the "Applicant Questionnaire" and filing fee, Mr. Giambalvo was informed by SCPD in July 2022 that "there is an approximately a 2 year wait before you will hear from an investigator for the in person interview." [Giambalvo Dec. at ¶ 9]. In August 2022, Mr. Giambalvo was informed by SCPD, "it's going to take about a year and a half to 2 years to get called for the interview." [Giambalvo Dec. at ¶ 10]. A copy of the email from SCPD is attached to Mr. Giambalvo's Declaration, and a copy of the digital recording of his conversation with Suzanne will be mailed with the Court's courtesy copy and to counsel. Shane Mashkow filed the "Applicant Questionnaire" was informed he "should get an appointment sometime in *February 2024*." [Mashkow Dec. at ¶¶11- 12]. John Mougios filed the "Applicant Questionnaire" and fee in July 2021 but will not have an investigator assigned for another year. [Mougios Dec. at ¶¶ 8-9]. Kevin McLaughlin will not have an in-person interview and fingerprinting until *in and around July 2025.* [McLaughlin Dec. at ¶¶ 4-5].

New York licensing officers, like Commissioner Harrison, "shall" issue a license or deny an application within 6 months of the filing of the PPB-3.[1] To "get around" the 6-month time limitation, SCPD does not publish[2] and prevents applicants from filing the PPB-3. When Mr. Giambalvo asked if he could file the completed PPB-3, he was told "the state application doesn't mean anything…" [Giambalvo at ¶¶ 23-25].

SCPD exclusively refers to the "Applicant Questionnaire" in its instructions and procedural publications to delay commencement of the 6-month time clock. [Bellantoni Dec. at Ex. 2]. SCPD will not issue the PPB-3 until the in-person interview, fingerprinting, and photographing appointment. Applicants must then complete, obtain the original signatures of 4 character references, and file the PPB-3 just to begin the *background investigation* - and commence the 6-month clock. If SCPD would provide and accept the PPB-3 upon presentment, Plaintiffs would file it. [Giambalvo at ¶¶12-13; McLaughlin at ¶6; Mashkow at ¶15; Mougios at ¶10].

Other agencies publish their Originating Agency Identifier number ("ORI")[3], which allows applicants to have their digital fingerprints sent directly to the NYS Division of Criminal Justice Services to obtain their criminal history report (the "DCJS Report"). Sullivan County's pistol licensing instructions provide: "FINGERPRINTS: Are electronically submitted. Call toll-free phone number – 1-877-472-6915, or go on-line at https://uenroll.identogo.com/. to make an appointment. When you call you will be required to give an ORI number and location. The ORI

---

[1] Penal Law § 400.00(4-a).
[2] The New York State PPB-3 application is generally made available by the law enforcement agencies responsible for investigating applications for a handgun license; if a copy is not made available on the website, one is generally available for pickup. See, e.g., Suffolk County Sheriff's Office at https://www.suffolkcountysheriffsoffice.com/copy-of-pistol-licensing-1 (providing a direct link to the New York State Police to obtain a copy of the PPB-3 application; Westchester County at https://publicsafety.westchestergov.com/about-us/pistol-license-unit; Putnam County at https://putnamsheriff.com/pistol-permit-application/; Albany County at https://www.albanycounty.com/government/county-sheriff/pistol-permits; Erie County at https://www2.erie.gov/clerk/new-pistol-permit-application-process.
[3] All law enforcement agencies and courts are assigned an ORI number, which is used in the identification of the agency/court in all phases of law enforcement. See, Bellantoni Dec. at Ex. 1.

number is NY052013J the location is Clerk-Pistol Permit, Monticello, N.Y. 12701." [Bellantoni Dec. at Ex. 3; Chautauqua County at Ex. 4; Erie County at Ex. 5].[4]

<u>Licensing Bureau Hours of Operation</u>

The SCPD Licensing Bureau is only open from 9:00 a.m. until 4:30 p.m. Monday through Friday, which requires individuals who work traditional hours – like Shane Mashkow[5] – to miss work to be fingerprinted, photographed, and/or interviewed.  [Mashkow at ¶ 16].

<u>Social Media Information, Character Reference Information, and In-Person Interview</u>
<u>Penal Law § 400.00(1)(o)</u>

Zachary Giambalvo objects to disclosing his social media account information, the names and contact information for "domestic partners" or adults and children he lives with or be subject to an in-person interview, nor will he ask his character references to swear under oath that he has not "engaged in any acts, or made any statements that suggest they are likely to engage in conduct that would result in harm to themselves or others"; the requirement is subjective and, like the social media disclosure, puts his First Amendment rights in conflict with the exercise of his Second Amendment rights. [Giambalvo at ¶¶ 14-15; Mougios at ¶¶ 15-16].

