UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ZACHARY GIAMBALVO, JOHN MOUGIOS,
SHANE MASHKOW, KEVIN MCLAUGHLIN,
MICHAEL MCGREGOR, FRANK MELLONI,
and RENAISSANCE FIREARMS INSTRUCTION,
INC., and all similarly situated individuals,

                             Plaintiffs,

        - against –

SUFFOLK COUNTY, New York, Police Commissioner
RODNEY HARRISON, in his Official
Capacity, MICHAEL KOMOROWSKI, Individually,
ERIC BOWEN, Individually, WILLIAM SCRIMA,
Individually, WILLIAM WALSH, Individually,
THOMAS CARPENTER, Individually, JOHN DOES 1-5,
Individually and JANE DOES 1-5, Individually,
Acting Superintendent of the New York State Police
STEVEN NIGRELLI, in his Official Capacity,

                             Defendants.
------------------------------------------------------------X

FILED
CLERK

2:18 pm, Feb 14, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

MEMORANDUM
AND ORDER

Civil Action
No. 22-4778 (GRB)(ST)

**GARY R. BROWN, United States District Judge**:

      In this action filed pursuant to 42 U.S.C. §1983, plaintiffs bring claims on behalf of themselves and a putative class against Suffolk County, various employees and officials thereof and the Acting Superintendent of the New York State Police Department relating to certain recently-enacted New York State pistol licensing provisions and a bevy of County policies and practices implementing those provisions. Presently before the Court is an application for a preliminary injunction[1] directing a broad spectrum of measures, ranging from enjoining officials from enforcing criminal statutes to extending the operations of the Suffolk County Police

---

[1] In their papers, plaintiffs claim to be seeking "preliminary and permanent" relief, *see, e.g*., Docket Entry ("DE") 27-14 at 1; given the procedural posture of the case, such references are assumed to be erroneous.

Department Licensing Bureau beyond the hours of 9 a.m. to 4:30 p.m.[2] to render obtaining a pistol permit more convenient. For the reasons that follow, none of the plaintiffs can satisfy the demanding requisites for preliminary relief, and the motion must be DENIED.

*Procedural History*

This action was commenced through the filing of a "Complaint for Declaratory and Injunctive Relief" on August 15, 2022. DE 1. Summonses were issued on August 23, 2022. DE 5. On October 28, 2022, plaintiffs filed an amended complaint, adding the state defendant[3] as well as asserting constitutional challenges to the state statutory scheme. DE 8. Defendants were served in late November 2022. DE 16-23. On December 9, 2022, defendant Steven Nigrelli, Acting Superintendent of the New York State Police (the "Superintendent"), initiated a motion to dismiss by filing a pre-motion letter arguing that plaintiffs lack standing, no injury was traceable to the Superintendent and that the claims were barred by the Eleventh Amendment. DE 25. On December 11, 2022 – about four months after the case was commenced – plaintiffs filed the instant motion for a preliminary injunction. DE 27.

*Relevant Facts*

The pertinent facts relating to each plaintiff include the following:

*Plaintiffs Giambalvo, Mougios, Mashkow & McLaughlin*

Each of these four plaintiffs, between February 2020 and July 2022, completed and filed an "Applicant Questionnaire" with the Suffolk County Police Department ("SCPD"), paying a $10 fee. *See* DE 27-8 through 27-11. This questionnaire initiated the licensing procedure to obtain a

---

[2] On this motion, the County submits evidence demonstrating that the Pistol Licensing Bureau opens at 8:00 a.m. DE 35-6 at 1-2.

[3] On November 7, 2022, plaintiffs moved for leave to amend the caption of the First Amended Complaint, DE 8, because, due to a ministerial error, Acting Superintendent of the New York State Police Steven Nigrelli was not identified in the caption, DE 11. The motion was granted, and on November 17, 2022, the First Amended Complaint was filed with the corrected caption. DE 13.

