UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
ZACHARY GIAMBALVO, JOHN MOUGIOS,
SHANE MASHKOW, KEVIN MCLAUGHLIN,
MICHAEL MCGREGOR, FRANK MELLONI,
and RENAISSANCE FIREARMS INSTRUCTION,
INC., and all similarly situated individuals,

                              Plaintiffs,                    22 Civ. 04778 (GRB)(ST)

          -against-

SUFFOLK COUNTY, New York,
Police Commissioner RODNEY HARRISON,
in his Official Capacity, MICHAEL
KOMOROWSKI, Individually, ERIC BOWEN,
Individually, WILLIAM SCRIMA, Individually,
WILLIAM WALSH, Individually, THOMAS
CARPENTER, Individually, JOHN DOES
1-5, Individually and JANE DOES 1-5,
Individually, Acting Superintendent of the
New York State Police STEVEN NIGRELLI,
in his official capacity,
                              Defendants.
---------------------------------------------------------------x


# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN INJUNCTION PENDING APPEAL PURSUANT TO FRAP 8(a)(1)


**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiffs*
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**
**info@bellantoni-law.com**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................... i

PRELIMINARY STATEMENT .............................................................................. 1

LEGAL STANDARD ............................................................................................. 1

MATERIAL FACTS .............................................................................................. 2

*No Plaintiff Can Possess, Purchase, Carry, or Receive a Handgun Without a NYS License* ....... 2

*Every Plaintiff Subjected Themselves to the New York State Handgun Licensing Scheme* ........... 3

*SCPD 2-3 Year Process to Obtain a Handgun License –*
*Whether For Home or Concealed Carry* ........................................................... 3

*SCPD 'Arrest Policy' for State-Mandated 'Live Fire' Training* .................................... 4

ARGUMENT ......................................................................................................... 6

I. PLAINTIFFS HAVE STANDING TO CHALLENGE SCPD's LENGTHY DELAYS ........... 6

    A. Plaintiffs Subjected Themselves to the Licensing Scheme ............................... 6

    B. Non-Compliance With the CCIA Does Not Eliminate Standing
       to Challenge SCPD's "Lengthy Delays" .......................................................... 7

II. GIAMBALVO HAS STANDING TO CHALLENGE THE SCPD 'ARREST POLICY' ....... 8

III. MELLONI AND RFI HAVE STANDING TO CHALLENGE THE 'ARREST POLICY'.. 10

IV. PLAINTIFFS' SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS .......... 11

    A. The 'Plain Text' Covers Plaintiffs' Conduct and Is 'Presumptively Protected' ............. 12

    B. Defendants Alone Have the Burden of Proof .................................................. 12

    C. SCPD Delays Violate the Second and Fourteenth Amendments ..................... 13

    D. SCPD's 'Arrest Policy' Violates the Second and Fourteenth Amendments ............ 13

V. PLAINTIFFS WILL CONTINUE TO SUFFER IRREPARABLE HARM............................ 13

    A. SCPD Licensing Delays................................................................................... 14

    B. SCPD 'Arrest Policy' ...................................................................................... 16

VI. AN INJUNCTION IS IN THE PUBLIC INTEREST ............................................. 17

VII. BALANCING THE EQUITIES IS IMPROPER ................................................... 18

CONCLUSION............................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agudath Israel of Am. v. Cuomo,*
    979 F.3d 177 (2d Cir. 2020) ......................................................................... 2

*Andrews v. State,*
    50 Tenn. 165 (1871) ................................................................................... 11

*Arizona Dream Act Coalition,*
    757 F.3d 1053 (9th Cir. 2014) ................................................................... 17

*Babbitt v. United Farm Workers Nat'l Union,*
    442 U.S. 289 (1979) ................................................................................... 16

*Brenntag Int'l Chem., Inc. v. Bank of India,*
    175 F.3d 245 (2d Cir. 1999) ...................................................................... 13

*Bronx Household of Faith v. Bd. of Educ.,*
    331 F.3d 342 (2d Cir. 2003) ...................................................................... 14

*Caetano v. Massachusetts,*
    577 U.S. 411 (2016) ................................................................................... 12

*Cayuga Nation v. Tanner,*
    824 F.3d 321 (2d Cir. 2016) ...................................................................... 16

*Connecticut Citizens Def. League, Inc. v. Lamont,*
    465 F. Supp. 3d 56 (D. Conn. 2020) .......................................................... 15

*Connecticut Dep't of Envtl. Prot. v. O.S.H.A.,*
    356 F.3d 226 (2d Cir. 2004) ...................................................................... 14

*Connecticut State Police Union v. Rovella,*
    494 F. Supp. 3d 210 (D. Conn. 2020) .......................................................... 2

*Craig v. Boren,*
    429 U.S. 190 (1976) ................................................................................... 11

*Crawford v. Washington,*
    541 U.S. 36, 124 S.Ct. 1354 (2004) .......................................................... 12