<u>18-Hour Training Requirement - Penal Law § 400.00(1)(o) and 400.00(19)</u>

Kevin McLaughlin is a U.S. Marine reservist with "extensive firearms training" who objects to the 18-hour training requirement under Penal Law § 400.00(1)(o) and 400.00(19). [McLaughlin at ¶ 6]. He will not spend money and time on the training because "[p]rotecting [himself] with a handgun is a guaranteed right and cannot be conditioned on or delayed by such a

---

[4] Erie County also references that the PPB-3 application will need to be completed, which can be picked up at the "Pistol Permit Office." https://www2.erie.gov/clerk/new-pistol-permit-application-process
[5] Shane Mashkow works in New York City Monday  through  Friday, and leaves his home before  9:00  a m. and returns after  4:30  p.m.  If required to be fingerprinted, personally interviewed, and/or photographed at SCPD, he will be forced to take time off from work just to be able to exercise a guaranteed  constitutional right. Like other applicants, Mr. Mashkow should either be able to provide his own DCJS Report,  PPB-3 and photographs by mail or, if required to appear in person, to appear at a time outside of banker's hours. [Mashkow Dec. at ¶ 16].

regulation nor should [he] be forced to spend hundreds of dollars to simply exercise that right."
[McLaughlin at ¶ 6]. John Mougios will also not comply; he served his country for 6 years in the
New York Army National Guard assigned to Bravo Company, 1/69th Infantry Division. [Mougios
at ¶¶ 12-13]. Mr. Mougios received extensive firearms training and has over 2½ years of
experience as a Team Leader conducting live fire exercises and teaching basic infantry tactics and
weapons safety courses; he should not be forced to spend time and money on training before being
able to exercise the right to carry a handgun for self-defense. [*Id.* at ¶¶ 13-14].

Shane Mashkow "contacted multiple businesses on Long Island, including Dark
Storm Industries in Oakdale, New York (Suffolk County), regarding the 18-hour training
required to apply for a concealed carry license only to discover that the "fees range from around
$400 to $800 (Dark Storm's fee), which is not a nominal amount of money to have to spend
to exercise a constitutional right." [Mashkow at ¶¶ 17-18]. He "plan[s] to train regularly at the
gun range, at [his] own pace and financial ability" but feels that "prevent[ing him] from
protecting [himself] with a handgun until [he] satisfy[ies] a government-imposed condition is an
obvious infringement and violates the Second Amendment." [*Id.* at ¶ 18].

<u>Suffolk County Police Policy - Arrest and Incarceration of Unlicensed Live-Fire Trainees</u>

Frank Melloni is an NRA-certified firearms instructor and President of Renaissance
Firearm Instruction, Inc. (RFI), located in Suffolk County. RFI provides firearms training to
students through NRA-certified instructors on a wide-variety of skills and practices. [Melloni at ¶
3]. After the enactment of the New York State Concealed Carry Improvement Act (CCIA),
Mr. Melloni created an 18-hour CCIA-compliant curriculum to train and certify individuals
seeking to apply for, or renew, a New York State concealed carry handgun license as required by
Penal Law § 400.00(19), including the required 2- hour live-fire component. This 18-hour course

encompasses the NRA Basic Pistol Course, and otherwise meets the minimum standards required by the New York State Division of Criminal Justice Services. RFI offers the 18-hour course to the public, including individuals who have not yet been issued a handgun license. [*Id.* at ¶¶ 4-5]. Mr. Melloni is duly authorized to instruct, supervise, and administer the 18-hour course and to issue the requisite certificate to obtain a concealed carry license to students who have successfully completed the course. [*Id.* at ¶¶ 4-5]. Although one cannot legally possess a handgun in New York without a handgun license, § 265.20(3-a) provides an exemption.

Mr. Melloni was forced to cancel the registration of unlicensed individuals who paid and signed up for his 18-hour classes because Lt. Komorowski threatened to "arrest anybody who handles a pistol or revolver without a New York State pistol permit" because SCPD is "not honoring" the § 265.20(3-a) exemption. [Melloni at ¶¶ 10-12].