New York State handgun carry permit. *Id.* Each was advised that the next step in this process involves fingerprinting and an interview. *Id.* Representatives of the SCPD advised each of these four plaintiffs – both orally and in writing – that the wait for an appointment to complete these steps was somewhere between one and three years. *Id.*

In sworn statements, each of these plaintiffs also averred that they have not and would not comply with various aspects of the licensing process. *See* Giambalvo Decl., DE 27-8 ¶ 14 (indicating refusal to provide social media account information and identity of cohabitants or submit to an interview), *id.* ¶ 15 (refusal to submit affidavits from character references); Mougios Decl., DE 27-9 ¶ 12 (refusal to attend firearms training), *id.* ¶ 15 (refusal to provide character references), *id.* ¶ 16 (refusal to provide social media accounts, personal relationships and family information or submit to an interview); Mashkow Decl., 27-10 ¶ 7 (will not comply with disclosure of personal information, training or interview requirements); McLaughlin Decl., DE 27-11 ¶ 7 ("objects" to all requirements and will not comply with firearms training requirements).

*Plaintiff McGregor*

In November 2020, Michael McGregor, a practicing physician, completed an "Applicant Questionnaire" and paid the $10 fee to seek a handgun permit under the previous statutory scheme. DE 27-12 ¶ 5. He contacted the Licensing Bureau in October 2021 for an update and was advised that there was a substantial backlog. *Id.* ¶ 6. Unsatisfied with the response, in December 2021, McGregor's attorney filed a "mandamus proceeding" in state court because of the perceived failure of authorities to comply with the statutory six-month deadline for issuing a permit or denial. *Id.* ¶ 8. McGregor reports that the County moved to dismiss, arguing that the 6-month clock does not commence until the applicant is interviewed by the SCPD. *Id.* ¶ 9.

3

In January 2022, McGregor was contacted by an investigator to schedule an interview. *Id.* ¶ 10. McGregor applied for, and received, a "concealed carry handgun license restricted to sportsman" in March 2022, permitting him only to carry in furtherance of target shooting and competitive activities. *Id.* ¶ 18. In August 2022, McGregor applied for an amendment to remove the "sportsman" restrictions of his license. *Id.* ¶ 20. He has not yet received the amendment.

Part of the requirements for the amendment to the license is an 18-hour firearms training class. Dr. McGregor avers that he will not take the training required by state law. *Id.* ¶ 24. He also refuses to provide state authorities with his social media accounts or identify his marital partner or other cohabitants. *Id.* ¶ 25. He also avers that he intends to carry a handgun "outside of my sportsman restriction on a regular basis – with or without being issued an amended license." *Id.* ¶ 26.

*Plaintiffs Melloni and Renaissance Firearm Instruction, Inc. (RFI)*

Melloni, the President of RFI, is an NRA-certified firearms instructor who offers training through the company. DE 27-13 ¶ 3. Melloni created an 18-hour curriculum that complies with the New York State Concealed Carry Improvement Act (CCIA) and includes two hours of live-fire training. *Id.* ¶ 4. Melloni avers that in October 2022, he had to cancel an agreement with four individuals who had registered for the class because they did not currently hold a pistol permit. *Id.* ¶ 10. Melloni reports that the basis for this cancellation was a statement made by defendant Michael Komorowski advising that the SCPD would arrest individuals taking live-fire training if they did not hold a permit. *Id.* ¶ 11. According to Melloni, Komorowski stated that the SCPD would "not honor[]" an exemption contained in NY Penal Law §265.20(3-a) which allows for live-fire training before a permit is issued, as such training is part of the permitting process. *Id.* ¶ 12.

Melloni avers that he and RFI have suffered "economic loss" because of these circumstances. *Id.* ¶ 22.

Based on these facts, plaintiffs seek a preliminary injunction that seeks two categories of relief. The first category, broadly aimed at procedural and administrative mechanisms surrounding applications for handgun permits (together, the "Procedural Provisions"), seeks to direct defendants to:

> (i) provide the New York State PPB-3 application on the Suffolk County Police Department website and local police precincts;
> (ii) accept the PPB-3 for filing from all applicants upon presentment;
> (iii) fingerprint applicants upon presentment of the completed PPB-3 or, in the alternative, publish the Suffolk County Police Department ORI number (Originating Agency Identifier) on its website and in local precincts for applicants to submit their fingerprints directly to the New York State Division of Criminal Justice Services (DCJS) and accept the resulting DCJS Report upon presentment of the PPB-3;
> (iv) photograph applicants upon presentment of the completed PPB-3 or, alternative, accept 2 statutorily required photographs from applicants upon presentment of the PPB-3;
> (v) provide hours of public accessibility outside of the Licensing Bureau's currently restricted hours of Monday-Friday from 9:00 – 4:30 p.m.; and
> (vi) within 30 days of the presentment of the completed PPB-3 application, issue a handgun license to all applicants eligible to possess firearms under state and federal law.