*D.C. v. Heller,*
    554 U.S. 570 (2008) .................................................................. 7, 12, 17, 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Dark Storm Indus. LLC v. Cuomo*,
    471 F. Supp. 3d 482 (N.D.N.Y. 2020) ................................................................ 10

*Davis v. Federal Election Comm'n*,
    554 U.S. 724 (2008) ............................................................................................ 2

*Doe v. U.S. Immigr. & Customs*,
    490 F. Supp. 3d 672 (S.D.N.Y. 2020) ................................................................ 9

*Does 1-10 v. Suffolk County*,
    2022 WL 2678876 (E.D.N.Y.) ............................................................................ 9

*Doninger v. Niehoff*,
    527 F.3d 41 (2d Cir. 2008) ................................................................................ 14

*Drummond v. Twp.*,
    361 F. Supp. 3d 466 (W.D. Pa.) ........................................................................ 10

*Duncan v. Bonta*,
    265 F.Supp.3d 1106 (2017) ............................................................................... 14

*Elrod v. Burns*,
    427 U.S. 347 (1976) .......................................................................................... 14

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) ....................................................................... 11, 14

*Forty-Second St. Co. v. Koch*,
    613 F. Supp. 1416 (S.D.N.Y. 1985) .................................................................. 10

*Grace v. District of Columbia*,
    187 F. Supp. 3d 124 (DDC 2016) ..................................................................... 14

*Hobby Lobby Stores, Inc. v. Sebelius*,
    723 F.3d 1114 (10th Cir. 2013) ........................................................................ 18

*J.S.R. by & through J.S.G. v. Sessions*,
    330 F. Supp. 3d 731 (D. Conn. 2018) ............................................................... 17

*Jolly v. Coughlin*,
    76 F.3d 468 (2d Cir. 1996) ............................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Kelly v. Honeywell Int'l, Inc.*,
   933 F.3d 173 (2d Cir. 2019) ............................................................... 2

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................... 13, 14

*McDonald v. Chicago*,
   561 U.S. 742 (2010) ............................................................... 12, 14, 18

*Ms. L. v. U.S Immigr. & Customs Enf't ("ICE*,
   310 F. Supp. 3d 1133 (S.D. Cal. 2018) ............................................................... 17

*Nevada Comm'n on Ethics v. Carrigan*,
   564 U.S. 117 (2011) ............................................................... 12

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
   142 S. Ct. 2111 (2022) ............................................................... 11, 12, 13

*O'Malley v. City of Syracuse*,
   813 F. Supp. 133 (N.D.N.Y. 1993) ............................................................... 15

*Parker v. D.C.*,
   478 F.3d 370 (D.C. Cir. 2007) ............................................................... 15

*Paulsen v. County of Nassau*,
   925 F.2d 65 (2d Cir.1991) ............................................................... 15

*Pierce v. Soc'y of Sisters*,
   268 U.S. 510 (1925) ............................................................... 11

*Statharos v. New York City Taxi & Limousine Comm'n*,
   198 F.3d 317 (2d Cir. 1999) ............................................................... 14

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ............................................................... 9, 13

*Teixeira v. Cnty. of Alameda*,
   873 F.3d 670 (9th Cir. 2017) ............................................................... 10

*Trump v. Deutsche Bank AG*,
   943 F.3d 627 (2d Cir. 2019) ............................................................... 2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*U.S. S.E.C. v. Citigroup Global Mkts. Inc.*,
  673 F. 3d 158 (2012) ............................................................................................................. 17

*United States v. Decastro*,
  682 F.3d 160 (2d Cir. 2012) ................................................................................................ 15

*United States v. Verdugo–Urquidez*,
  494 U.S. 259 (1990) ............................................................................................................. 17

*Valenzuela Arias v. Decker*,
  2020 WL 1847986 ................................................................................................................ 14

*Virginia v. Moore*,
  553 U.S. 164 (2008) ............................................................................................................. 12

*Wisdom Import Sales Co. v. Labatt Brewing Co.*,
  339 F.3d 101 (2d Cir. 2003) ................................................................................................ 13

**Rules**

FRAP 8(a)(1) ............................................................................................................................. 1

## PRELIMINARY STATEMENT

Plaintiffs Zachary Giambalvo, John Mougios, Shane Mashkow, Kevin McLaughlin, Michael McGregor, Frank Melloni, and Renaissance Firearms Instruction, Inc., move this Court as required by Federal Rule of Appellate Procedure 8(a)(1) for an Order granting the requested injunctive relief during the pendency of the interlocutory appeal of this Court's Memorandum and Order dated February 14, 2023 denying Plaintiff's motion for a Preliminary Injunction [ECF No. 40] (the "Decision") in the Second Circuit Court of Appeals.