Mr. Giambalvo is planning to take the 18-hour concealed carry training course required by the CCIA in December 2022 and provided by Frank Melloni through Renaissance Firearms Instruction, Inc. (RFI). The 18-hour course contains a live-fire component – Mr. Melloni will instruct Mr. Giambalvo on the live-fire component irrespective of the SCPD policy. [Melloni Dec. at ¶¶ 1-22]. They face a credible threat of arrest and incarceration by SCPD. [Giambalvo Dec. at ¶¶ 18-20; Melloni Dec. at ¶¶ 1-22]. Mr. Giambalvo faces a credible threat of arrest for possessing a loaded firearm, a Class C violent felony offense [see, Penal Law § 265.03(3); 70.02(1)(b)] and Mr. Melloni faces a credible threat of arrest for aiding and abetting Mr. Giambalvo's criminal possession of a loaded firearm, also Class C violent felony offense as "one who aids and abets the commission of a crime is himself a principal". *People ex rel. Guido v. Calkins*, 9 N.Y.2d 77, 80 (1961) citing, *People v. Kief*, 126 N.Y. 661, 662 (1891). Mr. Giambalvo and Mr. Melloni should

not have to choose between engaging in conduct protected by the Second Amendment or being arrested.

<u>Delays in Removing Concealed Carry Restrictions After *Bruen*</u>

In March 2022, Dr. McGregor was issued a concealed carry handgun license by SCPD restricted to "sportsman", which allows him to purchase and possess handguns, and carry a handgun during sporting activities. [McGregor Dec. at ¶¶ 16-18]. Rather than automatically lift his restriction, SCPD policy requires licensees to file an amendment form and pay another fee to remove restrictions that only existed because of the unconstitutional "proper cause" requirement. [*Id.* at ¶ 19]. On August 15, 2022, Dr. McGregor presented the amendment form, and paid the fee. [*Id.* at ¶ 20]. Dr. McGregor was informed by Defendant Carpenter the amendment form and check "starts it" but "doesn't change anything right now." Despite *Bruen*, nothing changed. [*Id.* at ¶ 20]. Inv. Carpenter told Dr. McGregor to "keep [his] eyes and ears open for further guidance on the training and all that stuff." [*Id.* at ¶ 21], meaning the 18-hour training requirement required by the CCIA that would not take effect for another 2 weeks from then. [*Id.* at ¶¶ 22-23]. Dr. McGregor objects to taking any additional steps before carrying a handgun for self-defense. [*Id.* at ¶¶ 22-25].

Dr. McGregor intends to carry his handgun in public for self-protection outside of his sportsman restriction on a regular basis - "with or without being issued an amended license," which will subject him to criminal penalties under Penal Law § 400.00(15). He, of course, has "no intention of carrying a handgun in locations that the Supreme Court has identified as prohibited. [McGregor at ¶¶ 26-29].

# ARGUMENT[6]

A court may issue a preliminary injunction only on notice to the adverse party. FRCP 65(a)(1). To obtain a preliminary injunction, a movant must show irreparable harm and meet either of two standards: (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in the movant's favor, ." *Connecticut State Police Union v. Rovella*, 494 F. Supp. 3d 210, 218 (D. Conn. 2020) quoting, *Trump v. Deutsche Bank AG*, 943 F.3d 627, 635 (2d Cir. 2019), rev'd on other grounds, —— U.S. ——, 140 S.Ct. 2019, 207 L.Ed.2d 951 (2020); *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 184 (2d Cir. 2019). Only one plaintiff need have standing to seek each form of relief requested in the complaint. *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008).

## I. PLAINTIFFS' SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court reiterated the text, history, and tradition standard of reviewing Second Amendment challenges, consistent with *Heller, McDonald,* and *Caetano.* Flatly rejecting the 'interest balancing' 'intermediate scrutiny' test created by the Second Circuit (and others), *Bruen* laid out a clear path to determine the constitutionality of government regulations affecting the Second Amendment: "We reiterate that the standard for applying the Second Amendment is as follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution **presumptively protects** that conduct.
>
> The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

---

[6] For the Court's reference, the challenged Penal Law statutes are reproduced herein in the annexed Appendix.

9

*Bruen*, at 2126. ("In sum, the Courts of Appeals' second step is inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny.") (emphasis added) (citation omitted).

Where later history contradicts what the text says, the text controls. *Bruen*, at 2137.

### A.    Plaintiffs' Conduct Is 'Presumptively Protected'

Because the plain text of the Second Amendment covers Plaintiffs' conduct – the possession and carriage of a handgun for self-defense[7,8] their conduct is 'presumptively protected' by the Second and Fourteenth Amendments[9].