DE 27 at 2. Relatedly, plaintiffs seek an order barring Suffolk County from implementing the following procedures:

> (iii) a licensing process that exceeds 30 days between presentment of the completed New York State Pistol/Revolver License Application (PPB-3) and issuance of a license (or denial thereof);
>
> (iv) a policy that requires applicants to be personally interviewed;

*Id.* at 2-3.

The second category of relief sought by defendants (collectively, the "Enforcement Provisions") seeks to enjoin Suffolk County from "implementing and enforcing" certain aspects of the CCIA, including the following:

> Suffolk County shall be enjoined from implementing and enforcing
>
> (i) Penal Law sections 400.00(1)(b), 400.00(1)(o), 400.00(19), that portion of section 400.00(4-a) allowing statutory licensing officers 6 months to either issue a license or deny an application made thereunder;
>
> (ii) Penal Law section 400.00(15) against handgun licensees who carry a handgun registered thereon outside of their license restriction;[and]
>
> (v) a policy that subjects unlicensed individuals who participate in live-fire training with a duly authorized instructor, and their instructors, to criminal penalties including arrest and incarceration . . .

*Id.* This opinion follows.

***Discussion***

*Standard for the Award of a Preliminary Injunction*

It is axiomatic that a preliminary injunction represents an extraordinary exercise of a court's authority and thus requires an exacting showing. The Second Circuit recently reiterated the standard of review for a motion for preliminary relief in the face of allegations that government regulation impinged on constitutional rights:

> Issuance of a preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90, 128 S. Ct. 2207, 171 L.Ed.2d 1 (2008) (quoting 11A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2948, at 129 (2d ed. 1995)). Preliminary injunctive relief "should not be routinely granted." *Hanson Tr. PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985) (quoting *Medical Soc. of State of N.Y. v. Toia*, 560 F.2d 535, 537 (2d Cir. 1977)). When deciding whether to issue a preliminary injunction, courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 172 L.Ed.2d 249 (2008).
>
> To obtain a preliminary injunction that "will affect government action taken in the public interest pursuant to a statute or regulatory scheme, the moving party must

demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020) (internal quotation marks omitted). The movant must also show that the balance of equities supports the issuance of an injunction. *See Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020).

*We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 279-80 (2d Cir. 2021) (denying preliminary relief to plaintiffs claiming religious challenge to COVID-19 vaccine mandate). That decision further noted that "we have consistently applied the likelihood-of-success standard to cases challenging government actions taken in the public interest pursuant to a statutory or regulatory scheme, including in cases involving emergency regulations and orders." *Id.* at 279 n.13 (citing *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020); *Alleyne v. New York State Educ. Dep't*, 516 F.3d 96, 99–101 (2d Cir. 2008)). Finally, plaintiffs face a "'heightened standard where [ ] an injunction is mandatory' — in other words, it seeks a change to the status quo, as opposed to a prohibitory preliminary injunction that merely maintains the status quo." *Yafai v. Cuccinelli*, No. 20 Civ. 2932 (AT), 2020 WL 2836975, at *3 (S.D.N.Y. June 1, 2020) (quoting *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)). As plaintiffs seek largely mandatory injunctive relief, this heightened standard plainly applies to such requests. DE 13 at 4-6.

*The Failure of Plaintiffs Giambalvo, Mougios, Mashkow, McLaughlin and McGregor to Establish Likelihood of Success as to the Procedural Provisions*

While the parties have taken a "kitchen sink" approach to this litigation, urging the Court to consider, among other things, the propriety of centuries-old regulatory measures as analogues for New York's CCIA, the instant application may be resolved on far more narrow grounds. Plaintiffs Giambalvo, Mougios, Mashkow, McLaughlin and McGregor each have unequivocally expressed their intent, in sworn declarations, to refuse to comply with various requisites of New

York's handgun permit process, including their unambiguous refusal to participate in mandated (1) firearms training, (2) disclosure of the identity of cohabitants and family members and (3) disclosure of their social media accounts. DE 27-8 through 27-12. Indeed, even in their complaint, plaintiffs state that they will not submit to the requirements of the State's permit scheme. *See, e.g.*, DE 13 ¶¶ 174, 185, 196. McGregor takes this one step further, stating his intention to carry his handgun outside the restrictions of his current permit. *Id.* ¶ 230.