By this motion, Plaintiffs seek to enjoin Suffolk County Police Commissioner Rodney Harrison, as statutory licensing officer, and all successors, his officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with him who receive actual notice thereof (i) from continuing to implement a handgun licensing process that is unconstitutionally lengthy or, alternatively, that exceeds 30 days; and (ii) from implementing a Suffolk County policy whereby unlicensed individuals who engage in the 18-hour training required by Penal Law § 400.00(1)(o), (19) are subject to arrest – a policy in ***direct conflict*** with Penal Law § 265.20(3-a), during the pendency of the interlocutory appeal..

## LEGAL STANDARD

Federal Rule of Appellate Practice 8(a)(1) requires that a party seeking an injunction pending appeal first move in the district court for an order granting an injunction while an appeal is pending.

On February 16, 2023, Plaintiffs filed a Notice of Appeal of this Court's Memorandum and Order dated February 14, 2023, which denied Plaintiff's motion for a Preliminary Injunction [ECF No. 40]. Because Plaintiffs will be seeking an injunction from the Second Circuit pending the

appeal, this motion is required to satisfy FRAP (8)(a)(1), unless the application to this Court would be impracticable or futile. *Agudath Israel of Am. v. Cuomo*, 979 F.3d 177, 179 (2d Cir. 2020).

To obtain a preliminary injunction, a movant must show irreparable harm and meet either of two standards: (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in the movant's favor." *Connecticut State Police Union v. Rovella*, 494 F. Supp. 3d 210, 218 (D. Conn. 2020) quoting, *Trump v. Deutsche Bank AG*, 943 F.3d 627, 635 (2d Cir. 2019), rev'd on other grounds, —— U.S. ——, 140 S.Ct. 2019 (2020); *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 184 (2d Cir. 2019).

Only one plaintiff need have standing to seek each form of relief requested in the complaint. *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008).

## MATERIAL FACTS

### *Every Plaintiff is Firearms Eligible Under Federal and State Law*

Every Plaintiff is eligible to possess, purchase, receive, and transfer firearms[1] for self-defense under federal and state law. [See, accompanying Declarations of Zachary Giambalvo (dated October 28, 2022 February 10, 2022, and February 16, 2023), John Mougios (dated December 2022 and February 2023), Shane Mashkow, Kevin McLaughlin, Michael McGregor, and Frank Melloni].

### *No Plaintiff Can Possess, Purchase, Carry, or Receive a Handgun Without a NYS License*

The possession, purchase, carriage, and receipt of a handgun for self-defense in New York State is a crime. See, Penal Law § 265.00, *et seq.* A New York State pistol license may be obtained to lawfully possess, purchase, carry concealed, and/or receive a handgun for self-defense, which

---

[1] The term "firearms" as use herein encompasses handguns, rifles, and shotguns.

requires individuals to apply to the statutory licensing officer in the county in which they reside. See, Penal Law § 400.00, *et seq.*

As residents of Suffolk County, Plaintiffs are required to apply for and obtain a NYS handgun license from Suffolk County Police Commissioner Rodney Harrison by way of the Suffolk County Police Department ("SCPD") Licensing Bureau. [See, accompanying Declarations of Zachary Giambalvo, John Mougios, Shane Mashkow, Kevin McLaughlin, and Michael McGregor].

***Every Plaintiff Subjected Themselves to the New York State Handgun Licensing Scheme***

Plaintiffs Giambalvo, Mougios, Mashkow, and McLaughlin subjected themselves to the New York State handgun licensing scheme and "initiated the licensing procedure to obtain a New York State handgun [license]." See, this Court's Memorandum of Opinion dated February 14, 2023 at p. 2.

Plaintiffs filed the SCPD "Applicant Questionnaire" and paid the filing fee to the SCPD Licensing Bureau: Giambalvo (February 2020 and June 2022), Mougios (July 2021), Mashkow (2020 and February 2022), and McLaughlin (July 2022). [Giambalvo at ¶¶ 6-10; Mashkow at ¶¶ 9-11; McLaughlin at ¶ 4; Mougios at ¶ 8].

Michael McGregor subjected himself to the SCPD process by filing an amendment of his current handgun license to remove his carry restrictions. [McGregor Dec.].

***SCPD 2-3 Year Process to Obtain a Handgun License – Whether For Home or Concealed Carry***

The process for obtaining a handgun license from the SCPD Licensing Bureau - whether to purchase, to possession in one's home for self-defense, or to carry concealed for self-defense - takes **between 2-3 years**.

On July 19, 2022, the Licensing Bureau informed Mr. Giambalvo, "there is an approximately a 2 year wait before you will hear from an investigator for the in person interview." [Giambalvo October 28, 2022 Dec. at Ex. 1].

In August 2022, Mr. Giambalvo was informed by "Suzanne" at the SCPD Licensing Bureau, "it's going to take about a year and a half to 2 years to get called for the interview" – a conversation digitally recorded by Mr. Giambalvo. [Giambalvo October 28, 2022 Dec. at Ex. 2].