### B.    Defendants Alone Have the Burden of Proof

SCPD "must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, at 2126. "***Only then*** may a court conclude that [Plaintiffs'] conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, at 2126-2127. Defendants cannot meet their burden.

The scope of the protection provided by the Second Amendment applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791. Bruen, at 2137–38 citing, *Crawford v. Washington*, 541 U.S. 36, 42–50, 124 S.Ct. 1354 (2004) (Sixth Amendment); *Virginia v. Moore*, 553 U.S. 164, 168–169 (2008) (Fourth Amendment); *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 122–125 (2011) (First Amendment).

---

[7] *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) ("Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation.").
[8] *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam) (stun guns).
[9] *McDonald v. Chicago*, 561 U.S. 742 (2010) (Second Amendment applies to the states through the Fourteenth Amendment); accord, *Bruen*, at 2137 ("individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government.").

### C.       SCPD Delays Violate the Second and Fourteenth Amendments

The delay of Plaintiffs' exercise of a fundamental right to protect themselves with any weapon in common use pending satisfaction of a government-imposed condition is repugnant to the Constitution. The Second Amendment is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald*, 561 U.S. at 780.

Apart from the fact that seeking permission from the government to possess, purchase, and/or carry a weapon is entirely inconsistent with the plain text of the Second Amendment ("shall not be infringed"), the Supreme Court has already proclaimed that "**lengthy wait times in processing license applications** or exorbitant fees deny ordinary citizens their right to public carry." *Bruen,* at 2138.[10]  Suffolk County's 2-3 year wait time is patently unconstitutional.

### D.       Penal Law § 400.00(4-a) Violates the Second and Fourteenth Amendments

Even the 6-month window allotted under § 400.00(4-a) is too long to wait before being able to exercise a presumptively protected right. Eligibility to possess rifles and shotguns can be determined in a ***matter of minutes*** through an FFL after a federal criminal background check.[11] The right to possess handguns should not be treated differently.

### E. Penal Law § 400.00(15) Violates the Second and Fourteenth Amendments

SCPD issued Dr. McGregor a concealed carry license restricted to "sportsman" activities – he has already been deemed eligible to carry a handgun concealed. Subjecting him to arrest and incarceration under § 400.00(15) for carrying for "self-defense" is unconstitutional.

---

[10] The continuation of 'may-issue' handgun licensing schemes, like New York's was conditional: "so long as those States employ objective licensing requirements like those used by the 43 shall-issue States." *Bruen*, 2162. New York remains a subjective and discretionary, 'may-issue' State.
[11] https://www.fbi.gov/how-we-can-help-you/need-an-fbi-service-or-more-information/nics/about-nics

## II. PLAINTIFFS WILL CONTINUE TO SUFFER IRREPARABLE HARM

Irreparable harm is certain and imminent harm for which a monetary award does not adequately compensate [*Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003)] and exists where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied [*Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999)].

To establish injury in fact, a plaintiff must show that he suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). An allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a "substantial risk" that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted). This injury must be fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable decision. *Lujan,* at 560–61.

In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm. *Valenzuela Arias v. Decker*, No. 20 CIV. 2802 (AT), 2020 WL 1847986, at *5 (S.D.N.Y. Apr. 10, 2020) citing, *Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004); *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) (no separate showing of irreparable harm is necessary); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) ("[I]t is the alleged violation of a constitutional right that triggers a finding of irreparable harm.").

"The right to keep and bear arms protects tangible and intangible interests which cannot be compensated by damages…The right to bear arms enables one to possess not only the means to

defend oneself but also the self-confidence — and psychic comfort — that comes with knowing one could protect oneself if necessary…Loss of that peace of mind, the physical magazines, and the enjoyment of Second Amendment rights constitutes irreparable injury." *Duncan v. Bonta*, 265 F.Supp.3d 1106, 1135 citing, *Grace v. District of Columbia*, 187 F. Supp. 3d 124, 150 (DDC 2016); see also *Ezell v City of Chicago*, 651 F3d 684, 699 (7th Cir 2011) ("Infringements of this right cannot be compensated by damages.")

### A. SCPD Licensing Process and Procedures

Like the First Amendment, the loss of Second Amendment 'freedoms, for even minimal periods of time, constitutes irreparable injury.' C.f., *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008) citing, *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 349 (2d Cir. 2003); *Paulsen v. County of Nassau*, 925 F.2d 65, 68 (2d Cir.1991) (temporary abridgment of the First Amendment right to free expression constitutes an irreparable injury); see also, *O'Malley v. City of Syracuse*, 813 F. Supp. 133, 140 (N.D.N.Y. 1993).