While the precise parameters of a state's ability to regulate handgun ownership remains the subject of developing law, some things are beyond dispute. One is that rights to possess and carry handguns protected by the Second and Fourteenth Amendment are expressly limited to "ordinary, law-abiding, adult citizens." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2119 (2022); *id.* at 2150 ("law-abiding citizens with ordinary self-defense needs"); *id.* at 2156 ("law-abiding, responsible citizens"). The right to bear arms in public is "subject to certain reasonable, well-defined restrictions." *Id.* at 2156 (citing *D.C. v. Heller*, 554 U.S. 570, 581 (2008)). In a non-exclusive list, the Supreme Court noted that these permissible restrictions "limited the intent for which one could carry arms, the manner by which one carried arms, or the exceptional circumstances under which one could not carry arms, such as before justices of the peace and other government officials." *Id.* at 2156; *cf. id.* at 2138 ("Throughout modern Anglo-American history, the right to keep and bear arms in public has traditionally been subject to well-defined restrictions governing the intent for which one could carry arms, the manner of carry, or the exceptional circumstances under which one could not carry arms.").

As a result, certain state handgun licensing regimes are constitutionally permissible. As *Bruen* expressly notes, that case does not preclude the maintenance of "shall-issue" permitting regimes. 142 S. Ct. at 2138, n.9. ("To be clear, nothing in our analysis should be interpreted to

suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes"). These state law handgun permit provisions "often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Id.* As Justice Kavanaugh stated in a concurrence joined by the Chief Justice, state licensing authorities "may require a license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." *Id.* at 2162 ("the Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense."). Indeed, in their complaint, plaintiffs acknowledge that the State may maintain objective permitting standards.[4] DE 13 ¶ 59.

In order to establish standing to challenge the State's licensing system, plaintiffs must demonstrate that they have complied with the requisites of that system. As the Second Circuit has held, a plaintiff who "failed to apply for a gun license in New York [ ] lacks standing to challenge the licensing laws of the state." *United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012). In a subsequent decision, the Circuit explained:

> "'As a general matter, to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy.'" *Decastro,* 682 F.3d at 164 (quoting *Jackson-Bey*, 115 F.3d at 1096; and citing *Allen v. Wright*, 468 U.S. 737, 746, 104 S. Ct. 3315, 82 L.Ed.2d 556 (1984), and *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166-68, 92 S. Ct. 1965, 32 L.Ed.2d 627 (1972)). Accordingly, we have held that, absent a showing of futility, a person who has "failed to apply for a gun license in New York . . . lacks standing to challenge the licensing laws of the state," *Decastro*, 682 F.3d at 164.

---

[4] While plaintiffs attempt to characterize these requirements as perfunctory, this may not be the case. On this motion, the County has submitted documents suggesting that at least two plaintiffs have criminal records. *See* Zwilling Decl., DE 35 ¶¶ 2, 3; DE 35-1 at 1; DE 35-2 at 9, 10 (Giambalvo subject to arrest and summons seven times, including two arrests for assault, an arrest for menacing and criminal contempt; Mougios subject to arrest or summons four times, including an arrest for drug possession and one following a drunken dispute with a police officer). Moreover, Giambalvo has been treated for painkiller addiction, and has had a driver's license suspended, while Mougios and McLaughlin admit to illicit drug use. DE 35-1 at 3, 5; DE 35-2 at 11; DE 35-4 at 4.

9

*Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 121 (2d Cir. 2020), *abrogated on other grounds by Bruen*, 142 S. Ct. 2111 (2022). Thus, while such failure may be excused if application would be "futile," *Decastro*, 682 F.3d at 164, plaintiffs have not even attempted to make such a showing. Rather, plaintiffs have undermined any showing of a likelihood of success on the merits as, due to their refusal to comply with the requisites of the licensing process, they cannot qualify for a permit, and the State can, consistent with the mandates of *Bruen* and *Heller*, deny their applications. "Mere objection or antipathy to the law does not constitute a showing of futility." *Libertarian Party*, 970 F.3d at 116. Hence, the issues raised by these plaintiffs prove inconsequential, as their failures – including their refusal to engage in mandatory firearms training – ensures that they cannot legally qualify for a carry permit under constitutionally permissible requisites.