Shane Mashkow emailed the SCPD Licensing Bureau for a status update on his pistol license application and was informed by email dated July 14, 2022, "We are currently processing November/December of 2020, there is an extremely long wait for the interview." [Mashkow Dec. at Ex. 1].

Michael McGregor – who holds a concealed carry handgun license restricted to "Sportsman" activities - filed an amendment application and paid the fee on August 15, 2022 to simply amend his existing handgun license to remove the restrictions and allow for full carry [McGregor Dec. at ¶¶ 19-20] – or issue a determination denying his amendment application.

SCPD's lengthy licensing delays are depriving Plaintiffs of their right to engage in conduct presumptively protected by the Second and Fourteenth Amendments; absent an injunction, Plaintiffs will continue to suffer irreparable harm.

### SCPD "Arrest Policy" for State-Mandated 'Live Fire' Training

New York State law requires individuals who seek to carry a handgun concealed for self-defense to take and pass an 18-hour training course, which includes a 2-hour "live fire" component.[2] [Melloni Dec.].

---

[2] After the enactment of the New York State Concealed Carry Improvement Act (CCIA), Mr. Melloni created an 18-hour CCIA-compliant curriculum to train and certify individuals seeking to apply for, or renew, a New York State concealed carry handgun license as required by Penal Law § 400.00(19), including the required 2- hour live-fire component. [Melloni Dec. at ¶¶4-6].

Mr. Melloni, a federal firearms licensee, trains individuals in the 18-hour course, including the live-fire component, to certify individuals for the issuance of a concealed carry handgun license ("CCW") through his company Renaissance Firearms Instruction, Inc. ("RFI"). Mr. Melloni's 18-hour course is offered to students and potential students, including those individuals who do not yet have a handgun license but seek to complete the CCIA training to present proof thereof with their application for a concealed carry license. [*Id.*].

The CCIA created an exception to criminal penalties for unlicensed individuals who possess/handle a handgun while completing the live-fire portion of the 18-hour CCIA training. Penal Law § 265.20(3-a).[3] Mr. Melloni registered several unlicensed individuals who sought to take the 18-hour course through RFI, including the live-fire portion of the course.

Mr. Melloni and RFI, however, were banned from teaching the 18-hour course to unlicensed students and potential students, who were likewise prevented from taking the training course, because of SCPD's "Arrest Policy."

Under SCPD's Arrest Policy, as explained directly to Mr. Melloni by the head of the Licensing Bureau, Lt. Michael Komorowski, SCPD "will arrest anybody who handles a pistol or revolver without a New York State pistol permit" because SCPD is "not honoring" the § 265.20(3-a) exemption. [Melloni at ¶¶ 10-12].

Plaintiff Zachary Giambalvo risks imminent arrest and incarceration by SCPD under the "Arrest Policy" because he publicly declared that he will take the 18-hour course with Mr. Melloni and RFI in December 2022, which contains a live-fire component. [Giambalvo October 2022 Dec. at ¶¶ 18-20].

---

[3] Possessing a loaded handgun is a Class C Violent felony that carries mandatory minimum state prison sentence of 3 ½ years. Penal Law § 70.00.

## ARGUMENT

## I. PLAINTIFFS HAVE STANDING TO CHALLENGE SCPD's LENGTHY DELAYS

To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. The injury-in fact requirement helps to ensure that the plaintiff has a personal stake in the outcome of the controversy. Accordingly, an injury sufficient to satisfy Article III must be concrete and particularized, and actual or imminent, not conjectural or hypothetical.

### A. Plaintiffs Subjected Themselves to the Licensing Scheme

By filing the Applicant Questionnaire and paying the filing fee, each Plaintiff subjected himself to the licensing process, as this Court acknowledged. [Decision at pp. 2-3] ("This questionnaire *initiated the licensing procedure* to obtain a New York State handgun carry permit.") (emphasis added).

Whether or not Plaintiffs intend to comply with every provision of the CCIA, they are entitled to have their applications processed and decided promptly. SCPD has long delayed the licensing process, not only for Plaintiffs but for all applicants, as borne out by SCPD's admissions on July 14, 2022 that they were "currently processing [applications from] November/December of 2020…" [Mashkow Dec. as Ex. 1].

Not until this action was commenced was SCPD on notice that Plaintiffs were challenging their enforcement of the CCIA regulations. SCPD has been subjecting Plaintiffs and numerous licensing applicants to substantial licensing delays, barring their right to engage in protected conduct well before filing their Complaint in August 2022.

Irrespective of their challenges to certain CCIA provisions, Plaintiffs are entitled to a prompt determination of their applications – and have Article III standing to challenge SCPD's lengthy delays.

Leaving the issue of 'carrying' a handgun aside, because of SCPD delays, Plaintiffs are absolutely barred from purchasing and/or possessing handguns for self-defense in their homes – guaranteed rights. See, *D.C. v. Heller*, 554 U.S. 570, 592 (2008) ("Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation.").