Denial of a government-issued permit is a quintessential injury-in-fact for purposes of standing. *Connecticut Citizens Def. League, Inc. v. Lamont*, 465 F. Supp. 3d 56, 66 (D. Conn. 2020), vacated on other grounds, 6 F.4th 439 (2d Cir. 2021) citing, *Parker v. D.C.*, 478 F.3d 370, 376 (D.C. Cir. 2007) (denial of registration certificate to own handgun), aff'd sub nom. *D.C. v. Heller*, 554 U.S. 570 (2008).

Plaintiffs Giambalvo, Mougios, Mashkow, and Mclaughlin are barred from exercising the right to possess, purchase, and carry handguns for self-defense because of SCPD policy of withholding the PPB-3, refusing to accept the PPB-3 upon presentment, lengthy delays in fingerprinting, photographing, and issuing licenses. See, *Connecticut Citizens Def. League, Inc. v. Lamont*, 465 F. Supp. 3d 56, 66 (D. Conn. 2020), vacated on other grounds, 6 F.4th 439 (2d Cir.

13

2021) (finding no merit to the State's argument that a 'temporary delay' occasioned by the suspension of fingerprinting does not result in injury. "If the Governor and the Commissioner were to issue a gag order barring plaintiffs from exercising their First Amendment free speech rights for the balance of the COVID-19 crisis, plaintiffs would surely suffer injury despite the 'temporary' nature of the crisis. The same holds true for plaintiffs' exercise of their Second Amendment rights.") citing, *United States v. Decastro*, 682 F.3d 160, 167 (2d Cir. 2012) (noting that "[i]n deciding whether a law substantially burdens Second Amendment rights, it is therefore appropriate to consult principles from other areas of constitutional law, including the First Amendment"); *Parker v. D.C.*, 478 F.3d 370, 376 (D.C. Cir. 2007) (denial of registration certificate to own handgun), aff'd sub nom. *D.C. v. Heller*, 554 U.S. 570 (2008).

Dr. McGregor cannot carry a handgun in public for self-defense because SCPD policy subjects existing concealed carry licensees to the newly implemented CCIA requirements of § 400.00(1)(o), which only applies to licenses being "issued" or "renewed", not amendments.

### B. SCPD Enforcement of 400.00(1)(b)

Penal Law 400.00(1)(b) exemplifies the subjective, discretionary licensing factors <u>rejected</u> by the Supreme Court in *Bruen* in that they require the "exercise of judgment, and the formation of an opinion". *Bruen*, at n. 9.

### C. SCPD Enforcement of 400.00(1)(o) and 400.00(19)

Likewise, subsection (1)(o) contains discretionary and subjective factors requiring an "exercise of judgment, and the formation of an opinion". *Bruen*, at n. 9. Requiring the names and contact information of *no less than* four character references who can attest to the applicant's good moral character and that such applicant has not engaged in any acts, or made any statements that suggest they are likely to engage in conduct that would result in harm to themselves or others.

14

Either an individual is eligible to possess firearms or they are not. Input from third persons as to whether or not an applicant should be allowed to exercise the right to self-defense is *patently* unconstitutional. The open-ended discretion found in section 400.00(1)(o)(v), under which a licensing officer can consider any "other information" "reasonably necessary and related to the review of the licensing application" fails for the same reasons.

The remaining provisions also find no support in America's historical traditions of firearm regulation. Subsection (o)(i), which requires disclosure of the names and contact information for the applicant's current spouse, or domestic partner, any other adults residing in the applicant's home, including adult children, and whether the applicant resides with minors is information that, like the character reference requirement of subsection (o)(ii), implements factors extraneous to the *only* relevant factor: whether the applicant is prohibited under state or federal law from possessing firearms. Similarly, disclosure of social media accounts to confirm an applicant's 'character and conduct' not only falls into the fact-based, opinion-based factors rejected in *Bruen*, it impermissibly pits the free exercise of the First Amendment against the Second, which constitutes irreparable injury. C.f., *Cobb v. Beame*, 402 F. Supp. 19, 26 (S.D.N.Y. 1975) (being forced to choose between exercising the First Amendment right to free speech and assembly or facing arrest constitutes irreparable injury) citing, *Dombrowski v. Pfister*, 380 U.S. 479 (1965).