*Plaintiffs Melloni and RFI Cannot Articulate Irreparable Harm as to the Procedural Provisions*

Neither Melloni[5] nor RFI claim violation of their Second Amendment rights – their economic claims, if viable, are derivative of those of others. Principally, Melloni and RFI attempt to join in the application for preliminary relief based on the economic loss of several students who could not take live-fire training. However, since these sums, as set forth, amount to a few thousand dollars, such losses are, by their very nature compensable by money damages, such that these plaintiffs cannot qualify for preliminary relief. *See We The Patriots USA*, 17 F.4th at 294 ("It is well settled [ ] that . . . economic harm resulting from employment actions is typically compensable with money damages"). Thus, even assuming they have standing to proceed (a proposition that

---

[5] Melloni also theorizes that, if he were to provide live-fire training to unlicensed individuals (something he has refused to do), he could be subject to arrest for aiding and abetting a criminal violation. This claim is far too attenuated and speculative.

10

seems dubious), neither Melloni nor RFI can establish irreparable injury. Thus, their application must fail.

*Injunctions Against Arrest and Prosecution under State Law*

Plaintiffs lack standing as to the Enforcement Provision of the proposed injunction, sought only against the County. Notably, this is not the first time that plaintiffs' counsel has sought such relief in this Court. In an earlier action, this Court ruled noted:

> The relief sought here also treads on separation of powers concerns, in that the judiciary generally cannot issue injunctions to "interfere with the free exercise of the discretionary powers of [prosecutors] in their control over criminal prosecutions." *In re Seizure of All Funds in Accts. in Names Registry Pub. Inc.*, 68 F.3d 577, 582 (2d Cir. 1995) (reversing injunction preventing government inquiry into suspected violations) (quoting *United States v. Burzynski Cancer Research Inst.*, 819 F.2d 1301 (5th Cir. 1987)). Worse yet, this case seeks a determination from this Court interpreting state criminal laws without the benefit of, and in anticipation of, potential interpretations by state courts in contemplated criminal proceedings. Plaintiffs would have this Court usurp the functions of state judges and juries [ ]. It is difficult to imagine an act that could further offend the principles of comity.

*Does 1-10 v. Suffolk Cnty., New York*, No CV 21-3409 (GRB), 2021 WL 2634734, at *3 (E.D.N.Y. June 26, 2021), *aff'd*, 2022 WL 2678876 (2d Cir. 2022). The Supreme Court has observed that:

> [T]hose seeking to challenge the constitutionality of state laws are not always able to pick and choose the timing and preferred forum for their arguments. This Court has never recognized an unqualified right to pre-enforcement review of constitutional claims in federal court. In fact, general federal question jurisdiction did not even exist for much of this Nation's history. *See Mims v. Arrow Financial Services*, LLC, 565 U.S. 368, 376, 132 S. Ct. 740, 181 L.Ed.2d 881 (2012). And pre-enforcement review under the statutory regime the petitioners invoke, 42 U.S.C. § 1983, was not prominent until the mid-20th century. See *Monroe v. Pape*, 365 U.S. 167, 180, 81 S. Ct. 473, 5 L.Ed.2d 492 (1961); *see also* R. Fallon, J. Manning, D. Meltzer, & D. Shapiro, Hart and Wechsler's *The Federal Courts and the Federal System* 994 (7th ed. 2015). To this day, many federal constitutional rights are as a practical matter asserted typically as defenses to state-law claims, not in federal pre-enforcement cases like this one. *See, e.g.*, *Snyder v. Phelps*, 562 U.S. 443, 131 S. Ct. 1207, 179 L.Ed.2d 172 (2011) (First Amendment used as a defense to a state tort suit).