A sufficient causal connection exists between Plaintiffs' injury (the bar to their right to possess, purchase, and/or carry a handgun for self-defense) and SCPD's lengthy licensing delays. Plaintiffs' harms would be redressed by the requested injunctive relief because every Plaintiff is eligible and qualified to possess firearms under state and federal law.

Plaintiffs' injury-in fact is "concrete and particularized, actual and imminent" because SCPD lengthy licensing delays are preventing Plaintiffs from exercising their rights as guaranteed by the Second Amendment, and as SCPD admits, will continue into the very distant future.

### B. Non-Compliance With the CCIA Does Not Eliminate Standing to Challenge SCPD's "Lengthy Delays"

Irrespective of whether Plaintiffs comply with the challenged CCIA regulations, they cannot even get to a *determination*. Plaintiffs are not required to comply with the challenged CCIA regulations to have standing to challenge delays in the process, which by the way only affects concealed carrying of, but not possessing and purchasing, a handgun for self-defense.

The plaintiffs in *Bruen* subjected themselves to the licensing process, refused to comply with the "proper cause" requirement, were denied a handgun license, and went on to challenge the "proper cause" requirement as unconstitutional – and won.

Plaintiffs also subjected themselves to the licensing process, refused to comply with the certain CCIA regulations and, if denied, will continue to challenge the CCIA requirements as unconstitutional.

Had Plaintiffs, for example, taken the very 18-hour training course they are challenging, how would they thereafter contest a regulation requiring that they take the 18-hour CCIA firearms training course? It is rightly imagined that a court would declare such a challenge entirely moot as the act has already been performed.

For one to assume that SCPD would deny Plaintiffs' applications because they refused to comply with the CCIA leads to the conclusion that Plaintiffs should not have even bothered to apply for a license – that applying would be futile. [Decision at p. 10] (opining that by refusing to comply with the challenged CCIA provisions, Plaintiffs "cannot qualify for a permit" "allowing SCPD to deny their applications").

But "likelihood of success" at the Licensing Bureau is not the same as "likelihood of success on the merits of Plaintiffs' Second and Fourteenth Amendment challenges, which is substantial as discussed below. [See, Decision at p. 10].

## II. GIAMBALVO HAS STANDING TO CHALLENGE THE SCPD 'ARREST POLICY'

Zachary Giambalvo has expressed is intention to comply with the CCIA 18-hour training requirement, including the 2-hour live-fire requirement, in December 2022 with Frank Melloni and RFI. As an unlicensed individual, Giambalvo faces a credible threat of arrest and incarceration by SCPD as borne out by the Declaration of Frank Melloni dated December 7, 2022, which was unchallenged by Suffolk County in Plaintiffs' initial motion for a preliminary injunction.[4] [See, Melloni Dec.].

---

[4] In opposition to Plaintiffs' motion for an injunction, Lt. Michael Komorowski submitted a sworn declaration averring to the hours for the Licensing Bureau but remained silent in the face of the sworn Declaration from Frank Melloni

A credible threat of ***arrest*** is sufficient to confer Article III standing; actual ***prosecution*** is not a necessary factor.[5] "[I]t is not necessary that petitioner first expose himself to actual arrest **or** prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 134 S. Ct. 2334, 2342, 189 L. Ed. 2d 246 (2014) (emphasis added); *Doe v. U.S. Immigr. & Customs Enf't*, 490 F. Supp. 3d 672, 683 (S.D.N.Y. 2020) (alleging a credible threat of **arrest** satisfied the "low threshold" for Article III standing).

Giambalvo faces an even more credible threat than the plaintiffs in *Does 1-10 v. Suffolk County,* 2022 WL 2678876. Unlike SCPD's written threats to individuals who failed to surrender their lawfully owned "other firearms" who "may be subject to arrest and criminal charges", Lt. Komorowski's uncontroverted statement threatens that SCPD "***will arrest***" anybody who handles a pistol or revolver without a New York State pistol permit during a live-fire training course.

And SCPD ***did act*** on their threat to arrest individuals for possessing "other firearms". The owners of Jerry's Firearms, Jerry Rallo and Chris Rallo were arrested by SCPD and prosecuted by the Suffolk County District Attorney's Office for possessing "other firearms" – ***more than a year before*** New York State made the possession of "other firearms" illegal in July 2022.

Mr. Giambalvo is not required to be arrested to have standing to challenge SCPD's "arrest policy." There is no evidence in the record to show whether Mr. Giambalvo engaged in the live-fire training or not and the time limitation for arresting Mr. Giambalvo for violating the SCPD policy (a time period known only to SCPD) has presumably not expired. Mr. Giambalvo remains under the threat of arrest and incarceration by SCPD under the "Arrest Policy," which will cause

---

averring, "Lt. Komorowski informed me that SCPD will 'arrest anybody who handles a pistol or revolver without a New York State pistol permit.'" [Melloni Dec. at ¶ 11].
[5] Decision at p. 13.