Subsection (o)(iii) and section 400.00(19) together require concealed carry applicants to complete the 18-hour course before a concealed carry license will issue. Plaintiffs will have to spend roughly $400-$800 for the course[12], not including time, ammunition cost, and travel.  These regulations find no support in the Founding Era. The "natural right of…self-preservation"[13] is not

---

[12] Mashkow Dec. at ¶¶ 17-18.
[13] "*Heller* found that the Amendment codified a preexisting right and that this right was regarded at the time of the Amendment's adoption as rooted in the natural right of resistance and self-preservation. The inherent right of self-

conditioned on governmental hurdles. The inherent and individual right to self-defense – the *central component* of the Second Amendment[14] - is a 'pre-existing right'[15] granted by God – it is neither a privilege nor bestowed by the government.

### D. SCPD Enforcement of Penal Law section 400.00(15)

For pre-enforcement challenges, "[a] party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct." *Davis v. FEC*, 554 U.S. 724, 734 (2008). An actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging a law. *Id.* citing, *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). A plaintiff satisfies the injury-in-fact requirement where he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony*, 573 U.S. at 158–59 quoting, *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979).

The Second Circuit's "low threshold" showing of a credible threat of enforcement is a "forgiving" standard, and "courts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund." *Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022).

In numerous preenforcement cases where the Supreme Court has found standing on a showing that a statute indisputably proscribed the conduct at issue, it did not place the burden on the plaintiff to show an intent by the government to enforce the law against it. Rather, it

---

defense, *Heller* explained, is central to the Second Amendment right." *Bruen*, at 2157 (internal citations and quotation marks omitted) quoting, *Heller*, at 594, 628.

[14] "As we stated in *Heller* and repeated in *McDonald*, "individual self-defense is 'the *central component*' of the Second Amendment right." *Bruen*, at 2132 quoting, *McDonald*, at 767

[15] "…it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed." As we said in *United States v. Cruikshank*, 92 U.S. 542, 553, 23 L.Ed. 588 (1876), "[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed ...." *Heller*, at 592.

presumed such intent in the absence of a disavowal by the government or another reason to conclude that no such intent existed. *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013). In *Vermont Right to Life and Pacific Capital Bank*, the Second Circuit suggested "that a plaintiff has standing when it may legitimately fear that it will face enforcement under its reasonable interpretation of the statute and (2) the Supreme Court's recognition that a preenforcement challenge is justiciable when enforcement is a realistic danger when there is a "credible threat of prosecution," or when a plaintiff has an "actual and well-founded fear" of such enforcement….neither this Court nor the Supreme Court has required much to establish this final step in challenges to ordinary criminal or civil punitive statutes. Rather, we have presumed that the government will enforce the law." *Hedges*, at 199–200.

Any violation of section 400.00 is a Class A misdemeanor, subjecting the offender to arrest, up to 1 year incarceration, a fine of up to one thousand dollars, suspension or revocation of firearm license, and loss of property (handguns). Penal Law sections 400.00(11), (15); 70.15(1); 80.05. Carrying a handgun outside of one's handgun license restrictions violates § 400.00(15).

Dr. McGregor intends to carry his handgun concealed on his person and in public for self-defense outside of the unconstitutionally imposed restrictions of his 'sportsman' license. [McGregor Dec. at ¶ 26]. Dr. McGregor faces a credible threat of arrest by SCPD and NYSP for carrying a handgun outside of his license restriction, but he should not have to choose between engaging in protected conduct or facing arrest. [McGregor Dec. at ¶ 28].  The Supreme Court has similarly indicated that plaintiffs suffer irreparable injury under such circumstances. See, *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 380-381  (1992) (injunctive relief was available where "respondents were faced with a Hobson's choice: continually violate the Texas law and expose

themselves to potentially huge liability; or violate the law once as a test case and suffer the injury of obeying the law during the pendency of the proceedings and any further review").

### E.  SCPD Policy of Arresting Unlicensed Live-Fire Trainees

The Second Circuit has held that when a plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Cayuga Nation*, at 331. The standard established in *Babbitt* "sets a low threshold and is quite forgiving to plaintiffs seeking such preenforcement review," as courts are generally "willing to presume that the government will enforce the law as long as the relevant statute is recent and  not moribund." *Cayuga Nation*, at 331.

The possession of a loaded handgun in New York is a Class C violent felony under section 265.03(3). To allow unlicensed people to complete the 18-hour training requirement, section 265.20(3-a) provides an exemption from prosecution for the possession a pistol or revolver during the course of live-fire training with a duly authorized firearms instructor.