[ ] As our cases explain, the "chilling effect" associated with a potentially unconstitutional law being "'on the books'" is insufficient to "justify federal intervention" in a pre-enforcement suit. *Younger v. Harris*, 401 U. S. 37, 42, 50–51, 91 S. Ct. 746, 27 L.Ed.2d 669 (1971). Instead, this Court has always required proof of a more concrete injury and compliance with traditional rules of equitable practice. *See Muskrat*, 219 U.S. at 361, 31 S. Ct. 250; *Ex parte Young*, 209 U.S. at 159–160, 28 S.Ct. 441. The Court has consistently applied these requirements whether the challenged law in question is said to chill the free exercise of religion, the freedom of speech, the right to bear arms, or any other right. The petitioners are not entitled to a special exemption.

[P]re-enforcement challenges like the one the Court approves today may be available in federal court to test the constitutionality of those laws. Again, too, further pre-enforcement challenges may be permissible in state court and federal law may be asserted as a defense in any enforcement action. [ ] But one thing this Court may never do is disregard the traditional limits on the jurisdiction of federal courts just to see a favored result win the day. At the end of that road is a world in which "[t]he division of power" among the branches of Government "could exist no longer, and the other departments would be swallowed up by the judiciary." 4 *Papers of John Marshall* 95 (C. Cullen ed. 1984).

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 537–38 (2021).

In *Does 1-10*, the Second Circuit examined the application of the concrete injury requirement in highly analogous circumstances, holding:

Determining whether a plaintiff has alleged a "credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue." *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015). To establish standing for a preenforcement challenge, an "allegation of future injury will be sufficient only if 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Fears of prosecution may not, for instance, be "imaginary or speculative." *Vance*, 802 F.3d at 384 (quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979)). Further, the imminence requirement is not "evident where plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible.'" *Id.* (quoting *Babbitt*, 442 U.S. at 298–99).

The circumstances at issue here do not suggest that Does suffered, or are at a substantial risk of suffering, an injury in fact. Does allege that, in a letter dated May 20, 2021, the Suffolk County Police Department notified them, among other things, that the Delta Level Defense CT4-2A is "not in compliance with the New York State Penal Law" and that Does "may be subject to arrest and criminal

charges" if they "fail to present the weapon to the Suffolk County Police Department within . . . fifteen days" from receipt of the letter. Complaint ¶ 28 (emphasis omitted). Does did not present their firearms during the fifteen-day grace period, and continue in possession of their firearms today—over one year after receipt of the letters. Importantly, Does do not allege (and have not notified this Court or the district court) that any individual Doe has been arrested or had their firearm forcibly confiscated for failing to comply with the Suffolk County Police Department's request in the year since it was made, or even that any purchaser of the Delta Level Defense CT4-2A has been arrested or had their firearm forcibly confiscated by Suffolk County. Indeed, at oral argument, Does acknowledged that Suffolk County has not so much as contacted any individual Doe about the firearms since sending the May 20, 2021 letter. Based on Does' factual pleadings and the subsequent developments (or lack thereof) in this case, Does have not established that their prosecution is likely, *see Vance*, 802 F.3d at 384, or otherwise that the threatened injury is certainly impending or that there is a substantial risk that they will be harmed, *see Dorce*, 2 F.4th at 95. As such, Does have not alleged that they are at an imminent risk of suffering an injury in fact. They thus lack standing to obtain their requested relief.

*Does 1-10*, 2022 WL 2678876, at *2–3.

Much the same can be said of the allegations concerning potential arrest in the instant case. While plaintiffs attempt to cast a wide net, seeking broad injunctive relief against enforcement of a variety of provisions, there is nothing suggesting that any plaintiff has been arrested or prosecuted or that there is otherwise a substantial risk of such action. Instead, the lynchpin of plaintiffs' claims are certain stray comments allegedly made by individual law enforcement officers, which, if made, may well have been taken out of context. By way of example, plaintiff Melloni avers, with respect to the exception provided under state law for unlicensed individuals to handle firearms when supervised during training under certain circumstances, that defendant Komorowski stated that the SCPD is "not honoring" that exception. DE 27-13 at 3, ¶ 12.[6] This comment poses a far less concrete threat than that faced by plaintiffs in *Does 1-10*, insofar as those plaintiffs received written correspondence from the police that they "may be subject to arrest and criminal charges," if they

---

[6] To the extent that Komorowski made an oral threat that an arrest could be made in contravention of state law, such an action would be highly inadvisable, and would most certainly result in serious consequences.