9

him irreparable harm, and neither SCPD nor Lt. Komorowski have denied that they will enforce the "Arrest Policy."

## III. MELLONI AND RFI HAVE STANDING TO CHALLENGE THE 'ARREST POLICY'

Melloni and RFI have standing to challenge SCPD's 'Arrest Policy', which prohibits Melloni and RFI from training members of the general public who seek to comply with the CCIA 18-hour training requirements but have not yet been issued a handgun license by SCPD.

Conversely, students and potential students of Melloni and RFI are unable to engage in handgun training due to the threat of arrest and incarceration by SCPD, which includes one or more of the plaintiffs in this action and other ordinary citizens who are not part of this action but also seek to engage in the 18-hour training course.

Melloni and RFI have the right to teach and train others on their use of firearms and their students and potential students, on whose behalf Melloni and RFI advocate for, also have a Second Amendment right to engage in firearm training. See, e.g., *Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 493 (N.D.N.Y. 2020) (finding Dark Storm Industries LLC, "as the ... operator of a gun store, ... has derivative standing to assert the subsidiary right to acquire arms on behalf of [its actual and] potential customers.") quoting, *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677–78 (9th Cir. 2017) ("As with purchasing ammunition and maintaining proficiency in firearms use, the core Second Amendment right to keep and bear arms for self-defense "wouldn't mean much" without the ability to acquire arms); citing, *Drummond v. Twp.*, 361 F. Supp. 3d 466, 480 (W.D. Pa.) ("Plaintiff[s] ..., as would-be operators of a commercial shooting range, have standing to sue on behalf of their potential customers."), aff'd in part, vacated in part on other grounds, remanded sub nom. *Drummond v. Twp. of Robinson*, 784 F. App'x 82 (3d Cir. 2019); cf. Forty-Second St. Co. v. Koch, 613 F. Supp. 1416, 1422 (S.D.N.Y. 1985) (rejecting defendants' argument that movie

theater companies did not have standing to assert the rights of their customers); *see also, Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) (Action Target, as a supplier of firing-range facilities, is harmed by the firing-range ban and is also permitted to act as an advocate of the rights of third parties who seek access to its services); *Craig v. Boren*, 429 U.S. 190, 195 (1976) (allowing beer vendor to challenge alcohol regulation based on its patrons' equal-protection rights); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 536 (1925) (allowing private schools to assert parents' rights to direct the education of their children and citing "other cases where injunctions have issued to protect business enterprises against interference with the freedom of patrons or customers"); *Andrews v. State*, 50 Tenn. 165, 178 (1871) ("[t]he right to keep arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms, and to keep them in repair.").

## IV. PLAINTIFFS' SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court reiterated the text, history, and tradition standard of reviewing Second Amendment challenges, consistent with *Heller, McDonald,* and *Caetano.* Flatly rejecting the 'interest balancing' 'intermediate scrutiny' test created by the Second Circuit (and others), *Bruen* laid out a clear path to determine the constitutionality of government regulations affecting the Second Amendment: "We reiterate that the standard for applying the Second Amendment is as follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution **presumptively protects** that conduct.
>
> The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

*Bruen*, at 2126. ("In sum, the Courts of Appeals' second step is inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny.") (emphasis added) (citation omitted).

Where later history contradicts what the text says, the text controls. *Bruen*, at 2137.

### A.     The 'Plain Text' Covers Plaintiffs' Conduct and Is 'Presumptively Protected'

Because the plain text of the Second Amendment covers Plaintiffs' conduct – the possession and carriage of a handgun for self-defense[6,7] their conduct is 'presumptively protected' by the Second and Fourteenth Amendments[8].

### B.     Defendants Alone Have the Burden of Proof

SCPD "must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, at 2126. "***Only then*** may a court conclude that [Plaintiffs'] conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, at 2126-2127. Defendants cannot meet their burden.

The scope of the protection provided by the Second Amendment applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791. Bruen, at 2137–38 citing, *Crawford v. Washington*, 541 U.S. 36, 42–50, 124 S.Ct. 1354 (2004) (Sixth Amendment); *Virginia v. Moore*, 553 U.S. 164, 168–169 (2008) (Fourth Amendment); *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 122–125 (2011) (First Amendment).

---

[6] *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) ("Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation.").
[7] *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam) (stun guns).
[8] *McDonald v. Chicago*, 561 U.S. 742 (2010) (Second Amendment applies to the states through the Fourteenth Amendment); accord, *Bruen*, at 2137 ("individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government.").

### C.     SCPD Delays Violate the Second and Fourteenth Amendments

The Supreme Court already proclaimed that "lengthy wait times in processing license applications or exorbitant fees ***deny ordinary citizens their right*** to public carry." *Bruen,* at 2138[9] (emphasis added). Suffolk County's 2-3 year wait time is patently unconstitutional.