It is SCPD policy to arrest any unlicensed person who engages in the live-fire component of the 18-hour training course. This policy was communicated to Mr. Melloni from the head of the SCPD Licensing Bureau, Lt. Michael Komorowski, who informed that SCPD will "arrest anybody who handles a pistol or revolver without a New York State pistol permit" and is "not honoring" the exemption outlined in Penal Law § 265.20(3-a). [Melloni Dec. at ¶¶ 11-12].

Zachary Giambalvo has concrete plans to attend an 18-hour training course offered by RFI and taught by Frank Melloni in December 2022, including the 2-hour live-fire component. [Giambalvo Dec. at ¶ 18]. Mr. Melloni has concrete plans to instruct Mr. Giambalvo on the live-fire portion of the training in his December 2022 course. [Melloni Dec. at ¶ 18]. Both Mr.

Giambalvo and Mr. Melloni face a credible threat of arrest by Suffolk County police officers. [Giambalvo at ¶ 19; Melloni at ¶¶ 17-20]. Being arrested, fingerprinted, and incarcerated would be an irreparable injury and no plaintiff is required to undergo an arrest before being provided with relief. See, e.g., *Cayuga Nation*, at 331. Under *Babbitt*, being threatened with prosecution is not a requirement; it is sufficient for a plaintiff to allege that enforcement is likely.

## III. AN INJUNCTION IS IN THE PUBLIC INTEREST

A preliminary injunction is "in the public interest" if the preliminary injunction would not "cause harm to the public interest." *U.S. S.E.C. v. Citigroup Global Mkts. Inc.*, 673 F. 3d 158, 163 n.1 (2d Cir. 2012). "As with irreparable injury, when a plaintiff establishes 'a likelihood that Defendants' policy violates the U.S. Constitution, Plaintiffs have also established that both the public interest and the balance of the equities favor a preliminary injunction.'" *J.S.R. by & through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 743 (D. Conn. 2018) citing, *Ms. L. v. U.S Immigr. & Customs Enf't ("ICE")*, 310 F. Supp. 3d 1133, 1146 (S.D. Cal. 2018), modified, 330 F.R.D. 284 (S.D. Cal. 2019), and enforcement granted in part, denied in part sub nom. *Ms. L. v. U.S. Immigr. & Customs Enf't*, 415 F. Supp. 3d 980 (S.D. Cal. 2020) quoting, Arizona Dream Act Coalition, 757 F.3d 1053, 1069 (9th Cir. 2014) (balance of equities favors preventing the violation of a party's constitutional rights).

The public interest would not be disserved by the granting of Plaintiffs' requested relief.

The term "the People" in the Constitution "unambiguously refers to all members of the political community, not an unspecified subset....

> 'The people' seems to have been a term of art employed in select parts of the Constitution .... [Its uses] sugges[t] that 'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of

> persons who are part of a national community or who have otherwise developed
> sufficient connection with this country to be considered part of that community."

*D.C. v. Heller*, 554 U.S. 570, 580 (2008) citing *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990).

Plaintiffs are "the People" for whom the Bill of Rights, including the Second Amendment, was codified. The public interest favors the adherence to and exercise of all constitutionally protected rights, including the Second and Fourteenth Amendments, by law-abiding responsible citizens, and "it is always in the public interest to prevent the violation of a person's constitutional rights." *Duncan*, at 1136 (granting preliminary injunction of California's magazine ban statute) citing, *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), *aff'd sub nom., Burwell v. Hobby Lobby Stores, Inc.,* —— U.S. ——, 134 S.Ct. 2751 (2014).

The challenged policies and statutes are actively impeding and frustrating the People's free exercise of ***presumptively protected*** conduct. Granting the requested relief will ***benefit*** the public.

## IV.  BALANCING EQUITIES IS IMPROPER

While balancing the equities is a prong of the injunctive relief consideration, it is no longer viable in the context of a Second Amendment challenge. A balancing test requires the Court to place Plaintiffs' constitutional rights on one side of the equation and the hardship faced by the government if the injunctive relief is granted. But 'interest balancing" in the Second Amendment context has been *thrice* flatly rejected by the Supreme Court in *Heller*, *McDonald* and *Bruen*.

> "The Second Amendment does not permit - let alone require - judges to assess
> the costs and benefits of firearms restrictions." *Bruen*, at 2129 (quoting,
> *McDonald*, at 790-791); *Heller*, at 634 ("[t]he very enumeration of the right
> takes out of the hands of government—even the Third Branch of Government—
> the power to decide on a case-by-case basis whether the right is really worth
> insisting upon.").