13

failed to present their weapons for inspection, and plaintiffs had failed to do so. 2022 WL 2678876, at *2–3. Thus, the plaintiffs here lack standing, as they have failed to articulate a sufficiently tangible threat of arrest.

Furthermore, plaintiffs seek injunctive relief against the County under the umbrella of "enforcement," a gloss that obscures the critical difference between arrest and prosecution. However, plaintiffs cannot seek any relief regarding potential prosecution based upon a failure to join the proper parties. As the Second Circuit has held:

> When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county. *McGinley v. Hynes*, 51 N.Y.2d 116, 123, 432 N.Y.S.2d 689, 412 N.E.2d 376 (1980), *cert. denied*, 450 U.S. 918, 101 S. Ct. 1364, 67 L.Ed.2d 344 (1981); *Davis Constr. Corp. v. County of Suffolk, supra*, 112 Misc.2d at 664, 447 N.Y.S.2d 355; *Brenner v. County of Rockland, supra*, 92 Misc.2d at 835, 401 N.Y.S.2d 434; *Zimmerman v. City of New York*, 52 Misc.2d 797, 799, 276 N.Y.S.2d 711 (1966). Every indictment "constitutes an accusation on behalf of the state as plaintiff and must be entitled 'the people of the state of New York' against a designated person, known as the defendant." CPL § 1.20(1).
>
> It is well established in New York that the district attorney, and the district attorney alone, should decide when and in what manner to prosecute a suspected offender. *People v. Di Falco*, 44 N.Y.2d 482, 486–87, 406 N.Y.S.2d 279, 377 N.E.2d 732 (1978); *Johnson v. Town of Colonie*, 102 A.D.2d 925, 926, 477 N.Y.S.2d 513 (1984) (mem.); *Zimmerman v. City of New York, supra*, 52 Misc.2d at 801, 276 N.Y.S.2d 711; *Hassan v. Magistrates' Court*, 20 Misc.2d 509, 511, 191 N.Y.S.2d 238 (1959), *appeal dismissed*, 10 A.D.2d 908, 202 N.Y.S.2d 1002, motion for leave to appeal dismissed, 8 N.Y.2d 750, 201 N.Y.S.2d 765, 168 N.E.2d 102, cert. denied, 364 U.S. 844, 81 S. Ct. 86, 5 L.Ed.2d 68 (1960). "The responsibilities attendant the position of [district attorney] necessitate 'the exercise of completely impartial judgment and discretion.'" *People ex rel. Doe v. Beaudoin*, 102 A.D.2d 359, 365, 478 N.Y.S.2d 84 (1984) (quoting *People v. Di Falco, supra*, 44 N.Y.2d at 487, 406 N.Y.S.2d 279, 377 N.E.2d 732). The State of New York reserves the right to fill vacancies and establish minimum salaries so as to ensure that district attorneys will be freely independent to act in this impartial manner. No county policy can require them to act otherwise.
>
> As pointed out above, an elected district attorney's powers and duties in connection with the prosecution of a criminal proceeding are the same as those of an Assistant Attorney General appointed to handle such a prosecution. A county has no right to establish a policy concerning how either official should prosecute violations of

> State penal laws. *Zimmerman v. City of New York, supra*, 52 Misc.2d at 801, 276 N.Y.S.2d 711; *Pitler*, *supra*, 41 Fordham L.9Rev. at 527. Indeed, it would be a violation of a district attorney's ethical obligations as counsel for the State in a criminal proceeding to permit himself to be influenced in the performance of his duties by so-called policies of a county.

*Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988). Thus, even if plaintiffs had stated a credible threat of prosecution, which they have not, such relief cannot be sought against the County.

*Conclusion*

Based on the foregoing, plaintiffs have failed to meet the exacting standard for the issuance of a preliminary injunction, such that their motion must be denied. As noted, defendants have filed a pre-motion application seeking to move for dismissal. The parties are to meet and confer and provide the Court with a full briefing schedule in 60 days. Defendants' time to file answers or otherwise move are adjourned pending resolution of said motion.

**SO ORDERED.**

Dated: February 14, 2023
Central Islip, New York

/s/ Gary R. Brown_____
GARY R. BROWN
United States District Judge