### D.     SCPD's 'Arrest Policy' Violates the Second and Fourteenth Amendments

Subjecting individuals to arrest for engaging in firearms training, particularly where required and authorized by state statute, violates the Second and Fourteenth Amendments. There is no historical tradition of any such regulation in the Founding Era.

## V. PLAINTIFFS WILL CONTINUE TO SUFFER IRREPARABLE HARM

Irreparable harm is certain and imminent harm for which a monetary award does not adequately compensate [*Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003)] and exists where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied [*Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999)].

To establish injury in fact, a plaintiff must show that he suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). An allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a "substantial risk" that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted). This injury must be fairly traceable to the

---

[9] The continuation of 'may-issue' handgun licensing schemes, like New York's was conditional: "so long as those States employ objective licensing requirements like those used by the 43 shall-issue States." *Bruen*, 2162. New York remains a subjective and discretionary, 'may-issue' State.

challenged action of the defendant and likely to be redressed by a favorable decision. *Lujan,* at 560–61.

In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm. *Valenzuela Arias v. Decker*, No. 20 CIV. 2802 (AT), 2020 WL 1847986, at *5 (S.D.N.Y. Apr. 10, 2020) citing, *Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004); *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) (no separate showing of irreparable harm is necessary); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) ("[I]t is the alleged violation of a constitutional right that triggers a finding of irreparable harm.").

The Second Amendment is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald*, 561 U.S. at 780.

"The right to keep and bear arms protects tangible and intangible interests which cannot be compensated by damages…The right to bear arms enables one to possess not only the means to defend oneself but also the self-confidence — and psychic comfort — that comes with knowing one could protect oneself if necessary…Loss of that peace of mind, the physical magazines, and the enjoyment of Second Amendment rights constitutes irreparable injury." *Duncan v. Bonta*, 265 F.Supp.3d 1106, 1135 citing, *Grace v. District of Columbia*, 187 F. Supp. 3d 124, 150 (DDC 2016); see also *Ezell v City of Chicago*, 651 F3d 684, 699 (7th Cir 2011) ("Infringements of this right cannot be compensated by damages.").

### A. SCPD Licensing Delays

Like the First Amendment, the loss of Second Amendment 'freedoms, for even minimal periods of time, constitutes irreparable injury.' C.f., *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008) citing, *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Bronx Household of Faith v. Bd. of Educ.*,

331 F.3d 342, 349 (2d Cir. 2003); *Paulsen v. County of Nassau*, 925 F.2d 65, 68 (2d Cir.1991) (temporary abridgment of the First Amendment right to free expression constitutes an irreparable injury); see also, *O'Malley v. City of Syracuse*, 813 F. Supp. 133, 140 (N.D.N.Y. 1993).

Denial of a government-issued permit is a quintessential injury-in-fact for purposes of standing. *Connecticut Citizens Def. League, Inc. v. Lamont*, 465 F. Supp. 3d 56, 66 (D. Conn. 2020), vacated on other grounds, 6 F.4th 439 (2d Cir. 2021) citing, *Parker v. D.C.*, 478 F.3d 370, 376 (D.C. Cir. 2007) (denial of registration certificate to own handgun), aff'd sub nom. *D.C. v. Heller*, 554 U.S. 570 (2008).

Plaintiffs Giambalvo, Mougios, Mashkow, and McLaughlin are absolutely barred from exercising the right to possess, purchase, and/or carry handguns for self-defense, and Michael McGregor is prohibited from carrying a handgun concealed in public for self-defense, because of SCPD's lengthy licensing delays – an existing and irreparable injury. See, *Connecticut Citizens Def. League, Inc. v. Lamont*, 465 F. Supp. 3d 56, 66 (D. Conn. 2020), vacated on other grounds, 6 F.4th 439 (2d Cir. 2021) (finding no merit to the State's argument that a 'temporary delay' occasioned by the suspension of fingerprinting does not result in injury. "If the Governor and the Commissioner were to issue a gag order barring plaintiffs from exercising their First Amendment free speech rights for the balance of the COVID-19 crisis, plaintiffs would surely suffer injury despite the 'temporary' nature of the crisis. The same holds true for plaintiffs' exercise of their Second Amendment rights.") citing, *United States v. Decastro*, 682 F.3d 160, 167 (2d Cir. 2012) (consulting principles from other areas of constitutional law, including the First Amendment"); *Parker v. D.C.*, 478 F.3d 370, 376 (D.C. Cir. 2007) (denial of registration certificate to own handgun), aff'd sub nom. *D.C. v. Heller*, 554 U.S. 570 (2008).

## B. SCPD 'Arrest Policy'

Under *Babbitt*, being threatened with prosecution is not a requirement; it is sufficient for a plaintiff to allege that enforcement is likely. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)

("But "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.").

The Second Circuit has held that when a plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016). The standard established in *Babbitt* "sets a low threshold and is quite forgiving to plaintiffs seeking such preenforcement review," as courts are generally "willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund." *Cayuga Nation*, at 331.