Whatever purported 'hardship' the government would face cannot – and does not - outweigh Plaintiffs' presumptively protected rights under the Second and Fourteenth Amendments.

## CONCLUSION

Plaintiffs' application should be granted in its entirety.

Dated: December 8, 2022
        Scarsdale, New York

                                THE BELLANTONI LAW FIRM, PLLC
                                *Attorneys for Plaintiffs*

                        By:     *Amy L. Bellantoni*
                                Amy L. Bellantoni (AB3061)
                                2 Overhill Road, Suite 400
                                Scarsdale, New York 10583
                                abell@bellantoni-law.com

# APPENDIX

<u>Penal Law section 400.00(1) (in pertinent part)</u>

"Eligibility. No license shall be issued or renewed pursuant to this section except by the licensing officer, and then only after investigation and finding that all statements in a proper application for a license are true. No license shall be issued or renewed except for an applicant…

(b) of good moral character, which, for the purposes of this article, shall mean having the essential character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others;

(o) for a license issued under paragraph (f) of subdivision two of this section, the applicant shall meet in person with the licensing officer for an interview and shall, in addition to any other information or forms required by the license application submit to the licensing officer the following information: (i) names and contact information for the applicant's current spouse, or domestic partner, any other adults residing in the applicant's home, including any adult children of the applicant, and whether or not there are minors residing, full time or part time, in the applicant's home; (ii) names and contact information of no less than four character references who can attest to the applicant's good moral character and that such applicant has not engaged in any acts, or made any statements that suggest they are likely to engage in conduct that would result in harm to themselves or others; (iii) certification of completion of the training required in subdivision nineteen of this section; (iv) a list of former and current social media accounts of the applicant from the past three years to confirm the information regarding the applicants [sic] character and conduct as required in subparagraph (ii) of this paragraph; and (v) such other information required by the licensing officer that is reasonably necessary and related to the review of the licensing application."

<u>Penal Law section 400.00(2) (in pertinent part)</u>

"Types of licenses…A license for a pistol or revolver, other than an assault weapon or a disguised gun, shall be issued to "(a) have and possess in his dwelling by a householder;…(f) have and carry concealed, without regard to employment or place of possession subject to the restrictions of state and federal law, by any person…"

Penal Law section 400.00(4-a)

"Processing of license applications. Applications for licenses shall be accepted for processing by the licensing officer at the time of presentment. Except upon written notice to the applicant specifically stating the reasons for any delay, in each case the licensing officer shall act upon any application for a license pursuant to this section within six months of the date of presentment of such an application to the appropriate authority. Such delay may only be for good cause and with respect to the applicant. In acting upon an application, the licensing officer shall either deny the application for reasons specifically and concisely stated in writing or grant the application and issue the license applied for.

Penal Law section 400.00(15)

Any violation by any person of any provision of this section is a class A misdemeanor.

Penal Law section 400.00(19)

Prior to the issuance or renewal of a license under paragraph (f) of subdivision two of this section, issued or renewed on or after the effective date of this subdivision, an applicant shall complete an in-person live firearms safety course conducted by a duly authorized instructor with curriculum approved by the division of criminal justice services and the superintendent of state police, and meeting the following requirements: (a) a minimum of sixteen hours of in-person live curriculum approved by the division of criminal justice services and the superintendent of state police, conducted by a duly authorized instructor approved by the division of criminal justice services, and shall include but not be limited to the following topics: (i) general firearm safety; (ii) safe storage requirements and general secure storage best practices; (iii) state and federal gun laws; (iv) situational awareness; (v) conflict de-escalation; (vi) best practices when encountering law enforcement; (vii) the statutorily defined sensitive places in subdivision two of section 265.01-e of this chapter and the restrictions on possession on restricted places under section 265.01-d of this chapter; (viii) conflict management; (ix) use of deadly force; (x) suicide prevention; and (xi) the basic principles of marksmanship; and (b) a minimum of two hours of a live-fire range training course. The applicant shall be required to demonstrate proficiency by scoring a minimum of eighty percent correct answers on a written test for the curriculum under paragraph (a) of this subdivision and the proficiency level determined by the rules and regulations promulgated by the

division of criminal justice services and the superintendent of state police for the live-fire range training under paragraph (b) of this subdivision. Upon demonstration of such proficiency, a certificate of completion shall be issued to such applicant in the applicant's name and endorsed and affirmed under the penalties of perjury by such duly authorized instructor. An applicant required to complete the training required herein prior to renewal of a license issued prior to the effective date of this subdivision shall only be required to complete such training for the first renewal of such license after such effective date.