It is SCPD policy to arrest any unlicensed person who engages in the live-fire component of the 18-hour training course. This policy was communicated to Mr. Melloni from the head of the SCPD Licensing Bureau, Lt. Michael Komorowski, who informed that SCPD will "arrest anybody who handles a pistol or revolver without a New York State pistol permit" and is "not honoring" the exemption outlined in Penal Law § 265.20(3-a). [Melloni Dec. at ¶¶ 11-12].

Zachary Giambalvo has concrete plans to attend an 18-hour training course offered by RFI and taught by Frank Melloni in December 2022, including the 2-hour live-fire component. [Giambalvo Dec. at ¶ 18]. Mr. Melloni has concrete plans to instruct Mr. Giambalvo on the live-fire portion of the training in his December 2022 course. [Melloni Dec. at ¶ 18]. Both Mr. Giambalvo and Mr. Melloni face a credible threat of arrest by Suffolk County police officers.

[Giambalvo at ¶ 19; Melloni at ¶¶ 17-20]. Being arrested, fingerprinted, and incarcerated would be an irreparable injury and no plaintiff is required to undergo an arrest before being provided with relief. See, e.g., *Cayuga Nation*, at 331.

## VI. AN INJUNCTION IS IN THE PUBLIC INTEREST

A preliminary injunction is "in the public interest" if the preliminary injunction would not "cause harm to the public interest." *U.S. S.E.C. v. Citigroup Global Mkts. Inc.*, 673 F. 3d 158, 163 n.1 (2d Cir. 2012). "As with irreparable injury, when a plaintiff establishes 'a likelihood that Defendants' policy violates the U.S. Constitution, Plaintiffs have also established that both the public interest and the balance of the equities favor a preliminary injunction.'" *J.S.R. by & through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 743 (D. Conn. 2018) citing, *Ms. L. v. U.S Immigr. & Customs Enf't ("ICE")*, 310 F. Supp. 3d 1133, 1146 (S.D. Cal. 2018), modified, 330 F.R.D. 284 (S.D. Cal. 2019), and enforcement granted in part, denied in part sub nom. *Ms. L. v. U.S. Immigr. & Customs Enf't*, 415 F. Supp. 3d 980 (S.D. Cal. 2020) quoting, Arizona Dream Act Coalition, 757 F.3d 1053, 1069 (9th Cir. 2014) (balance of equities favors preventing the violation of a party's constitutional rights).

The public interest would not be disserved by the granting of Plaintiffs' requested relief.

The term "the People" in the Constitution "unambiguously refers to all members of the political community, not an unspecified subset….

> 'The people' seems to have been a term of art employed in select parts of the Constitution .... [Its uses] sugges[t] that 'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."

*D.C. v. Heller*, 554 U.S. 570, 580 (2008) citing *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990).

Plaintiffs are "the People" for whom the Bill of Rights, including the Second Amendment, was codified. The public interest favors the adherence to and exercise of all constitutionally protected rights, including the Second and Fourteenth Amendments, by law-abiding responsible citizens, and "it is always in the public interest to prevent the violation of a person's constitutional rights." *Duncan*, at 1136 (granting preliminary injunction of California's magazine ban statute) citing, *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), *aff'd sub nom., Burwell v. Hobby Lobby Stores, Inc.,* —— U.S. ——, 134 S.Ct. 2751 (2014).

SCPD's policies are actively impeding the public's exercise of conduct presumptively protected by the plain text of the Second Amendment.

## VII. BALANCING THE EQUITIES IS IMPROPER

While balancing the equities is a prong of the injunctive relief consideration, it is no longer viable in the context of a Second Amendment challenge. A balancing test requires the Court to place Plaintiffs' constitutional rights on one side of the equation and the hardship faced by the government if the injunctive relief is granted. But 'interest balancing" in the Second Amendment context has been *thrice* flatly rejected by the Supreme Court in *Heller*, *McDonald* and *Bruen*.

> "The Second Amendment does not permit - let alone require - judges to assess the costs and benefits of firearms restrictions." *Bruen*, at 2129 (quoting, *McDonald*, at 790-791); *Heller*, at 634 ("[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government— the power to decide on a case-by-case basis whether the right is really worth insisting upon.").

Whatever purported 'hardship' the government would face cannot – and does not - outweigh Plaintiffs' presumptively protected rights under the Second and Fourteenth Amendments.

**CONCLUSION**

Plaintiffs' application for an injunction pending appeal should be granted in its entirety.

Dated: February 16, 2023
       Scarsdale, New York

                                       THE BELLANTONI LAW FIRM, PLLC
                                       *Attorneys for Plaintiffs*

By:     *Amy L. Bellantoni*
                                       Amy L. Bellantoni (AB3061)
                                       2 Overhill Road, Suite 400
                                       Scarsdale, New York 10583
                                       abell@bellantoni-law.com